**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KIPU SYSTEMS LLC,
a Florida limited liability company,

      Plaintiff,

v.

ZENCHARTS LLC, a Florida limited liability
company, ZEN MEDICAL, LLC, an
administratively dissolved Florida limited liability
company, SOLUTIONS RECOVERY CENTER, LLC,
a Florida limited liability company, SOLUTIONS
RECOVERY, LLC, an administratively dissolved
Florida limited liability company,
WEBSITE CONSULTANTS INC., a Florida corporation,
CALLAHAN HOLDINGS, INC., an administratively
dissolved Florida corporation, RICHARD 'RICK' GLASER,
an individual, KEITH HOULIHAN a/k/a KEITH HOOTIE,
an individual, SEAN CALLAHAN, an individual,
DANIEL J. CALLAHAN, an individual,
SEAMUS CALLAHAN, an individual,
YANKO KARKALICHEV, an individual, and
ANTON ALADZHOV, an individual,

      Defendants.
_____/

Case No._____

**JURY TRIAL REQUESTED**

**PRELIMINARY INJUNCTIVE
RELIEF REQUESTED**

## COMPLAINT

Plaintiff, KIPU SYSTEMS LLC ("Kipu" or the "Plaintiff"), sues Defendants,

ZENCHARTS LLC ("ZenCharts"), ZEN MEDICAL, LLC ("Zen Medical"), SOLUTIONS

RECOVERY CENTER, LLC ("Solutions Recovery"), SOLUTIONS RECOVERY LLC

("SRL"), WEBSITE CONSULTANTS INC. ("Website Consultants"), CALLAHAN

HOLDINGS, INC. ("Callahan Holdings"), RICHARD 'RICK' GLASER ("Glaser"), KEITH

HOULIHAN a/k/a KEITH HOOTIE ("Houlihan"), SEAN CALLAHAN ("Sean Callahan"),

DANIEL J. CALLAHAN ("Dan Callahan"), SEAMUS CALLAHAN ("Seamus Callahan"),

YANKO KARKALICHEV ("Karkalichev"), and ANTON ALADZHOV ("Aladzhov") (Zen

Charts, Zen Medical, Solutions Recovery, SRL, Website Consultants, Callahan Holdings, Glaser, Houlihan, Sean Callahan, Dan Callahan, Seamus Callahan, Karkalichev, and Aladzhov are collectively referred to as the "Defendants") for: (a) Violations of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b) *et al*); (b) Civil Conspiracy to Commit Trade Secret Theft; (c) Violations of Florida's Computer Abuse and Data Recovery Act (Fla. Stat. § 668.801 *et al*); (d) Conversion of Confidential and Proprietary Information; (e) Trespass to Chattels; (f) Counterfeiting of a Registered Trademark (15 U.S.C. § 1116(d)(1)); (g) Willful Infringement of a Registered Trademark (15 U.S.C. § 1114(1)); (h) Federal Unfair Competition (15 U.S.C. § 1125(a)); (i) Florida Common Law Unfair Competition; (j) Violations of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et al*); (k) Florida Common Law Breach of Terms of Service; (l) Florida Common Law Breach of License Agreement; and (m) Florida Common Law Tortious Interference with Business Relationships.

In support of these thirteen causes of action, Kipu states as follows:

## INTRODUCTION

1.     The Defendants deceived and defrauded Kipu, and engaged in an orchestrated, illicit scheme to steal Kipu's valuable trade secrets and intellectual property.  These actions were taken to illegally develop copycat software, called "ZenCharts", which would compete with Kipu's industry-leading, proprietary electronic medical records (EMR) software called the "Kipu EMR System."   Kipu has consequently suffered damages in an amount not less than $30,000,000.00, and demands a preliminary and permanent injunction against Defendants including ZenCharts, and other relief set forth below.

## STATEMENT OF FACTS

### Kipu Becomes the Industry Leader in Cloud-Based Electronic Medical Records for the Addiction Treatment Industry

2.      Kipu is the leader in cloud-based EMR specifically designed for drug and alcohol addiction treatment centers.

3.      Drug and alcohol addiction represents an unfortunate and growing epidemic in the United States.  Recent statistics released in 2016 by a U.S. Surgeon General report show: (a) over 22 million Americans struggle with substance abuse, (b) 58,000 Americans died of addiction related causes in 2016, and (c) over 66 million Americans reported they had abused drugs or alcohol in the past year.  The result of the foregoing represents a $442 billion impact on our economy.  In August 2017, President Trump announced that the "opioid crisis" was a national emergency.

4.      Approximately seven years ago, Kipu's founders recognized the alarming and unfortunate escalation of drug and alcohol addiction.  They also understood how addiction treatment centers were strained to deliver effective treatment solutions due to the vast records that needed to be maintained, and the difficulty in offering access to such information to the treating clinician.  Accordingly, Kipu's founders realized a true need for a robust, flexible and effective EMR system and related technology necessary to help automate addiction treatment centers, to allow them to better deliver improved care with better patient outcomes.

5.      After thousands of development hours and millions of dollars spent on programming and development, Kipu created the Kipu EMR System—a first of its kind, unique EMR system that improves addiction patient care through the innovative use of technology. In creating this breakthrough technology, Kipu worked hand-in-hand with several addiction

treatment centers to understand the demands of the industry, and met with doctors, medical staff and clinical staff at various addiction treatment centers.

6.      The Kipu EMR System automates addiction treatment centers and enables them to deliver improved care when treating those suffering from drug and alcohol addiction.  Kipu's advanced EMR system automates the entire episode of care in addiction treatment including detoxification, residential treatment, intensive outpatient treatment, as well as aftercare.  The innovative technology eliminates paper medical forms, helping clinicians treat patients by automating assessments, diagnosis, history and physicals as well as creating treatment plans.  In short, the Kipu EMR System allows clinicians to deliver better overall patient care and increased productivity.

7.      In or about September 2012, the Kipu EMR System was launched.  As a unique and proprietary cloud-based system, the Kipu EMR System was created to enable scalability and to allow the medical clinician the ability to access the technology via smart phone, tablet, PC, laptop and/or any other Internet-connected device.  Prior to the Kipu EMR System, no such cloud-based EMR technology was available in the addiction recovery industry.

8.      Since its inception, Kipu has spent millions of dollars to create, market and promote the Kipu EMR System.  The software has since gained considerable notoriety in the addiction treatment industry. Over 480,000 patients have been treated using the Kipu EMR System.  Today, it is used by some 1,300 treatment facilities worldwide.

9.      Kipu's rapid success is based on its development and creation of valuable trade secrets found in the underlying computer architecture and design of the Kipu EMR System. Examples of such trade secrets include the OTO® Program, a proprietary algorithm for assisting in treating patients; the "Urgent Issue" feature; easy laboratory ordering interface and related

functionality; and the "Golden Thread" feature which connects the entire patient treatment process.

10.     Kipu engages in appropriate efforts to register, protect, and if necessary enforce its intellectual property.  Kipu owns five issued Federal trademark registrations before the United States Patent & Trademark Office ("USPTO"), including Trademark Registration No. 4,442,687, for the mark KIPU, in International Class 9.   Kipu also owns United States Copyright Registration No. TX0008280027 entitled "Kipu EMR" having an effective date of December 22, 2016 (listing a first publication date of April 27, 2012).

11.     One of the many unique and proprietary programs within the Kipu EMR System is the aforementioned "One Time Only" algorithm, which is extensively marketed and promoted under the distinctive trade name OTO® and protected by Trademark Registration No. 5,127,508 (the "OTO Mark").

12.     This groundbreaking program (the "OTO Program") allows clinicians to create a record of disruptive patients who negatively affect others in the facility, often by bringing drugs into a treatment facility.  Clinicians in the drug and alcohol treatment industry have come to recognize and associate the OTO Program as one of most identifiable and beneficial protocols found in the Kipu EMR System.  Attached as **Exhibit A** is a true and correct copy of the USPTO prosecution history of the OTO Mark.

13.     Based on the foregoing, Kipu has created considerable goodwill and reputation through the Kipu EMR System, including under the KIPU® Mark, as well as the OTO® Mark.

### Dan Callahan, Sean Callahan, and Richard Glaser's Illicit Scheme to Steal and Copy the Kipu EMR System

14.     By February 2013, self-proclaimed recovery "guru" Dan Callahan (owner of Coconut Creek, Florida-based Solutions Recovery) noticed the incredible success and value of

the Kipu EMR System, and specifically how Kipu had quickly amassed a considerable number of addiction treatment center clients.

15.     Accordingly, Dan Callahan hatched a plan with his son, Sean Callahan, and Richard Glaser, the owners of Website Consultants (a software development and programming company).  The plan was simple: approach Kipu under the false pretense that Dan Callahan's drug treatment center, Solutions Recovery, was interested in purchasing a license to use the Kipu EMR System, gain access to the Kipu EMR System, and then create a copycat EMR product without having to spend millions of dollars and thousands of hours developing the software.

16.     Dan Callahan, Sean Callahan and Glaser had already come up with a name for the copy-cat EMR program: "ZenCharts".  On February 23, 2013, Glaser purchased the domain name www.zencharts.com.   The three would soon engage Website Consultants' various international programmers—including Bulgarian-based Karkalichev and Aladzhov—to assist in their conspiracy to steal Kipu's trade secrets through improper logins to the Kipu EMR System. In or about August 2013, Glaser and Sean Callahan were added as managing members to Solutions Recovery's publicly available corporate documents with the State of Florida.  This deception served to legitimize all of Glaser and Sean Callahan's inquiries to Kipu through Solutions Recovery.

17.     With the foundation of their illicit scheme in place, Dan Callahan, Sean Callahan and Glaser reached out to Kipu and expressed interest in licensing the Kipu EMR System for Solutions Recovery.  However, Kipu was never made aware that Sean Callahan and Glaser were also the owners of a software development company, Website Consultants.

18.     On or about October 1, 2013, Kipu provided an in-person demonstration of the Kipu EMR System to, among others, Dan Callahan, Sean Callahan, and Glaser at Solutions Recovery's facilities (under the representation all three were managing members/officers at

Solutions Recovery).  This demonstration highlighted the Kipu EMR System's features without revealing any proprietary information or trade secrets.

19.     A week after the demonstration, on or about October 8, 2013, Solutions Recovery entered into a binding, non-exclusive software license agreement with Kipu (the "2013 License Agreement") for purposes of limited and restrictive use of the Kipu EMR System at Solutions Recovery's Coconut Creek facility.  A true and correct copy of the 2013 License Agreement, executed by Glaser as the purported CFO of Solutions Recovery, is attached as **Exhibit B**.  By that time, the Kipu EMR System had been launched for over a year and had considerable praise and traction in the addiction treatment and recovery industry.

20.     Kipu then began the laborious task of implementing and customizing the Kipu EMR System under its licensing terms with Solutions Recovery.

21.     About one week later, Solutions Recovery obtained three "Super Admin" log-in credentials to the Kipu EMR System.  These logins would provide Glaser, Sean Callahan, Dan Callahan, and their co-conspirators, with expanded access and review rights to the Kipu EMR System.

22.     Through use of his "Super Admin" log-in credentials (username: dcallahan; associated e-mail: dan@solutionsrehab.com) Dan Callahan, as Solutions Recovery's managing member and CEO  (or someone to whom he provided unauthorized access) signed into the Kipu EMR System 52 separate times over the course of only one month (from October 15, 2013 to November 15, 2013).   That volume of entries, relative to other Kipu clients, was disproportionately high and could only be explained by an effort to misappropriate the Kipu EMR System.  Solutions Recovery's website,  https://www.solutionsrehab.com/meet-our-team/ identifies Dan Callahan as Solutions Recovery's current CEO (last viewed December 29, 2017).

23.     The 2013 License Agreement obligated Solutions Recovery, as well individuals using login credentials provided by Solutions Recovery, to agree (via click-through) to Kipu's Terms of Service ("TOS").  Moreover, the 2013 License Agreement stated that the most current version of the TOS would apply to any use of the Kipu EMR System and that the TOS "may be revised by [Kipu] from time to time, without prior notice."

24.     The TOS were updated in January 2014 (becoming effective on January 6, 2014) the "2014 Kipu TOS").  The 2014 Kipu TOS governed and restricted Solutions Recovery's use of the Kipu System, as well as those to whom login credentials were provided.  Specifically, the TOS stated that the:

> Structure, organization, flows, processes, and source code of the Service (collectively, "Intellectual Property") are the valuable trade secrets and confidential information of Kipu Systems, LLC.

*See* **Exhibit C**.

25.     The 2014 Kipu TOS also expressly limited the permissible scope of use of the Kipu EMR System.   System users were "authorized only to use the Service for *legitimate business purposes in relation to site-level administration of its facility*".  The 2014 Kipu TOS further stated that "[e]xcept as expressly permitted in writing by Kipu Systems, LLC, User may not modify, port, adapt, or translate the Service" *Id*. (emphasis added).

26.     Users having access log-ins to the Kipu System were further prohibited to:

> reverse engineer, decompile, dissemble, or otherwise attempt to discover or reduce to human readable form the source code of the Service [nor could users] access the service for the purposes of copying the flow, process, or any other Intellectual Property belonging to Kipu Systems for the purposes of incorporating any such Intellectual Property into a competitive product.

*See* Exhibit C.

27.     Unbeknownst to Kipu, from October 10, 2013 until January 16, 2014, Dan Callahan, Sean Callahan and Glaser, with Website Consultants' international programmers, engaged in a targeted mission to log into the Kipu EMR System an astonishing amount of times—over 150 in total—to review the architecture, functionality, process, flows, capabilities and advancements Kipu had developed.

28.     Unable to replicate the Kipu EMR System on their own, Dan Callahan, Sean Callahan and Glaser peppered Kipu's staff with various technical questions, seeking extensive details about the inner development and implementation of the Kipu EMR System.

29.     Under the false impression that Dan Callahan, Sean Callahan and Glaser were genuinely interested in maximizing the benefits of the Kipu EMR System for their addiction treatment center, Solutions Recovery, Kipu earnestly responded to these inquiries.

30.     On or about November 19, 2013, when it came time for Solutions Recovery to pay Kipu for the implementation of the Kipu EMR System, Solutions Recovery flatly stated that it would not be using the product, and needed to pause the service and any bills relating to its use.  Solutions Recovery also stated that it would only be using paper client files.  Indeed, Solutions Recovery paid just $2,000 of the $10,000 due to Kipu for Kipu's custom implementation and extensive technical support.

31.     In fact, Solutions Recovery would then use their existing login credentials to create yet another additional "Super Admin" login, listing a Solutions Recovery e-mail address. However, the additional "Super Admin" credential was not for an actual Solutions Recovery employee.  Instead, it was created for Karkalichev, a Bulgarian programmer serving as Website Consultants' Chief Technology Officer.

32.     On December 2, 2013, Solutions Recovery granted Karkalichev "Super Admin" credentials (through use of the email address yanko@solutionsrehab.com) to access the Kipu EMR System (the "Karkalichev Account").

33.     From December 2, 2013 to January 16, 2014, Karkalichev used those credentials to access the Kipu EMR System 56 times.  Solutions Recovery never disclosed that Karkalichev was a software engineer working in Bulgaria for Sean Callahan and Glaser's company, Website Consultants.

34.     Karkalichev also maintains an office in Plovdiv, Bulgaria, the approximate location of the IP addresses used (or attempted to) log in with various usernames to review the Kipu EMR System.

35.     Upon information and belief, Karkalichev orchestrated three unauthorized "put" attempts in January 2014 to improperly enter the Solutions Recovery's Kipu account through a back-door (which Kipu's security measures successfully thwarted without knowing the source of the attempt).

36.     The chart below summarizes Solutions Recovery's voluminous logins *after* "pausing" use of the Kipu EMR System:

| Name | User Name | User Name Creation Date | Last Sign In Date | # of "Super Admin" Logins |
|---|---|---|---|---|
| Sean Callahan | Sdiggles | October 10, 2013 | January 17, 2014 | 43 |
| Rick Glaser | Rickglaser | October 10, 2013 | November 9, 2013 | 2 |
| Dan Callahan | Dcallahan | October 15, 2013 | November 14, 2013 | 52 |
| Karkalichev | Yankokark | December 2, 2013 | January 15, 2014 | 56 |

37.     There is simply no rational explanation why a 24-bed addiction clinic in Coconut Creek, Florida would provide unlimited "Super Admin" access to the Kipu EMR System to a Bulgarian-based enterprise level software programmer.  Instead, there is only one reason why Karkalichev *would* log-in to the Kipu EMR System: to study and misappropriate Kipu's

workflows and trade secrets, and reverse engineer Kipu's proprietary software in order to create a copycat EMR system.

38.    In fact, Karkalichev was not the only individual that continued to log into the Kipu EMR System for illicit purposes.  Sean Callahan's last login was on January 19, 2014, and Glaser's last login was on January 15, 2014.   Both came well after Solutions Recovery represented that it was no longer using the Kipu EMR System.

39.    Notably, in the approximate 100 days during which the Kipu EMR System was active at Solutions Recovery, its clinical director, Matthew Rosen, *only logged into the Kipu System once, and for less than a single minute*.  It is highly unusual that a clinical director would not have the most logins of any user of the Kipu EMR System.

### ZenCharts' Illicit Financing and Launch of its Copycat EMR System, and Theft of Kipu Clients

40.    To finance the development of the planned ZenCharts system, Glaser, Dan Callahan, and/or Sean Callahan approached Houlihan.

41.    At that time, Houlihan operated an illegal boiler room out of Miami Lakes, Florida, selling stock in a company called Sanomedics International Holdings, Inc. ("Sanomedics") to elderly and unsophisticated investors.[1]

42.    Houlihan would later plead guilty for his role in the $23 million boiler room scam, and was recently sentenced to 111 months in Federal prison.[2]

---

[1]  *See*  https://www.justice.gov/usao-sdfl/pr/miami-resident-sentenced-15-years-prison-23-million-boiler-room-fraud-scheme (Department of Justice, U.S. Attorney's Office, Southern District of Florida press release entitled "*Miami Resident Sentenced to 15 Years in Prison for $23 Million Boiler Room Scheme*."

[2] *See* http://www.miamiherald.com/news/local/community/miami-dade/miami-lakes/article164437382.html ("*Main Cogs in $23 Million Investment Fraud Get Sentenced to Prison*", Miami Herald, July 30, 2017).

43.     Sanomedics—though Houlihan—agreed to fund the venture.   Houlihan then formed two shell companies, "VitaCura LLC" and "Biscayne Medical LLC", each owned by Sanomedics and controlled by Houlihan.

44.     Upon information and belief, Sanomedics' ill-gotten funds flowed to these shell companies, and ultimately funded the development and programming of ZenCharts' competing EMR system by reverse engineering the Kipu EMR System.

45.     Zen Medical and VitaCura LLC's formation had one purpose: to finance the illicit ZenCharts venture with the proceeds from Sanomedics' $23 million boiler room scam. Tellingly, Sanomedics was listed as Zen Medical's *sole* manager.   This allowed for the simple transfer of Sanomedics' illegally obtained funds to ZenCharts to bankroll the completion of ZenCharts' copycat EMR system, and pay Website Consultant's Bulgarian programmers.

46.     In furtherance of the conspiracy, Sanomedics even moved to 444 Brickell Avenue, Miami, Florida—where Kipu is headquartered.

47.     By June 2014, Dan Callahan, Sean Callahan and Glaser's had uncovered the bulk of the proprietary information needed to create a copy-cat EMR program.

### ZenCharts Launches its Copycat Software and Continues its Surreptitious and Unauthorized Access of the Kipu EMR System

48.     In January 2015, ZenCharts launched its copycat EMR system (the "ZenCharts System").   By this time, however, the Kipu EMR System had made continued technological advancements.   In comparison, ZenCharts' copycat EMR service was clearly inferior.   However, Solutions Recovery had lost access to the Kipu EMR System, since it had failed to pay Kipu, and

its efforts to hack into Kipu through older, prior use Solutions Recovery's root and sub-level URLs were thwarted by Kipu's security systems.[3]

49.     Houlihan, Dan Callahan, Sean Callahan and Glaser then launched the next phase of their scheme:  third party, disguised access to the Kipu EMR System, and related economic espionage to steal Kipu's clients.

50.     In connection with this phase of the scheme, on or about September 10, 2015, and after Kipu turned off access rights under Sean Callahan's "sdiggles" username, Sean Callahan facilitated a second username – scallahan – with an existing third party Kipu EMR Systems licensee (the "Kipu Client").  The scallahan username was created solely to facilitate Sean Callahan and Website Consultants' continued, unauthorized access to the Kipu EMR System without Kipu's knowledge.  Indeed, from September 10 to early October 2015, the scallahan username obtained from the Kipu Client was used an additional 20 times for purposes of reviewing the inner workings of the Kipu EMR System.  During this period of unauthorized access to the Kipu EMR System, the scallahan username enabled the Defendants unfettered access to a live treatment facility treating real patients, and containing hundreds of thousands of PHI (Patient Health Information) data points protected by HIPAA.

51.     Many of the September-October 2015 scallahan username's unauthorized access originated remotely from computers in Bulgaria, where Karkalichev and Aladzhov maintain offices and/or a physical presence, along with potential other ZenCharts System developers.

52.     These 63 login entries—during the October 10, 2013 to January 19, 2014 timeframe and the additional September-October 2015 timeframe—were used to misappropriate

---

[3] While Kipu was aware of anonymous attempts to hack into its systems, it was not until recently that it discovered these attempts emanated from Bulgaria.

the Kipu EMR System, to steal its underlying trade secrets, and to reverse engineer a copycat program to unfairly compete against Kipu.

53.    Once Kipu discovered the "scallahan" account, Kipu checked the IP address though which the access was made.  Incredibly, the IP address emanated from Bulgaria.  However, the IP address was not merely located in Bulgaria, *it was the exact IP address used to attempt to access the Kipu EMR System through older, prior use Solutions Recovery's root and sub-level URLs*.

54.    Through early October 2015 the scallahan account logged into the Kipu EMR System from the same Bulgarian IP address some 20 times and spent a total of seven hours in the Kipu EMR System.

55.    The reason for the September-October 2015 unauthorized access is clear.  After developing a copycat system in 2013-2014, ZenCharts needed to study and replicate new functionalities, technical improvements, and updates Kipu programmed into the Kipu EMR System—all of which was borne from significant investment and development.

56.    The unauthorized access not only constitutes a misappropriation of Kipu's valuable trade secrets, but allowed unfettered access into hundreds of private medical records.

57.    Patient medical records—and especially those battling addiction—are not only sacrosanct, but are protected by HIPAA.[4]  In stealing Kipu's proprietary information and clients, the Defendants have exhibited an astonishing insensitivity and disregard for Federal privacy laws and individual patient privacy.

---

[4] HIPAA – The Health Insurance Portability and Accountability Act of 1996 provides for civil fines and in some cases, imprisonment where medical files containing patient health information ("PHI") are accessed by an individual or entity to sell, transfer, or use an individual's PHI for commercial advantage, personal gain or malicious harm.

58.     Furthermore, the unfettered access permitted ZenCharts to misappropriate key Kipu functionalities.   As an example, ZenCharts brazenly misappropriated Kipu's OTO® program—calling its copy-cat system the "OTO option"—a counterfeit and a willful infringement of Kipu's registered OTO Mark.

59.     Having relocated to Kipu's headquarters, Houlihan is believed to have eavesdropped on Kipu's communications with Kipu clients.   ZenCharts would then target those same clients, offering them the copycat ZenCharts EMR system at a steep discount to the Kipu EMR System.

60.     ZenCharts has since employed even more brazen methods to promote the copycat ZenCharts EMR system—including offering bribes to Kipu employees for information regarding Kipu's technology and customer lists.

61.     In September 2015, Houlihan officially formed "Zencharts LLC" with the Florida Department of State's Division of Corporations.

**Kipu EMR System Trade Secrets Misappropriated in the ZenCharts System**

62.     The Kipu EMR System is comprised of numerous trade secrets, all of which meet the criteria defined by 18 U.S.C. § 1839(3).   These trade secrets are in the form of financial, business and economic information, including designs, methods, techniques, processes, and procedures which are writings stored or memorialized electronically (as well as in print form).

63.     Kipu is the sole owner of these trade secrets under 18 U.S.C. § 1839(4), and the only entity that has rightful legal or equitable title to these trade secrets (including those trade secrets created prior to the formation of Kipu in 2012).

64.     Kipu, as the 18 U.S.C. § 1839(4) owner of the trade secrets, has taken reasonable measures to keep this underlying information secret as required by 18 U.S.C. § 1839(3)(A).

65. The "reasonable measure" standard of 18 U.S.C. § 1839(3)(A) is satisfied by the following:

> "by 'not having this information accessible to the public; only having portions of this information known on a need-to-know basis by those [the trade secret owner] worked with or employed; having it known that this information was to remain confidential; having [the trade secret owner's] business accounts password protected; having [the trade secret owner's] business accounts only known to [the alleged misappropriator], except as they were divulged to [those in a] position of trust . . . when acting as [the trade secret owner's] agent and/or employee for marketing and sales purposes.'"

66. Kipu's various reasonable measures includes the employment of written license agreements with prospective and/or actual licensees, obligating users to "click-through" approve of Kipu's TOS. The Kipu TOS restricts users and limits the manner they can use the Kipu EMR System, and requires the use of user accounts and passwords. The Kipu TOS also have specific and express confidentiality obligations as well as prohibitions against reverse engineering and/or dissembling of the Kipu EMR System.

67. Trade secrets developed and now owned by Kipu, as found within the Kipu EMR System include (a) the OTO program, (b) the OTO algorithm, (c) Kipu EMR System workflows, and (e) the overall Kipu EMR System architecture (hereinafter collectively referred to as the "trade secrets"). These trade secrets were developed over the course of many years and at great expense, entirely by Kipu's U.S.-based development team and programmers.

68. Kipu's trade secrets are intended for, and used in, interstate commerce through their employ within the Kipu EMR System.

69. Without the Kipu trade secrets, the functionality and usefulness of the Kipu EMR System would be negligible, meaning the Kipu trade secrets derive independent economic value from not being generally known and subject to commercial exploitation by competitive third parties.

70.     The Defendants improperly used and employed the Kipu EMR System in an unauthorized manner that violated the Kipu TOS, as the Defendants' unauthorized access did not have a legitimate business purpose related to the site-level administration of an addiction treatment center.

71.     As one of many examples, Kipu has created certain system workflows to better improve clinical staff efficiencies.

72.     This includes, for example, clinical staff signatures for an evaluation, as well as a review functionality.   Kipu created these fields and inputs to accomplish such evaluations.

73.     Upon review of publicly available information on the ZenCharts' EMR System, such evaluation protocol likewise includes overlap signatures (as well as separate review signatures), all having similar fields and inputs.

74.     The promotion, sale and use of the ZenCharts' EMR System is a continued misappropriation of Kipu's trade secrets, which has continued from October 2013 to the present day.  Because ZenCharts' EMR System is based upon and derived from the Kipu EMR System, a temporary, and later permanent injunction is required to protect Kipu's intellectual property rights.

**The Defendants' Counterfeiting and Related Infringement of the OTO Mark**

75.     The Kipu EMR System contains several distinctive non-functional source identifying indicia which associate the EMR system as originating from Kipu. One such example is the OTO Mark, which represents the underlying features and functionality of Kipu's OTO Program.  Its proprietary algorithm assists in addressing treatment for relapsed patients.

76.     The OTO Mark has achieved notoriety in the drug and alcohol addition treatment industry, based upon considerable efforts by Kipu in the marketing, advertising and promotion of the Kipu EMR System.  Moreover, the OTO Mark is distinctive (either inherently and/or through

acquired distinctiveness) as such maintains secondary meaning to the relevant consumers of the Kipu EMR System.

77.     The OTO Mark connotes considerable good will and repute, as it relates to the OTO Program, a unique and proprietary aspect of the Kipu EMR System.

78.     In short, the OTO Mark is affiliated with an indication (through the algorithm found within the OTO Program) whether a relapsed patient is not suitable for return treatment based upon a variety of uniquely selected factors—and instead should only be treated once by the treatment center.

79.     The OTO Mark is strongly associated as being a part of the Kipu System as well as Kipu's unique software offerings – and is thus highly coveted as a unique part of Kipu's branding strategy.  Current and potential Kipu customers have come to recognize and associate the OTO Mark solely and exclusively with Kipu.

80.     Throughout the October 2013 to January 2014 timeframe, when Solutions Recovery, SRL, Dan Callahan, Callahan Holdings, and Website Consultants engaged in a carefully orchestrated and illicit plot to review the inner workings, functionality and source identifying components of the Kipu EMR System, these Defendants also copied unique attributes of the OTO Program.  In doing so, and as demonstrated below, ZenCharts would call its relapse patient algorithm the "OTO option":



81.     As shown in the above screen capture, this confusingly similar indicia and use of the term "OTO option" with related visual representations risks consumer confusion.   In addition, it provides and/or suggests that ZenCharts is authorized and/or licensed to use the Kipu EMR System's OTO Program.

82.     As ZenCharts uses the exact mark—OTO—which is a registered Kipu trademark, ZenCharts (as well as its predecessor in interest Zen Medical) created a "counterfeit mark" as defined by 15 U.S.C. 1116(d).   ZenCharts (as well as its predecessor in interest Zen Medical) have adopted and are now using the OTO Mark on the same exact EMR related services, to the same types of drug and alcohol addiction treatment centers which typically license the Kipu EMR Software.

83.     Moreover, ZenCharts (as well as its predecessor in interest Zen Medical) uses "OTO" as a spurious designation that is identical to (or substantially indistinguishable from) the OTO Mark in connection with the same exact services Kipu provides.

84.     In addition to being a spurious designation, ZenCharts' (as well as its predecessor in interest Zen Medical) use of "OTO" in the ZenCharts System is a reproduction, copy or colorable imitation of the OTO Mark in connection with the sale of services in competition with Kipu, which are likely to cause confusion, mistake and/or to deceived, in violation of 15 U.S.C. 1114(1)(a).

85.     Lastly, such use of "OTO" in the ZenCharts System violates 15 USC 1125(a) in that use of OTO creates a false designation of origin that is likely to cause mistake, or to deceive consumers as to affiliation, connection of association with Kipu.

86.     Kipu spends millions of dollars per year maintaining, improving, and updating the Kipu EMR System, including advertising and promotions under the marks KIPU and OTO.

87.     Kipu takes reasonable and appropriate measures in protecting its intellectual property, including its valuable trademark registrations.

88.     In an unfortunate effort to increase the risk of consumer confusion – as well as related acts of adopting a spurious designation - ZenCharts (including but not limited to its agents and affiliates) as well as Sean Callahan and Glaser, have contacted Kipu employees to solicit information regarding Kipu's functional capabilities.

89.     This effort has included offering referral fees to Kipu employees if an existing Kipu customer is referred to ZenCharts.

90.     In early 2016, certain of Kipu's clients notified Kipu that ZenCharts contacted them and offered the competing ZenCharts System.  Upon review, these clients remarked that the functionality was derived and/or copied from the Kipu EMR System, and remarked as to the use of the OTO Mark (questioning whether there was a license grant or approval).

91.     In marketing the Kipu EMR System to prospective new clients, Kipu has been told that ZenCharts appears to be an affiliated EMR system to Kipu, offered at a discounted price.

92.     As such, Kipu is suffering (and will continue to suffer) irreparable harm unless the Defendants are preliminarily (and then later permanently) enjoined from the foregoing infringing and unlawful acts.  Kipu has been damaged considerably by the foregoing actions and is entitled to fair and appropriate financial compensation for the ill-gotten gains made by the Defendants through the creation and later sale of the copycat, infringing ZenCharts System.

### THE PARTIES AND THEIR RELATION TO THE STATEMENT OF FACTS

#### a.  Kipu and its Proprietary, Industry-Leading EMR Software

93.     Kipu was formed and organized on September 30, 2012, and is located at 444 Brickell Avenue, Suite 850, Miami, Florida 33131.  Over the last seven years Kipu—and its founders before Kipu's formation—designed, developed, architected, programmed and advanced a proprietary, industry leading cloud-based EMR system marketed under the name KIPU.

#### b.  The Defendants, their Affiliated Entities, and Co-Conspirators

##### i.     *Solutions Recovery (Solutions Recovery Center LLC)*

94.     Solutions Recovery, which also does business under the trade name "Addiction Solutions of South Florida," is a Florida limited liability company located at 6115 Lyons Road, Coconut Creek, Florida 33073.  Solutions Recovery markets itself as a 24-bed drug and alcohol treatment center.

##### ii.    *SRL (Solutions Recovery LLC)*

95.     SRL was a Florida limited liability company formed on or about October 28, 2013, and was located at 16145 State Road 7, Unit D, Delray Beach, Florida 33446.  SRL was administratively dissolved on or about September 23, 2016.  Upon information and belief, SRL

is a Solutions Recovery affiliate.  Dan Callahan is its last known manager.  Upon information and belief, SRL had access to, accessed, and/or benefited from the Kipu EMR System, with such access obtained through Dan Callahan's "Super Admin" login credentials.

         *iii.*    *Website Consultants*

96.    Website Consultants is a Florida corporation organized on or about August 8, 2009, initially located at 11680 Tundra Drive, Unit 3103, North Fort Myers, Florida 33917.

97.    On or about October 23, 2013 (two weeks after execution of the 2013 License Agreement), Website Consultants changed its business address to 16145 State Road 7, Unit D, Delray Beach, Florida 33446, the exact address of Callahan Holdings.  Website Consultants purports to provide "enterprise level" computer programming, software development, and related web-based design services.[5]

98.    Website Consultants is the registrant and owner of the Solutions Recovery Website, which lists Glaser as its principal contact.[6]  The Website Consultants website also identifies as its officers Sean Callahan (CEO), Glaser (Chief Marketing Officer), Karkalichev (Chief Technology Officer), and Seamus Callahan (Account Manager).  Aladzhov identifies himself as an agent and/or consultant of Website Consultants.  *See* http://www.aladzhov.com/portfoliov2/zencharts-app/ (last viewed December 29, 2017).

         *iv.*    *Callahan Holdings*

99.    Callahan Holdings was a Florida corporation formed on or about February 23, 2015, and was located at 150 East Palmetto Park Road, Suite 800, Boca Raton, Florida 33432.

---

[5] Attached as **Exhibit D** is a true and correct copy of a screen shot of www.websiteconsultants.org/our-services/ (last viewed December 27, 2017) which identifies these enterprise level computer design services.

[6] Attached as **Exhibit E** is a true and correct copy of the WHOIS information for the Solutions Recovery website.

Callahan Holdings was administratively dissolved on or about September 22, 2017.   At all relevant times, Seamus Callahan was Callahan Holdings' sole owner and manager.   Upon information and belief, Callahan Holdings was formed to provide computer programming and/or related web development assistance to Website Consultants for purposes of creating the copycat ZenCharts EMR system.

   *v.*  <u>*Zen Medical*</u>

100. Zen Medical, originally named "Biscayne Medical LLC", was a Florida limited liability company formed on or about June 30, 2014, and was located at 7777 Glades Road, Suite 100, Boca Raton, Florida 33434.  Zen Medical was administratively dissolved on September 23, 2016.

101. Sanomedics acted as Zen Medical's sole manager.   As set forth above, Sanomedics was nothing more than a boiler room scam directed Houlihan, Zen Medical's former CEO.

   *vi.*  <u>*ZenCharts*</u>

102. ZenCharts is a Florida limited liability company organized on September 14, 2015 and located at 7777 Glades Road, Suite 100, Boca Raton, Florida 33434 (the same exact location as Zen Medical).   ZenCharts has also maintained a business address at 444 Brickell Avenue, Miami, Florida 33131, the same address as Kipu's headquarters.

103. According to the USPTO's assignment records, on October 20, 2016 (one month after Houlihan's indictment) Zen Medical assigned to ZenCharts all rights to the ZenCharts Logo (as defined below).  The USPTO assignment was effectuated by Sean Callahan, who was never identified as a manager or executive of Zen Medical in its corporate records. Upon information and belief, Zen Medical similarly assigned to ZenCharts all rights and title to the ZenCharts' copycat EMR system.

104.    Upon further information and belief, the assignment of trademarks to ZenCharts was part of an effort to distance the ZenCharts System from the Sanomedics/Houlihan fraud, and as a vehicle to quickly transfer Sanomedics' assets after Houlihan's indictment and after Sanomedics was forced into an involuntary bankruptcy.[7]

105.    On or about July 25, 2016 Zen Medical filed a Section 1(a) trademark application before the UPSTO for the ZenCharts logo in Class 42 (alleging a first use in commerce date of January 2015) (the "ZenCharts Logo") which became Trademark Application Serial Number 87/115,058.    ZenCharts is the successor-in-interest (assigned from Zen Medical) to the ZenCharts System, and actively engages in the marketing, promotion, and distribution of that misappropriated software – under the ZenCharts Logo.

    *vii.*    *Glaser*

106.    Glaser is an individual working at 7777 Glades Road, Suite 100, Boca Raton, Florida 33434 (same address as ZenCharts and formerly Zen Medical).    Glaser is Solutions Recovery's former managing member and CFO, the primary contact for the Solutions Recovery Website, the current Chief Marketing Officer of Website Consultants, as well as one of the five known software programmers who illicitly created the ZenCharts System.

    *viii.*    *Sean Callahan*

107.    Sean Callahan is an individual working at 11680 Tundra Drive, Unit 3103, North Fort Myers, Florida 33917.    Sean Callahan is a Solutions Recovery's former manager, and at all relevant times was an co-owner of Website Consultants and one of the software developers who created the ZenCharts System.    The Website Consultants website touts Sean Callahan's "wealth

---

[7] *In Re Sanomedics, Inc*., Bankruptcy Court Case No. 1:16-bk-21659 (Hon. Robert A. Mark, S.D. Fla.).

of experience" as a "user experience designer" and "front end developer" for software.   Below is

his Facebook profile (listing himself as Zen Chart's CIO):



### ix.   *Dan Callahan*

108.   Dan Callahan is an individual working in Coconut Creek, Florida.   He is the

primary owner of Solutions Recovery and its CEO/Program Director.   He is also the last known

manager and/or owner of SRL before its September 2016 administrative dissolution.   As shown

below, Dan Callahan holds himself out to the public as one of ZenCharts' two co-founders:



     *x.*     <u>*Keith Houlihan*</u>

109.    Houlihan (who also uses the alias Keith Hootie) is an individual whose last known address was 18008 Jazz Lane, Boca Raton, Florida 33496.  Houlihan consented to surrender himself to Federal authorities to serve his 111 month sentence for his participation in the $23 million Sanomedics "boiler room" fraud.  To date, he has yet to begin serving his sentence.

110.    Houlihan is the "[c]o-founder and former CEO" of ZenCharts "who skillfully guided [the] innovative and disruptive EMR from concept to commercialization in record time."  *See* www.KeithHoulihan.com (last viewed Dec. 27, 2017).  Houlihan is now attempting to distance himself from ZenCharts by removing from LinkedIn any identification of the EMR company he "co-founded" and instead suggests he is now merely a "coffee enthusiast":



     *xi.*     <u>*Seamus Callahan*</u>

111.    Seamus Callahan is an individual working at 150 East Palmetto Park Road, Suite 800, Boca Raton, Florida.  Callahan is the last known owner and director of Callahan Holdings

before its administrative dissolution.  He is currently an officer of Website Consultants, and is one of the software developers tasked to create the copycat ZenCharts.

> xii.  _Karkalichev_

112.    Karkalichev is an individual who maintains an office address at 16145 State Road 7, Unit D, Delray Beach, Florida 33446 (the same address as Website Consultants, and formerly of SRL).  Karkalichev serves as Website Consultants' Chief Technology Officer (CTO) and is one of the five software developers tasked to create the copycat ZenCharts System.  According to the Website Consultants' website, he holds a degree in "Software Engineering" and creates enterprise level software.  His LinkedIn profile confirms his role as an executive of Website Consultants:



113.    Aladzhov is an individual who maintains an office address at 16145 State Road 7, Unit D, Delray Beach, Florida 33446 (the same address as Karkalichev).  He also maintains a business location in Sofia, Bulgaria.  According to his LinkedIn Profile he publicly touts he is a "Contractor" of Website Consultants:



Aladzhov also identifies himself on http://www.aladzhov.com as being an agent of Website Consultants:



## JURISDICTION AND VENUE

114.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

115.    This Court has personal jurisdiction over the Defendants on the grounds that Defendants reside in this judicial district and/or conduct substantial and not isolated business activities in this judicial district.

116.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and/or (2) because (i) a substantial part of the events giving rise to the claims occurred within this judicial district; (ii) certain of the Defendants reside within this judicial district; and (iii) certain of the Defendants have a principal place of business within this judicial district.

117.    The 2014 Kipu TOS also state that "[i]n the event of a dispute involving Intellectual Property, including copyright, trademark, or any other cause of action provided for by law [*i.e*, trade secret law], venue shall be proper in the appropriate Federal or State Court, as dictated by the cause of action, with jurisdiction over Miami-Dade County, Florida.

**COUNT I**
**VIOLATIONS OF FLORIDA'S COMPUTER ABUSE AND DATA RECOVERY ACT**
**Florida Statute § 668.801-805**
(against all Defendants)

118.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

119.    This Count I is an action, pursuant to Florida's Computer Abuse and Data Recovery Act ("CADRA"), directed against all Defendants regarding their knowing and clandestine acts to obtain information from Kipu's servers (and related computers) regarding the Kipu EMR System through unauthorized access, and by the nefarious acquisition of login credentials.

120.    One of two primary purposes of CADRA, set forth in Florida Statute § 688.801(1), is to protect and safeguard the owner of information stored on a "protected

computer" used in the operation of a business from harm or loss caused by unauthorized access to such computer.

121.    A "protected computer" is defined broadly in Florida Statute § 668.802(6)&(7) to include a computer used in connection with the operation of a business that stores information, programs or code in which the stored information, programs or code can be accessed only by employing a technological access barrier ("a password, security code . . . or similar measure").

122.    CADRA prohibits an individual who knowingly and with intent to cause harm or loss "obtains information from a protected computer without authorization and, as a result, causes loss or harm" or "causes the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, causes harm or loss."   *See* Fla. Stat. § 688.803.

123.    While a user may have previously obtained access or log-in credentials appropriately (*i.e.*, was an "authorized user"), a login to a protected computer qualifies as "without authorization" when the later access "[c]ircumvents a technological access barrier on a protected computer without the express or implied permission of the owner . . . or the express or implied permission of the owner of information stored in the protected computer."

124.    Under CADRA, a sufficient "harm" may be any impairment to the integrity, access, or availability of programs, systems or information."   *See* Fla. Stat. § 688.802(4) Likewise, a "loss" may include any form of economic damages, lost profits, consequential damage, or "profits earned by a violator as a result of the violation."   *See* Fla. Stat. § 688.802(5).

125.    Kipu's operation of the Kipu EMR System requires Kipu to employ servers that meet the definition of a "Computer" and "Protected Computer" because the Kipu EMR System servers are high speed data processing devices that perform logical and storage functions.   In addition, the Kipu EMR System servers require users to enter a user name and password (a

technological access barrier) to access the Kipu EMR System.  Kipu's employ of a username and password is sufficient to effectively control access to Kipu's protected computers because the usernames and passwords are individually created and not publicly available information.

126.    Between October 10, 2013 and January 16, 2014, Kipu allowed for certain "Super Admin" login-in rights (via appropriate technological access barriers) to be provided to Dan Callahan, Sean Callahan, Glaser and later Karkalichev—all under the false pretense that they were involved in the implementation of Solutions Recovery's license of the Kipu EMR System.

127.    Between September 10, 2015 to early October 2015, these Defendants again accessed the Kipu EMR System under false pretenses, after obtaining a username and "Super Admin" log-in rights through a Kipu client.

128.    In reality, Dan Callahan, Sean Callahan, Glaser and Karkalichev (individually and through the various Defendant entities) employed their "Super Admin" login-credentials during the above mentioned periods for the primary purpose of reviewing and understanding the underlying structure, organization, flows, processes, and function of the source code found within the Kipu EMR System.  As such, Dan Callahan, Sean Callahan, Glaser and Karkalichev were not "authorized users" of the Kipu EMR System due to the manner and purpose for which they gained access to Kipu's protected computers and/or servers.

129.    During these times, Solutions Recovery, as well as Dan Callahan, Sean Callahan, Glaser and Karkalichev (and/or those acting under their direction, control and/or supervision, including, but not limited to, Website Consultants, SRL, Callahan Holdings, Seamus Callahan, and Aladzhov) employed these four "Super Admin" login-credentials some 150 times.  Each time, these "users" were required to "click" and agree to the terms of Kipu's TOS.

130.    Under the 2014 Kipu TOS, each of the aforementioned parties had to recognize that the underlying structure, organization, and flows of the Kipu EMR System were valuable

trade secrets, confidential information, and intellectual property owned by Kipu.  Moreover, each time the user would log-in they agreed that they could only access the Kipu EMR System for a "legitimate business purposes in relation to site-level administration of its facility."

131.    As such, none of the Defendants were "authorized users" under either the 2014 Kipu TOS or CADRA, and their log-ins were a circumvention of a technological access barrier.

132.    Each of Defendants who accessed the Kipu EMR System through the "Super Admin" login credentials provided to them either by Kipu or a Kipu client qualify as a "user" under CADRA who has knowingly and with intent to cause harm obtained information from Kipu's computer servers which maintain the Kipu EMR System, without Kipu's authorization, which actions have caused Kipu to suffer damages.

133.    Kipu is entitled to injunctive relief against Defendants to protect Kipu from future violations of Florida Statute § 688.803.

134.    Kipu is further entitled to recover any and all information that Defendants misappropriated (including all copies of the ZenCharts System and ZenCharts code) that were obtained through CADRA violations.

135.    Kipu is also entitled to its reasonable attorneys fees.

136.    Kipu's remedies under CADRA are in addition to remedies available for the same conduct under federal or state law.

## COUNT II
## BREACH OF CONTRACT (2013 LICENSE AGREEMENT)
### (against Solutions Recovery only)

137.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

138.    This Count II is an action, under the common law of the state of Florida, for Solutions Recovery's breach of the 2013 License Agreement.

139.   Kipu performed each and all of its obligations under the 2013 License Agreement, or was excused from doing so.

140.   Solutions Recovery materially breached the 2013 License Agreement by failing to comply with its payment obligations thereunder.

141.   Specifically, the 2013 License Agreement required Solutions Recovery to pay Kipu $2,000.00 upon the executing the 2013 Licensing Agreement, and an additional $1,000.00 per month for the eight months period commencing on December 1, 2013.

142.   Solutions Recovery never tendered any of the eight $1,000.00 monthly payments.

143.   As a direct and proximate result of Solutions Recovery's breach of the 2013 License Agreement, Kipu has suffered damages in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT (KIPU JANUARY 2014 TERMS OF SERVICE)
(against all Defendants)

144.   Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

145.   This Count III is an action, under the common law of the state of Florida, for breach of contract.

146.   Each of the Defendants entered into the 2014 Kipu TOS and agreed, on their own behalf and on behalf of those acting under their direction, to be bound by its terms and conditions.

147.   Kipu performed each and all of its obligations under the 2014 Kipu TOS, or was excused from doing so.

148.   The Defendants breached the 2014 Kipu TOS by, *inter alia*, engaging in activities that were "not for a legitimate business purpose" as well as failing to use the Kipu EMR System for site level administration of an addiction treatment facility.   These illegitimate activities

include, without limitation, reverse engineering of the Kipu EMR System, copying work flows and other Kipu intellectual property, and accessing the Kipu EMR System to develop a competing, infringing product.

149.    As a direct and proximate result of Defendants' breaches of the Kipu 2014 TOS, Kipu has incurred damages.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS – 18 U.S.C. § 1836(b)**
(against all Defendants)

150.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

151.    This Count IV is an action against the Defendants for violation of 18 U.S.C. § 1836(b).

152.    The OTO program, the OTO algorithm, Kipu EMR System workflows, and Kipu System architecture constitute trade secrets within the meaning of 18 U.S.C. § 1839(3) as they are types of business, technical information, engineering information, patterns, formulas, techniques, procedures, programs, and codes that Kipu has taken reasonable measures to keep secret (including the employ of the Kipu TOS and requirement for users to have user names and passwords).

153.    Kipu owns the trade secrets.

154.    The Defendants used, accessed, reviewed, maintained and/or employed the Kipu EMR System to misappropriate Kipu's trade secrets, including, but not limited to, the OTO program, the OTO algorithm, Kipu EMR System workflows, and Kipu EMR System architecture.

155.    Defendants knew, or had reason to know that they acquired Kipu's trade secrets by improper means, and/or disclosed or used those trade secrets without Kipu's express or implied consent.

156.    Kipu derives economic value from its trade secrets as they are not generally known to, and not readily ascertainable by, other persons who may be able to obtain economic value from their disclosure or use within the meaning of 18 U.S.C. § 1839(3)(B).

157.    Kipu has made reasonable efforts to maintain the secrecy of its trade secrets, including, without limitation, requiring the use of usernames and passwords to limit the access to its trade secrets.

158.    As a result of the Defendants' actions Kipu has suffered damages, and will continue to suffer irreparable injury unless the Defendants' conduct is preliminarily and then permanently enjoined under 18 U.S.C. §1836(b)(3)(A).

159.    Such preliminary (and then later) permanent injunction should be sufficient in scope and effect so as to prevent any actual or threatened misappropriation, as identified above, on such terms as this Court deems reasonable to prevent the Defendants from further misappropriation.

160.    The Defendants' conduct was willful and malicious, with disregard for Kipu's rights, so as to justify an award of attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

161.    The Defendants' conduct requires the Defendants to pay damages to Kipu for (i) Kipu's actual loss caused by the misappropriation of Kipu's trade secrets and (ii) damages for any unjust enrichment caused by the Defendants' misappropriation of Kipu's trade secrets.

162.    Moreover, the Defendants' conduct was so willful and malicious so as to justify and warrant exemplary damages under 18 U.S.C. § 1836(b)(3)(C) in the amount twice that of the amount of damages incurred by Kipu.

## COUNT V
## CIVIL CONSPIRACY TO COMMIT TRADE SECRET THEFT
(against Glaser, Sean Callahan, Dan Callahan, Houlihan,
Karkalichev, Seamus Callahan and Aladzhov)

163.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

164.    This Count V is an action for civil conspiracy to commit trade secret theft directed against Glaser, Sean Callahan, Dan Callahan, Houlihan, Karkalichev, Seamus Callahan and Aladzhov in their individual capacities.

165.    Between approximately October 2013 to January 2014, Glaser, Sean Callahan, Dan Callahan, Seamus Callahan, Karkalichev, and Aladzhov engaged in some 150 unauthorized and inappropriate logins, in a carefully organized and clandestine scheme to review and misappropriate Kipu's trade secrets, and the inner workings and functionality of the Kipu EMR System, including, without limitation, the OTO program, the OTO algorithm, the Kipu EMR System workflows, and the Kipu EMR System architecture.

166.    In January 2014 Kipu disabled the login credentials Glaser, Sean Callahan, Dan Callahan, Seamus Callahan, Karkalichev, and Aladzhov used and employed to engage in these illicit acts.

167.    Between January 2014 to September 2015, Kipu greatly improved the functionality and capabilities of its Kipu EMR System.

168.    In or about September 10, 2015, Sean Callahan improperly and without authorization from Kipu obtained a username from a Kipu client, which username was then used by Sean Callahan, Seamus Callahan, Karkalichev, and Aladzhov to make 20 some unauthorized logins to the Kipu EMR System during a two-week period.  These unauthorized acts were all

done under the authorization, knowledge, approval, consent and/or guidance of Houlihan, Glaser, Sean Callahan, Dan Callahan, and Seamus Callahan, Karkalichev, and Aladzhov.

169.    These unlawful acts – conducted during these two timeframes – were all in furtherance of a carefully planned conspiracy to steal Kipu's trade secrets and misappropriate proprietary information regarding the Kipu EMR System, and to develop a copycat, competing product.

170.    All of the foregoing occurred without Kipu's knowledge, authorization or consent.

171.    As a result of the foregoing, Kipu has suffered damaged, for which Houlihan, Glaser, Sean Callahan, Dan Callahan, Seamus Callahan, Karkalichev, and Aladzhov are jointly and severally liable.   These damages include Kipu's (i) actual loss caused by the misappropriation of the trade secrets; and (ii) damages for any unjust enrichment caused by misappropriation of the trade secrets that is not addressed in computing damages for actual loss.

## COUNT VI
## CONVERSION OF CONFIDENTIAL AND PROPRIETARY INFORMATION
(against all Defendants)

172.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

173.    This Count VI is an action for conversion, under the common law of the state of Florida, regarding the Defendants' unauthorized conversion of Kipu's trade secrets and other proprietary and confidential elements of the Kipu EMR System, and specifically those elements which may not necessarily rise to the level of a trade secret as defined under 18 U.S.C. § 1836.

174.    The Defendants, on multiple occasions, did knowingly, willfully, unlawfully, and with intent to steal, commit an act of conversion of the Kipu's intellectual property, including, without limitation, the Kipu EMR System and its underlying components.

175.     These acts of conversion were committed with the intent to permanently, or for an indefinite time, deprive Kipu of its rightful possession, access to and use of the converted property, and to deprive Kipu of the value of converted property.

176.     As a direct and proximate result of the conduct of Defendants, Kipu has suffered the deprivation of its property.

177.     The Defendants' actions have interfered with Kipu's enjoyment of its ownership rights over the converted property, over which the Defendants have improperly exercised acts of dominion and control.

178.     Further the Defendants' actions have created the opportunity to disclose, distribute, and/or sell the converted property, which property provides Kipu with a competitive advantage.

179.     As a direct and proximate result of the Defendants' conduct, Kipu has suffered and will continue to suffer damages.

180.     As such, Kipu seeks (i) compensatory damages equal to the loss incurred as a result of the Defendants' actions and proximately caused by the Defendants' misconduct; (ii) a preliminary and permanent injunction; (iii) punitive damages; (iv) costs of this action; and (v) such additional relief as the Court deems appropriate or to which Kipu may be entitled by law.

**COUNT VII**
**COMMON LAW TRESPASS TO CHATTELS**
(against all Defendants)

181.     Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

182.     This Count VII is a claim for trespass to chattels, under the common law of the State of Florida, and is directed against all Defendants.

183.     Between October 2013 and the present, Defendants knowingly, willfully, and unlawfully committed a trespass to chattels of Kipu's property.  Without authorization or permission, the Defendants trespassed upon the Kipu's property, namely its Kipu EMR System, all in order for the Defendants to employ this sensitive information—developed and wholly owned by Kipu—for their own illicit purposes.

184.     The Defendants committed the aforementioned conduct with the intent and purpose of depriving Kipu of the competitive advantages, benefits, and value contained within the information taken, for the purposes of gaining an unfair competitive advantage in the market.

185.     Kipu has suffered irreparable injury, and will continue to suffer irreparable injury without preliminary and permanent injunctive relief.

186.     Kipu has sustained monetary losses as a direct and proximate result of the aforementioned conduct of the Defendants.

## COUNT VIII
## TRADEMARK COUNTERFEITING UNDER 15 U.S.C. §§ 1114(1) AND 1116(d)(1)(B)
### (against all Defendants)

187.     Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

188.     This Count VIII is an action for counterfeiting, under Sections 32(1) and 34(d)(1)(B) Lanham Act, directed against all Defendants.

189.     The Defendants' unauthorized use of the term "OTO option" constitutes use of spurious marks identical with, or substantially indistinguishable from, the OTO Mark, which is federally registered and owned by Kipu.

190.     The Defendants' acts have caused and/or are likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendant's EMR software offerings.

191.    ZenCharts and the Defendants which own or control ZenCharts are advertising and promoting ZenCharts' competing EMR software, which uses and shows the OTO Mark. However, the ZenCharts System is of inferior quality to the Kipu EMR System.

192.    The Defendants' acts constitute trademark counterfeiting in violation of Sections 32(1) and 34(d)(1)(B) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1116(d)(1)(B).

193.    The Defendants' acts have, and continue to irreparably damage Kipu and Kipu will continue to sustain such damages.

194.    Unless the Defendants are restrained by the Court, Kipu is without an adequate remedy at law.

195.    Accordingly, Kipu is entitled to, among other relief, an order permanently enjoining and restraining Defendants from using the OTO Mark in connection with the sale of non-genuine EMR software offerings.

## COUNT IX
### INFRINGEMENT OF UNITED STATES TRADEMARK REGISTRATION
### 15 U.S.C. § 1114
(against all Defendants)

196.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

197.    This Count IX is an action for willful infringement of Kipu's federally registered trademark—the OTO Mark-- under 15 U.S.C. §1114.

198.    Kipu maintains exclusive and unencumbered rights to United States Trademark Registration No. 5,127,508 for the standard character mark OTO in International Class 42 for "[p]roviding temporary use of a non-downloadable due diligence patient admission check/flag feature of a web application for storage and management of electronic health records . . . for

addiction treatment facilities and other healthcare related facilities[.]" (as previously defined, the "OTO Mark").

199.    United States Trademark Registration No. 5,127,508 identifies that the OTO Mark was first used in Interstate Commerce in January 2012—well prior to the October 1, 2013 demonstration of the Kipu EMR System at Solutions Recovery's Coconut Creek facility, attended by Glaser, Sean Callahan, and Dan Callahan.

200.    The underlying trademark application was filed on May 20, 2016.  On or about September 13, 2016, the USPTO trademark examining attorney issued an examiner's amendment noting how she "ha[d] searched the USPTO's database of registered and pending marks and ha[d] found no conflicting marks that would bar registration under Trademark Act Section 2(d)."  Thus, there was no office action ever issued during prosecution of the underlying trademark application, which became United States Trademark Registration No. 5,127,508.

201.    On October 19, 2016, a notice of publication was issued, denoting a publication date of November 8, 2016.  During the publication period (November 8, 2016 to December 8, 2016, no oppositions were filed regarding or opposing Kipu's exclusive rights to use the OTO Mark.

202.    On January 24, 2017, the USPTO issued United States Trademark Registration No. 5,127,508 for the mark OTO.

203.    Kipu's registration of its OTO Mark before the UPSTO is conclusive evidence of the validity and enforceability of Kipu's rights to the OTO Mark.

204.    The Defendants' later adopted and wrongful use of the OTO Mark in conjunction with offering a competing line of EMR software used in the drug and alcohol addiction treatment industry, to the same target group of customers, is likely to cause confusion, mistake or

deception as to source, sponsorship, affiliation, or authorization by Kipu or alternatively, to destroy the origin-identifying function of Kipu's registered trademark.

205.     As a proximate result of the Defendants' willful conduct and actions, Kipu has suffered, and will continue to suffer, significant damages to its business, reputation, and goodwill, unless the Defendants are restrained by the Court, and Kipu is entitled to recover damages for this injury.

206.     Kipu's remedy at law is inadequate to compensate it for the injuries it will suffer in the future for the continued acts of infringement alleged herein.

207.     The foregoing acts of infringement by Defendants in appropriating the OTO mark has been, and continues to be, deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C §1117.

208.     Kipu is entitled to a permanent injunction against the Defendants, as well as all other monetary remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

**COUNT X**
**FEDERAL UNFAIR COMPETITION – PASSING OFF**
**15 U.S.C. §1125(a)**
(against all Defendants)

209.     Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

210.     This Count X is an action for federal unfair competition under 15 U.S.C. §1125(a) directed to all Defendants regarding the unauthorized use of Kipu's trade name OTO, as well as associated indicia within the interfaces of its Kipu EMR System.

211.     Kipu maintains exclusive, strong and unencumbered rights to the trade name OTO.

212.    The Defendants have knowingly and intentionally used the name "OTO" and/or "OTO Option" (the "Infringing Name") in their competing ZenCharts System – as well as in the related marketing and promotion of their competing EMR software.

213.    The Defendants' use of the Infringing Name suggests to relevant and prospective customers seeking EMR software for addiction treatment centers that the ZenCharts System is affiliated, sponsored, endorsed, licensed or related to Kipu and/or the Kipu EMR System, and its related rights to the trade name OTO, when it is not.

214.    Defendants' advertising and marketing of its misappropriated software under the Infringing Name all leads to the suggestion that there is some affiliation, endorsement, license or relationship between ZenCharts and Kipu, when there is not.

215.    As such, the Defendants' improper and unauthorized use of the trade name OTO is likely to cause, has caused, and will continue to cause, confusion among actual and/or potential customers of Kipu as to the origin, sponsorship or approval of the Defendants' software.

216.    The Defendants' improper actions are in violation of 15 U.S.C. §1225(a) in that Defendants have used and continue to use, in relation to commercial activities, a false designation of origin, or a false or misleading description that is likely to cause confusion, and to cause mistake, and to deceive, as to the affiliation, connection, or association of the Defendants with Kipu.

217.    As a result of the foregoing, Kipu has suffered, and will continue to suffer, irreparable harm as a proximate and direct result of the foregoing acts of unfair competition caused by the Defendants.

218.     Likewise, Kipu shall suffer additional irreparable harm unless and until Defendants are preliminarily (and later permanently) enjoined by the Court from continuing those acts, which constitute unfair competition.

219.     Kipu has no adequate remedy at law.

220.     Upon information and belief, the Defendants' acts of unfair competition are willful and this is an exceptional case within the meaning of 15 U.S.C. 1117.

**COUNT XI**
**FLORIDA COMMON LAW UNFAIR COMPETITION**
(against all Defendants)

221.     Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

222.     This Count XI is an action for unfair competition under the laws of the state of Florida.

223.     The Defendants' actions regarding the advertising, marketing, offer for sale and sale of EMR software in the drug and alcohol addiction treatment industry constitutes unfair competition and an infringement of Kipu's common law rights in the trade name OTO.

224.     Kipu has been damaged by the Defendants' knowing and willful acts of unfair competition, including, but not limited to, the Defendants' adoption and continued use of the mark OTO with regards to selling and offering its competing line of EMR software.

225.     These acts of common law unfair competition have caused and, unless enjoined, will continue to cause Kipu irreparable harm.

226.     Kipu has no adequate remedy at law.

**COUNT XII**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Florida Statute § 501.204(1)**
(against all Defendants)

227.    Kipu re-alleges and incorporates paragraphs one (1) through one hundred eighteen (118) as if fully set forth herein.

228.    This Count XII is a direct claim under Florida Statute Chapter 501 against all Defendants pursuant Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) under Florida Statute §501.204 (1).

229.    Florida Statute §501.204 (1) declares that unfair and/or deceptive acts of practices in conduct of any trade or commerce are unlawful.

230.    The Defendants have engaged in a carefully orchestrated plot of unauthorized access to the Kipu System under false pretenses, resulting in the misappropriation and theft of Kipu's intellectual property.  As such, all of the foregoing are deceptive and unfair trade practices in willful violation of Florida Statute §501.204 (1).

231.    The aforementioned acts of the Defendants have been injurious to the public and have resulted in damages to Kipu, and clearly fall within the ambit of unfair and deceptive acts and practices within the intent and meaning of Florida Statute §501.204 (1).

232.    The aforementioned acts and practices of the Defendants constitute unfair and deceptive trade practices within the intent and meaning of the Federal Trade Commission Act and pursuant to the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission and federal courts.

233.    The Defendants' acts violate the Florida Deceptive and Unfair Trade Practices Act and should be enjoined.

234.    The Defendants knew, or should have known that their acts and practices of hijacking the Kipu System and replication of the OTO Mark within the ZenCharts System were both unfair and deceptive actions.

235.    Accordingly, Kipu is entitled to entry of a permanent injunction enjoining Defendants (and all in privity with Defendants) from engaging in these illicit and clandestine acts, an award of reasonable attorneys fees pursuant to Florida Statutes, and assessment of civil penalties pursuant to Chapter 501 of the Florida Statutes, and any other and further relief the Court deems just and proper for these deceptive acts by the Defendants.

**COUNT XIII**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**(against Sean Callahan, Dan Callahan, Glaser, and ZenCharts)**

236.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred one hundred eighteen (118) as if fully set forth herein.

237.    Kipu and its users have an economic relationship containing a probable future economic benefit.

238.    Sean Callahan, Dan Callahan, Glaser, and ZenCharts knew of the existence of Kipu's relationships with its users and that Kipu would receive future economic benefit from the user's continued employ of the Kipu EMR System for management of EMR.

239.    Sean Callahan, Dan Callahan, Glaser, and ZenCharts intentionally engaged in wrongful acts or conduct designed to interfere with or disrupt the relationships between Kipu and its users. These acts include these Defendants' use of technology and trade secrets misappropriated from Kipu, which were the foundation for the buildout and programing of the ZenCharts System. The ZenCharts System was then pitched to Kipu's customers and users at prices that significantly undercut Kipu. Such discounted pricing was made possible because the buildout of ZenCharts System was completed with the benefit of the millions of dollars of Kipu's

research and development, and thousands of hours to time devoted to creating the misappropriated technology and trade secrets.

240.   Sean Callahan, Dan Callahan, Glaser, and ZenCharts also employed Kipu's OTO mark in the ZenCharts System to appear to be Kipu-like or associated with Kipu such that Kipu users would be further enticed to break off their economic relationship with Kipu and switch to the ZenCharts System.

241.   Sean Callahan, Dan Callahan, Glaser, and ZenCharts' aforementioned interference with Kipu's economically advantageous user relationships was unjustified.

242.   As a direct and proximate result of Sean Callahan, Dan Callahan, Glaser and ZenCharts' actions to associate ZenCharts with Kipu and solicit Kipu's users, Kipu's relationship with those users was disrupted.

243.   Kipu was damaged as a result of Sean Callahan, Dan Callahan, Glaser and ZenCharts' acts which caused Kipu to lose a significant number of users and potential users.

## PRAYER FOR COSTS AND ATTORNEY FEES

Plaintiff KIPU SYSTEMS LLC requests an award of reasonable costs and attorney fees pursuant to 18 U.S.C. § 1836(b)(3)(D); 15 U.S.C. § 1117(a)-(d); Fla. Stat. § 501.2105(1)-(3); Fla. Stat. 668.804(2) as well as any other applicable basis for costs and attorneys based upon the claims brought herein.

## REQUEST FOR JURY TRIAL

Plaintiff KIPU SYSTEMS LLC requests a jury trial of all matters so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KIPU SYSTEMS LLC respectfully prays that this Honorable Court enter such Orders and Judgments as are necessary to grant Plaintiff KIPU SYSTEMS LLC the following relief:

(a)    Judgment against Solutions Recovery for Florida Common Law Breach of the 2013 Licensing Agreement and associated damages and for such other further relief based upon the aforementioned breach as this Honorable Court may deem just under the circumstances.

(b)    Judgment against Defendants for Florida Common Law Breach of the Kipu TOS (including but not limited to the January 2014 version), including any and all applicable damages;

(c)    Judgment against Glaser, Sean Callahan, Dan Callahan, Houlihan, Karkalichev, Seamus Callahan and Aladzhov for conspiracy to commit the foregoing acts of trade secret theft including any and all applicable damages caused by such conspiracy;

(d)    Judgment against Defendants for violations of Florida's Computer Abuse and Recovery Act (Fla. Stat. § 668.801 *et al*), including any and all applicable damages including but not limited to actual damages, lost profits, economic damages, violator's profits, recovery for harm and loss due to: improvement of the integrity, access of availability of the underlying Kipu EMR System, the cost of conducting a damage assessment, costs of remediation, consequential damages and/or damages for interruption of service;

(e)    Judgment against Defendants for Conversion of Kipu's confidential and proprietary information, including any and all applicable damages;

(f)    Judgment against Defendants for Trespass to Chattels against Kipu's property, including any and all applicable damages;

(g)     Judgment against Defendants for Counterfeiting a registered trademark under 15 U.S.C. § 1116(d)(1), including any and all applicable damages;

(h)     Judgment against Defendants for willful infringement of a registered trademark under 15 U.S.C. § 1114(1), including a disgorgement of profits and other applicable damages;

(i)     Judgment against Defendants for Federal Unfair Competition under 15 U.S.C. § 1125, including any and all applicable damages;

(j)     Judgment against Defendants for Florida Common Law Unfair Competition, including any and all applicable damages;

(k)     Judgment against Defendants for violations of the Florida Deceptive and Unfair Trade Practices Act under Fla. Stat. § 501.201;

(l)     Judgment against ZenCharts, Sean Callahan, Dan Callahan, and Glaser, (i) awarding Kipu its damages and lost profits in an amount to be determined at trial due to the aforementioned tortious interference; and (ii) enjoining ZenCharts, Sean Callahan, Dan Callahan, and Glaser from continuing to interfere with Kipu's business relationships;

(m)     Judgment against Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined under 18 U.S.C. §1836(b)(3)(A) regarding and relating to the access, review, maintenance and/or use of Plaintiff's confidential and proprietary information.  Such preliminary and then later permanent injunction should be sufficient in scope and effect so as to prevent any actual or threatened misappropriation, as identified above, on such terms as this Court deems reasonable to prevent Defendants from entering into relationships that may risk such misappropriation and should include conditions placed on any future employment so not to risk threatened misappropriation.  Such scope should include an order demanding the wiping and/or forensic removal of any and all sensitive information obtained by Defendants from the Kipu EMR System

and/or trade secrets (as previously defined), or related files, materials, forms, or related business documents from Plaintiff;

(n)      Plaintiffs be awarded all other monetary remedies available under both 18 U.S.C. § 1836(b)(3)(C) as well as the common law, including but not limited to, penalties and fines, compensatory damages, exemplary damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively;

(o)      Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined under Florida Statute §668.804(c)&(d) to prevent future unauthorized login-ins and/or improper access to the Kipu EMR System and to recover the underlying misappropriate information, program or code as well as all copies thereof from Defendants;

(p)      Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined from infringing Kipu's rights in the OTO Mark, including Defendants' use of the OTO Mark in the ZenCharts System or any colorable imitations thereof;

(q)      An order requiring Defendants to rebuild their EMR system in a clean room environment by providing a specification sheet to new software developers who will not have the benefit of any knowledge regarding the Kipu EMR System or the ZenCharts System; and

(r)      Compensatory and other damages allowed by law.

DATED this 31st day of December, 2017.

Respectfully submitted,

**EHRENSTEIN CHARBONNEAU CALDERIN**
*Counsel for Plaintiff, Kipu Systems, LLC*
501 Brickell Key Drive, Suite 300
Miami, Florida  33131
T. 305.722.2002        F. 305.722.2001
www.ecclegal.com

By:      */s/ Christopher Spuches*
          Christopher B. Spuches
          Florida Bar No. 42456
          e-mail: cbs@ecclegal.com
          Jake Greenberg
          Florida Bar No. 91118
          e-mail: jmg@ecclegal.com

**ALLEN, DYER, DOPPELT
& GILCHRIST, P.A.**
*Counsel for Plaintiff Kipu Systems LLC*
1221 Brickell Ave., Suite 2400
Miami, Florida 33131
Telephone:     (305) 374-8303
Facsimile:     (305) 374-8306

          */s/ Robert H. Thornburg*
          Robert Thornburg
          Florida Bar No. 630829
          e-mail: rthornburg@allendyer.com
          Joshua B. Spector
          Florida Bar No. 584142
          e-mail: jspector@allendyer.com
          Cameron C. Murphy
          Florida Bar No. 125086
          e-mail: cmurphy@allendyer.com