**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KIPU SYSTEMS LLC,
a Florida limited liability company,

        Case No.1:17-cv-24733-KMW-EGT

   Plaintiff/Counter-Defendant,

v.

ZENCHARTS LLC, a Florida limited liability company,
SOLUTIONS RECOVERY CENTER, LLC,
a Florida limited liability company,

   Defendants/Counter-Plaintiffs, and

ZEN MEDICAL, LLC, an administratively
dissolved Florida limited liability company,
WEBSITE CONSULTANTS INC., a Florida corporation,
RICHARD 'RICK' GLASER, an individual,
KEITH HOUILHAN a/k/a KEITH HOOTIE, an individual,
SEAN CALLAHAN, an individual,
DANIEL J. CALLAHAN, an individual, and
YANKO KARKALICHEV, an individual,

   Defendants.
_____/

**PLAINTIFF KIPU SYSTEMS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff, KIPU SYSTEMS LLC ("Kipu" or "Plaintiff"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and other applicable law, moves for a partial summary judgment (1) adjudging the Defendants, ZENCHARTS LLC ("ZenCharts"), ZEN MEDICAL, LLC ("Zen Medical"), SOLUTIONS RECOVERY CENTER, LLC ("Solutions"), WEBSITE CONSULTANTS INC. ("Website Consultants"), RICHARD 'RICK' GLASER ("Glaser"), KEITH HOUILHAN ("Houilhan"), SEAN CALLAHAN ("S. Callahan"), DANIEL J. CALLAHAN ("D. Callahan"), and YANKO KARKALICHEV ("Karkalichev") (collectively, "Defendants"), liable on the claims stated in the Plaintiff's *Second Amended Complaint* [D.E. 156, pp.8-72] ("SAC") and in counts I, II, III, XI, and XIV of the Plaintiff's *First Amended Complaint* [D.E. 118] ("FAC") (collectively, "Plaintiff's Claims");[1] (2) adjudging the Plaintiff not liable on

---

[1] Count I of the SAC and count I of the FAC are against, and the Plaintiff seeks a summary judgment as to liability

the counterclaims raised in *Defendant ZenCharts, LLC's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint and Counterclaims* [D.E. 163] (collectively, "ZenCharts' Counterclaims"); and (3) adjudging the Plaintiff not liable on the counterclaim raised in *Defendant Solutions Recovery Center, LLC's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint and Counterclaims* [D.E. 164] ("Solutions' Counterclaim"). In support, the Plaintiff states:

## I. SUMMARY

Kipu is the creator and owner of a computer program used by medical providers to manage and maintain medical records electronically ("Kipu EMR System"). Kipu granted Solutions, a now defunct substance use disorder treatment provider, a license to use the Kipu EMR System for the sole purpose of managing and maintaining its patients' medical records. However, Solutions and its affiliates, the other Defendants, used this license to copy material parts of the Kipu EMR System and create a competing computer program ("ZenCharts System"). The Defendants cannot genuinely dispute these facts.

The agreements governing the Defendants' use of the Kipu EMR System prohibited the Defendants from copying it and from having a business interest or association with a competitor of Kipu's. These agreements included (1) the agreement between Kipu and Solutions under which the license to use the Kipu EMR System was granted [D.E. 118-1] ("2013 License Agreement"); (2) the terms of service that were in effect from the time that Kipu and Solutions entered into the 2013 License Agreement until January 6, 2014 [D.E. 118-2] ("2013 TOS"); and (3) the terms of service that were in effect after January 6, 2014 [D.E. 118-3] ("2014 TOS"). The Defendants cannot genuinely dispute these facts.

Florida's Computer Abuse and Data Recovery Act ("CADRA") and common law proscribing unfair competition also prohibited the Defendants from copying the Kipu EMR System. The Defendants thus breached the 2013 License Agreement, 2013 TOS, and 2014 TOS,

---

against, all of the Defendants. Count II of the SAC and count II of the FAC are only against Solutions, and the Plaintiff seeks a summary judgment as to liability only against, Solutions. Count III of the SAC and count III of the FAC are only against, and the Plaintiff seeks a summary judgment as to liability only against, Solutions, ZenCharts, Zen Medical, Website Consultants, Glaser, S. Callahan, D. Callahan, and Karkalichev. Count IV of the SAC and count XI of the FAC are only against, and the Plaintiff seeks a summary judgment as to liability only against, ZenCharts, Glaser, D. Callahan, S. Callahan, Website Consultants, and Karkalichev. Count V of the SAC and count XIV of the FAC are only against, and the Plaintiff seeks a summary judgment as to liability only against, Solutions, S. Callahan, D. Callahan, Glaser, Karkalichev, Website Consultants, Zen Medical, and ZenCharts. The Clerk of Court has entered a default against Zen Medical and Houilhan. [*See* D.E. 22, 50.]

violated CADRA, and unfairly competed with the Plaintiff by copying the Kipu EMR System and by owning an having a business association with the developer of the ZenCharts System.

The Defendants' breach of the 2013 License Agreement, 2013 TOS, and 2014 TOS, violation of CADRA, and unfair competition give rise to liability on the Plaintiff's Claims as a matter of law. As to liability, then, the Plaintiff is entitled to a summary judgment on the Plaintiff's Claims.

The Plaintiff is also entitled to a summary judgment on ZenCharts' Counterclaims and Solutions' Counterclaim. ZenCharts' Counterclaims allege tortious interference, a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), trade libel, and a violation of the Lanham Act. All of these counterclaims are based on the same facts: Plaintiff unsuccessfully attempted to persuade two (2) of ZenCharts' customers to use the Kipu EMR System instead of the ZenCharts System. These facts do not demonstrate any compensable damages and otherwise fail to give rise to liability on ZenCharts' Counterclaims as a matter of law.

Solutions' Counterclaim is similarly insufficiently supported. Solutions alleges that Kipu breached the 2013 License Agreement by not completing the implementation of the Kipu EMR System, not providing Solutions with adequate training, and not including certain forms in the Kipu EMR System's library of forms. However, the uncontroverted evidence establishes that Kipu did not finish implementing the Kipu EMR System because Solutions instructed Kipu to halt the implementation, that the purported failure to provide adequate training was immaterial, and that Kipu was not contractually required to include any particular forms in the Kipu EMR System's library of forms. Therefore, Solutions cannot prevail, and the Plaintiff is entitled to a judgment in its favor, on Solutions' Counterclaim as a matter of law.

## II. PERTINENT MATERIAL FACTS NOT GENUINELY DISPUTED

### A. Kipu Creates the Kipu EMR System

Kipu is the creator and owner of the Kipu EMR System, an industry-leading, proprietary electronic medical records ("EMR") software. *Plaintiff Kipu Systems, LLC's Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment* ("SOF"), ¶1. Kipu launched the Kipu EMR System in September 2012. *Id.* at ¶3. Kipu spent thousands of hours and millions of dollars on industry specific research, system design, software programming, and related development to create the Kipu EMR System. *Id.* at ¶4. This system is a first-of-its-kind, unique, cloud-based EMR system that improves patient care through the innovative use of

3

technology. *Id.* at ¶5.

### B. The Defendants Gain Access to the Kipu EMR System Pursuant and Subject to the 2013 License Agreement, 2013 TOS, and 2014 TOS

Solutions was owned by D. Callahan, S. Callahan, and Glaser. *Id.* at ¶6. In September 2013, D. Callahan, S. Callahan, and Glaser approached Kipu to obtain a license for Solutions to use the Kipu EMR System in connection with its treatment center. *Id.* at ¶7. Unbeknownst to Kipu, however, S. Callahan's and Glaser's other company, Website Consultants, was, at the same time, working on developing the competing EMR system that would eventually become the ZenCharts System. *Id.* at ¶8.

On October 8, 2013, Glaser, as Solutions' Chief Financial Officer, executed the 2013 License Agreement granting Solutions a license to use the Kipu EMR System in connection with Solutions' medical practice. *Id.* at ¶9. The 2013 License Agreement incorporates Kipu's terms of service ("TOS"): "Our TOS, available online at http://kipusystems.com/terms, are part of this agreement and take precedence over any other agreements. It is agreed that the most current version of the TOS shall apply and that those TOS may be revised by us from time to time, without prior notice." *Id.* at ¶10.

Additionally, every time that anyone affiliated with Solutions logged into the Kipu EMR System, they were (1) required to indicate that they had read and agreed to abide by Kipu's TOS, and (2) provided with a link to the most current version of Kipu's TOS. *Id.* at ¶11.

The 2013 TOS was the most current version of the TOS at the time that Solutions entered into the 2013 License Agreement and included the following provisions:

> All content included in or made available through any Kipu product or service, such as input screens and forms, charts, text, graphics, logos, button icons, images, audio clips, digital downloads, and data complications is the property of Kipu Systems or its content suppliers . . . .
>
> . . . .
>
> The look and feel of the Service is copyright ©2012 Kipu Systems LLC. All rights reserved. **You may not duplicate, copy, or reuse any portion of the HTML/CSS or visual design elements without express written permission from us [Kipu]**.
>
> . . . .
>
> **You agree not to reproduce, duplicate, copy, sell, resell or exploit any portion of the Service, use of the Service, or access**

4

Case 1:17-cv-24733-KMW   Document 169   Entered on FLSD Docket 05/20/2019   Page 5 of 20

Case No.1:17-cv-24733-KMW-EGT

> **to the Service without express written permission from us**.

*Id.* at ¶¶12.

Glaser did not read the 2013 TOS before signing the 2013 License Agreement:

> When I signed in, you don't have to read or review the terms, so there was no need for me to, like, take time out of my day to say, what am I going to do today? I'm going to go read the terms of service. For all I know, they could have been a thousand pages, and I had better things to do than, honestly, to go find something and give myself extra work.

*Id.* at ¶13. Yet, Glaser did read the provision of the 2013 License Agreement incorporating Kipu's TOS. *See* Exhibit 4 to SOF, p.37 ("Q. And did you read it [the 2013 License Agreement] before you signed it? A. I believe I did.").

The 2014 TOS was the most current version of the TOS as of January 6, 2014, and included the following additional provisions:

> User affirms that it will not use the Service other than as permitted by this Agreement and that it will not use the Service in a manner inconsistent with its design or Documentation. Accordingly, User is authorized only to use the Service for **legitimate business purposes in relation to site-level administration of its Facility**.
>
> Except as expressly permitted in writing by Kipu Systems, LLC, User may not modify, port, adapt, or translate the Service.
>
> **User may only grant access to a Third-Party to serve the legitimate, site-level administration business needs of its Facility, in accordance with HIPAA requirements**.
>
> By agreeing to these Terms, User affirms that neither it nor any of its officers, executives, shareholders, partners, employees, independent contractors, or other business associates of any kind are currently or will become, either directly or indirectly, and officer, executive, shareholder, partner, employee, independent contractor, advisor, consultant, or any other business associate of any kind of any business entity who does currently operate in **or intends to enter into competition with Kipu Systems, LLC**, during the period of time User is licensed to use the Service. . . .
>
> Except as otherwise expressly permitted in writing by Kipu Systems, LLC, **User will not reverse engineer, decompile, disassemble, or otherwise attempt to discover or reduce to human readable form the source code of the Service**, except to the extent allowed under applicable law. . . .
>
> Except as otherwise expressly permitted in writing by Kipu

>Systems, LLC, **User will not access the service for the purposes of copying the flow, process, or any other Intellectual Property belonging to Kipu Systems for the purposes of incorporating any such Intellectual Property into a competitive product**.

*Id.* at ¶14.

### C. The Defendants' Use of the Kipu EMR System Exceeds Scope of Authorization

Almost immediately after the Callahans and Glaser first approached Kipu, Solutions' access to the Kipu EMR System was granted to Website Consultants, an enterprise-level software programming company that ultimately developed the competing ZenCharts System, and its international software engineers, including Bulgarian-based Karkalichev, who is now the Chief Technology Officer of both Website Consultants and ZenCharts. *Id.* at ¶15. This access exceeded the scope of Kipu's authorization because (1) it was not, and could not have been, granted or used entirely "for legitimate business purposes in relation to site-level administration" of Solutions' treatment center, and (2) it required Solutions to surpass the number of login credentials it was permitted to create. *Id.* at ¶16.

The 2013 License Agreement provided Kipu sixty days (i.e., by December 7, 2013) to implement the Kipu EMR System at Solutions. *Id.* at ¶17. Solutions prematurely instructed Kipu to stop implementing the Kipu EMR System on November 19, 2013. *Id.* at ¶18. Kipu responded with an offer of additional training, but Solutions rejected the offer and advised that it was the system itself that was, according to Solutions, problematic. *Id.* at ¶19. Yet, between December 2, 2013, and January 16, 2014, Karkalichev accessed the Kipu EMR System from a Bulgarian IP address **fifty-six (56) times**. *Id.* at ¶20.

S. Callahan and Glaser attempt to explain Karkalichev's access by claiming that he was removing Solutions' patient information. However, Karkalichev adamantly swore that he did **not** retrieve or even view any of Solutions' patients' information from the Kipu EMR System. *Id.* at ¶21. In fact, it was unnecessary for Karkalichev to retrieve Solutions' patients' information from the Kipu EMR System because the 2013 License Agreement required Kipu to return such information to Solutions upon termination of the agreement. *Id.* at ¶22. There was thus no legitimate reason for Karkalichev, or anyone else affiliated with Solutions, to access the Kipu EMR System after November 19, 2013. *Id.* at ¶23.

### D. The Defendants Gain Unauthorized Access to the Kipu EMR System

On January 19, 2014, Kipu terminated Solutions' access to the Kipu EMR System for

nonpayment. *Id.* at ¶24. Karkalichev attempted to circumvent this termination and access the Kipu EMR System using Solutions' root and sub-level URLs, but these attempts were blocked by Kipu's security systems. *Id.* at ¶25. Nevertheless, S. Callahan subsequently obtained access to the Kipu EMR System without Kipu's authorization using login credentials provided by two of Kipu's third-party customers. *Id.* at ¶26. These login credentials were then used to access the Kipu EMR System at least twenty (20) times from the same Bulgarian IP address used by Karkalichev in his attempt to access the Kipu EMR System using Solutions' root and sub-level URLs. *Id.* at ¶27.

    E.    **The Defendants Copy the Kipu EMR System**

In early 2015, the Callahans and Glaser, the same individuals who owned and operated Solutions, launched the ZenCharts System. *Id.* at ¶28. Many of the components of the 2015 ZenCharts System's graphical user interface and features are practically identical to the components of the 2013 Kipu EMR System's graphical user interface and features. *Id.* at ¶29. For example, forty-one (41) of the forty-eight (48) field types available for template creation in the ZenCharts System are identical to the forty-one (41) field types available for template creation in the Kipu EMR System:

| ZenCharts EMR | Kipu EMR |
|---|---|
| attachments | attachments |
| auto_complete | auto_complete |
| check_box | check_box |
| check_box_first_value_none | check_box_first_value_none |
| create_evaluation | create_evaluation |
| datestamp | datestamp |
| drop_down_list | drop_down_list |
| evaluation_date | evaluation_date |
| evaluation_datetime | evaluation_datetime |
| evaluation_name | evaluation_name |
| evaluation_name_drop_down | evaluation_name_drop_down |
| image | image |
| image_with_canvas | image_with_canvas |
| matrix | matrix |
| matrix_optional | matrix_optional |
| notes | notes |
| patient.admission_datetime | patient.admission_datetime |
| patient.allergies | patient.allergies |
| patient.assigned_therapist | patient.assigned_therapist |
| patient.bed | patient.bed |
| patient.bmi | patient.bmi |
| patient.diets | patient.diets |
| patient.discharge_datetime | patient.discharge_datetime |
| patient.electronic_devices | patient.electronic_devices |
| patient.employer | patient.employer |

| | |
|---|---|
| patient.ethnicity | patient.ethnicity |
| patient.height_weight | patient.height_weight |
| patient.locker | patient.locker |
| patient.marital_status | patient.marital_status |
| patient.medication_inventory | patient.medication_inventory |
| patient.medication_verification | patient.medication_verification |
| patient.occupation | patient.occupation |
| patient.recurring_forms | patient.recurring_forms |
| patient.vital_signs | patient.vital_signs |
| points_item | points_item |
| points_total | points_total |
| radio_buttons | radio_buttons |
| string | |
| text | |
| text_optional | text_optional |
| timestamp | |
| title | |
| treatment_plan_add | treatment_plan_add |
| treatment_plan_column_titles | treatment_plan_column_titles |
| treatment_plan_item | treatment_plan_item |
| custom_html | |
| default_value | |
| notification | |

Exhibit 244 to Exhibit 4 (transcript of Glaser's deposition) to SOF ("Rosenberg Report"), p.20.

Another example is the ZenCharts System's use of language, capitalization, and punctuation that is identical to the language, capitalization, and punctuation used for the medication frequency settings in the Kipu EMR System:



> **Order Schedules**
> **IMPORTANT NOTICE:** Please note that changing the order schedules will delete and re-generate all future open MARs.
> All MARs in the past, open or completed, will NOT be deleted.
> MARs for medication due in the future but already administered will NOT be deleted.
> Both of these cases can cause an additional MAR record for these to be generated for today.
>
> ONLY change these settings if no medication due in the future has already been administered a if there is no overlap between the current time and the new schedules,
> e.g. do not change "Once a day AM" from 8:00AM to 9:00AM at 8:30 in the morning.
> This would keep the past 8:00AM entries and generate new 9:00AM entries.
> Please contact us if you have questions.
>
> This update might take a few moments.
>
> Once a day AM            04 AM : 00
> Once a day HS            04 PM : 00
> BID - twice a day        1) 04 AM : 00    2) 04 PM : 00
> TID - three times a day  1) 04 AM : 00    2) 10 AM : 00
>                          3) 04 PM : 00
> QID - four times a day   1) 04 AM : 00    2) 07 AM : 00
>                          3) 12 PM : 00    4) 04 PM : 00

Figure 6. Kipu EMR Medication Frequency Settings (Screen 1)

*Id.* at pp.29-30.

In fact, one of the only differences between the medication frequency settings of the two systems is the ZenCharts System's omission of critical words from the first sentence in the Kipu EMR System, which was drafted by Kipu. *See* SOF, ¶¶32-33. This omission renders the first sentence in the ZenCharts System meaningless; the first sentence in the Kipu EMR System reads, "Please note that changing the order schedules will delete and re-generate all future open MARs." while the first sentence in the ZenCharts System reads "Please note that changing the order schedules." There can be no question, then, but that this omission was the result of a mistake made by the Defendants while copying the Kipu EMR System. Moreover, the words, punctuation, and capitalization of the two sentences following the first sentence, which were chosen by Kipu, are exactly the same in both systems. *See id.* at 33.

It is simply impossible for the similarities between the two systems to exist in the absence

9

of copying. Indeed, the Defendants' internal emails confirm that in creating the ZenCharts System, they copied the Kipu EMR System. On November 6, 2013, less than one month after obtaining access to the Kipu EMR System, S. Callahan sent an email stating:

> **Like we talked about before. We took a crack at redesigning the Kipu U.I. to get an idea of UI's for our own EMR…attached is what we came up with and an explanation in the PDF. <u>Keep it on the hush, of course</u>**.

*Id.* at ¶36. This email was preceded by an email chain in which it was suggested to S. Callahan to reverse engineer the Kipu EMR System: "**Any recommendations for an EMR / EHR?** . . . **Kipu** . . . **And if you can reverse engineer it** . . . ." *Id.* at ¶37. S. Callahan subsequently wrote:

> **I have 5 developers on it, two front end (myself and 1 other guy). . .Rick will learn the system inside and out as we build it so he can do trainings. I've set it as the only think to work on until March 31, 2014.**

*Id.* at ¶38. Shortly after this email was sent, Karkalichev began to log in to the Kipu EMR System from a Bulgarian IP address. *Id.* at ¶39. The Defendants subsequently used their access to the Kipu EMR System to better prepare for competition with Kipu. On December 18, 2013, the Defendants' internal emails reflect that the Defendants were attempting to figure out how to import patient data from the Kipu EMR System without Kipu's detection:

> **One feature I had that would be really smart is to figure out how Kipu's API exports the data and build it to EXACTLY receive and import Kipu charts . . . We would have to build something that screen scrapes / navigates through their system and exports the data before they notify Kipu they are cancelling.**

*Id.* at ¶41.

And, on June 3, 2014, S. Callahan instructed Karkalichev to add certain of the Kipu EMR System's new features to the ZenCharts System: "**I like the role based stuff they [Kipu] added. Can you [Karkalichev] make sure we have this as well.**" *Id.* at ¶42. Indeed, the ZenCharts System ultimately had user role features that were nearly identical to those of the Kipu EMR System. *See id.* at ¶43. **S. Callahan himself confirmed that he instructed Karkalichev to add the Kipu EMR System's role features to the ZenCharts System because he liked it**:

> Q. . . . And you said to Yanko (as read) : "I like the role-based stuff they add. Can you make sure we have this as well?" Right?
> A. Every once in a while it rains in the desert.
> Q. I don't know what that means.
> A. They added something I liked.
> . . . .

10

> Q. And you're instructing Yanko [Karkalichev], the lead developer [of the ZenCharts System], to add an element that Kipu has, right?
> A. Yeah, I said, "Can you make this – can you make sure we have this as well."

*Id.* at ¶42. S. Callahan similarly advised Glaser on August 26, 2014, that he had added some new Kipu EMR System features to the ZenCharts System: "**Just FYI I get these [Kipu records release notes] too and today I added the flow chart feature and LOC history.**" SOF, ¶44. The Defendants thus copied the Kipu EMR System in creating the ZenCharts System.

### F.   Kipu Contacts Two of ZenCharts' Customers, but the Customers Stay with ZenCharts

Kipu subsequently contacted two of ZenCharts' customers (respectively, "Blanchard" and "Journey Pure"). *Id.* at ¶45. Kipu represented to Blanchard that certain of ZenCharts' customers were leaving ZenCharts for Kipu and provided reference letters from customers that had already done so. *Id.* at ¶46. Kipu told Journey Pure that it had initiated this lawsuit against ZenCharts. *Id.* at ¶47. However, both Blanchard and Journey remained and still are customers of ZenCharts. *Id.* at ¶48.

### III.   PROCEDURAL BACKGROUND

Kipu initiated this action by filing its *Complaint* [D.E. 1] on December 31, 2017. The Plaintiff's operative pleading is the *First Amended Complaint* [D.E. 118], in which the Plaintiff states claims for violations of CADRA, breach of the 2013 License Agreement, breach of the 2014 TOS, unfair competition under Florida common law, and breach of the 2013 TOS. The Plaintiff has sought leave to amend its operative pleading so as to state only these claims. [*See* D.E. 156.]

ZenCharts filed a responsive pleading raising counterclaims for tortious interference with business relations, violation of FDUTPA, trade libel, and violation of the Lanham Act. [*See* D.E. 163.] All of ZenCharts' Counterclaims are based on the Plaintiff's communications with Blanchard and Journey Pure.

Solutions also filed a responsive pleading and raised a counterclaim for breach of the 2013 License Agreement. [*See* D.E. 164.] Solutions claims that Kipu breached the 2013 License Agreement because (1) it did not finish implementing the Kipu EMR System, (2) it did not provide Solutions with adequate training, and (3) the Kipu EMR System purportedly did not have the forms Solutions wanted.

### IV. ARGUMENT

#### A. Applicable Standards

Summary judgment is appropriate where there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)) (quotation mark omitted). "The moving party has the initial burden of showing the absence of a genuine issue as to any material fact." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F.Supp.3d 1291, 1298 (S.D. Fla. 2018). Once the movant satisfies its initial burden, the burden shifts to the non-movant to come forward with evidence showing a genuine issue of material fact. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). If the record, taken as a whole, cannot lead a rational trier of fact to find for the non-movant, then summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

#### B. Summary Judgment Against the Defendants as to Liability on Plaintiff's Claims Is Appropriate

1. <u>Solutions Was Bound by 2013 License Agreement, and All Defendants Were Bound by 2013 TOS and 2014 TOS</u>

"Under Florida law, the elements of a breach of contract claim are (1) a valid contract; (2) a material breach; and (3) damages." *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F.Supp.3d 1359, 1366 (S.D. Fla. 2017) (quotation omitted). The 2013 License Agreement is a valid contract that was executed by and bound Solutions. *See* SOF, ¶9.

Under the terms of the 2013 License Agreement, Solutions was bound by Kipu's TOS. "'[I]t is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document . . . is to be interpreted as part of the writing.'" No. 17-22366-WILLIAMS, 2018 WL 1120902, at *4 (S.D. Fla. Jan. 12, 2018) (quoting *Avatar Props., Inc. v. Greetham*, 27 So. 3d 764, 766 (Fla. 2d DCA 2010)).

> When a contract explicitly incorporates or references another document, such as the Product Guide, the signatory is also presumed to have read and understood the contract terms that include the existence and incorporation of the other document, whether or not that document was provided.

*Lincoln Nat'l Life Ins. Co. v. Sussman*, No. 8:16-cv-52-T-26AAS, 2016 WL 10537022, at *4 (M.D. Fla. Dec. 29, 2016).

The 2013 License Agreement explicitly incorporates Kipu's TOS:

12

> The Kipu Systems "Terms of Service" ("TOS"), available online at http://kipusystems.com/terms, are part of this agreement. . . . Our TOS, available online at http://kipusystems.com/terms, are part of this agreement and take precedence over any other agreements. It is agreed that the most current version of the TOS shall apply and that those TOS may be revised by us from time to time, without prior notice.

[D.E. 118-1, §§1, 6.] *See also* SOF, ¶10. Therefore, Kipu's TOS bound Solutions.

All of the other Defendants were also bound by Kipu's TOS.

> On the internet, the primary means of forming a contract are the so called "clickwrap" or ("click-through") agreements, in which website users typically click an "I agree" box after being presented with a list of terms and conditions of use, and the "browsewrap" agreements, where website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen.

*IT Strategies Group, Inc. v. Allday Consulting Group, L.L.C.*, 975 F.Supp.2d 1267, 1280 (S.D. Fla. 2013) (quotation omitted). "In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts." No. 18-cv-62570-BLOOM/Valle, 2019 WL 1900332, at *2 (S.D. Fla. Apr. 29, 2019) (quotation omitted).

Each time any of the Defendants attempted to log in to the Kipu EMR System, they received the following prompt, along with a hyperlink to the most current version of Kipu's TOS: "'By selecting 'Sign in' above, you indicate that you have read and agree to abide by the Kipu Systems Terms Of Use.'" SOF, ¶11. This is sufficient to create an enforceable agreement. *See, e.g.*, *Greenberg v. Doctors Assocs., Inc.*, 338 F.Supp.3d 1280, 1282 (S.D. 2018) (finding acceptance of following offer with disclaimer providing link to terms of use sufficient to bind plaintiff to terms of use: "By clicking 'Sign me up' you agree to receive email promotions and other general email messages from Subway Group. In addition you agree to the Subway Group Privacy Statement and Terms of Use."). The Defendants were thus bound by Kipu's TOS.

> 2. 2013 License Agreement, 2013 TOS, and 2014 TOS Prohibited Defendants from Copying the Kipu EMR System and from Having a Business Interest or Association with a Competitor of Kipu's

Kipu's TOS, which were incorporated into the 2013 License Agreement, expressly prohibited the Defendants from copying the Kipu EMR System. Specifically, the 2013 TOS and 2014 TOS both provided: "You may not duplicate, copy, or reuse any portion of the HTML/CSS or visual design elements without express written permission from us [Kipu]." SOF, ¶¶12, 14. The 2014 TOS further provided:

13

> By agreeing to these Terms, User affirms that neither it nor any of its officers, executives, shareholders, partners, employees, independent contractors, or other business associates of any kind are currently or will become, either directly or indirectly, an officer, executive, shareholder, partner, employee, independent contractor, advisor, consultant, or any other business associate of any kind of any business entity who does currently operate in or intends to enter into competition with Kipu Systems, LLC, during the period of time User is licensed to use the Service. . . .
>
> Except as otherwise expressly permitted in writing by Kipu Systems, LLC, User will not access the service for the purposes of copying the flow, process, or any other Intellectual Property belonging to Kipu Systems for the purposes of incorporating any such Intellectual Property into a competitive product.

*Id.* at ¶14.

### 3. CADRA and Florida Common Law Proscribing Unfair Competition Prohibited Defendants from Copying Kipu EMR System Knowingly and with Intent to Cause Harm or Loss

CADRA prohibits a person from obtaining "information from a protected computer without authorization" "knowingly and with intent to cause harm or loss[.]" Fla. Stat. § 668.803(1). The law of unfair competition prohibits the same conduct, as it encompasses "all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Alphamed Pharma. Corp. v. Arriva Pharma., Inc.*, 432 F.Supp.2d 1319, 1353 (S.D. Fla. 2006) (quotation omitted). *See CBS, Inc. v. Garrod*, 622 F.Supp. 532, 536 (M.D. Fla. 1985) (indicating that cause of action for unfair competition involving record piracy exists where there is (1) time, labor, and money expended in making records, (2) copying and sale of records in competition, and (3) commercial damage). The Defendants were not authorized to copy the Kipu EMR System. Therefore, the Defendants could not knowingly and with intent to cause harm or loss copy the Kipu EMR System without violating CADRA and committing the tort of unfair competition.

### 4. Defendants Copied the Kipu EMR System Knowingly and with Intent to Cause Harm or Loss and Maintained a Business Interest and Association with a Competitor of Kipu's

A rational trier of fact considering the record as a whole can only conclude that the Defendants copied the Kipu EMR System knowingly and with the intent to cause Kipu harm or loss. *See Matsushita*, 475 U.S. at 587. S. Callahan started building an EMR system in 2012. *See* SOF, ¶8 ("November 12, 2012 email from S. Callahan to Glaser in which S. Callahan represents

that he is 'building an EMR for Treatment Centers'"). In 2013, he and Glaser approached Kipu as the owners and officers of Solutions, a substance use disorder treatment center, without disclosing that they were developing a competing EMR system. *See* SOF, ¶¶7-8. Then, after gaining access to the Kipu EMR System through Solutions, they provided that access to one of Website Consultants' Bulgarian computer programmers, Karkalichev, who had no legitimate business purpose for accessing the Kipu EMR System at all, and who accessed the Kipu EMR System **fifty-six (56) times after Solutions stopped using it**. *See id.* at ¶¶15-23.

The Defendants' access to the Kipu EMR System was ultimately terminated for nonpayment, but, following a few failed attempts to circumvent this termination, the Defendants continued accessing the Kipu EMR System using third-party customer accounts without Kipu's knowledge or authorization. *See id.* at ¶¶24-27. All the while, the Defendants engaged in extensive internal communications about copying and competing with the Kipu EMR System, and proceeded with the development of their competing EMR system accordingly. *See id.* at ¶¶36-44. By the time it was all finished, the features and user interface of the Defendants' ZenCharts System was so similar to the features and user interface of the Kipu EMR System that it simply could not have been the product of independent creation. *See id.* at ¶¶28-34; *supra*, pp.6-12.

Therefore, the Defendants cannot genuinely dispute the fact that they copied portions of the Kipu EMR System knowingly and with the intent to cause Kipu harm or loss. Because this fact is sufficient to find the Defendants liable on the Plaintiff's Claims as a matter of law, summary judgment against the Defendants as to liability on the Plaintiff's Claims is appropriate.

Summary judgment as to liability on the Plaintiff's Claims asserting breaches of the 2013 License Agreement and 2014 TOS is also appropriate because the Callahans, Glaser, and Karkalichev indisputably had a business interest and association with the developer of the ZenCharts System at the same time that they were accessing the Kipu EMR System. Solutions acquired a license to use the Kipu EMR System in October 2013. *See id.* at ¶9. At that time, the Callahans and Glaser owned Solutions, and S. Callahan and Glaser also owned Website Consultants. *See id.* at ¶8. At the same time, Website Consultants and its programmers, including Karkalichev, were working on developing the EMR software that would become the ZenCharts System. *See id.* (citing evidence and pleading demonstrating that development of the ZenCharts System began between "November 12, 2012" and "late 2013 early 2014"). Moreover, the ZenCharts System was owned by ZenCharts after its launch, and the Callahans and Glaser founded

15

and own ZenCharts. *See id.* at ¶¶15, 28. These facts, which are not in dispute, establish the foregoing contractual breaches and liability therefor as a matter of law.

### C. Summary Judgment Against ZenCharts on ZenCharts' Counterclaims Is Appropriate

#### 1. ZenCharts' Counterclaims Require a Termination of the Business Relationship Between ZenCharts and a Customer with whom the Plaintiff Communicated

ZenCharts' Counterclaims are all based on Kipu's communications with two of ZenCharts' customers, Blanchard and Journey Pure. [*See* D.E. 163, pp.40-44.] ZenCharts has not alleged with specificity, and does not have evidence of, any additional tortious communications. In order to avoid a summary judgment on these counterclaims, then, ZenCharts must prove that it lost Blanchard or Journey Pure as a customer. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (including among elements of claim for tortious interference with business relationship **breach of the relationship**); *Casa Dimitri Corp. v. Invicta Watch Co. of America, Inc.*, 270 F.Supp.3d 1340, 1352 (S.D. Fla. 2017) (noting that **actual damages**, not mere lost profits or competitive harm, are required to prevail on claim for violation of FDUTPA); *Border Collie Rescue, Inc. v. Ryan*, 418 F.Supp.2d 1330, 1348 (M.D. Fla. 2006) (requiring that alleged falsehood play a material and substantial part in **inducing others not to deal with plaintiff** to state claim for trade libel); *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F.Supp.2d 1359, 1376 (S.D. Fla. 2010) (noting that plaintiff bringing claim under Lanham Act based on false advertising must show that deception had a **material effect on purchasing decisions**).

#### 2. Neither of the Two Customers with whom the Plaintiff Communicated Terminated Their Business Relationship with ZenCharts

ZenCharts cannot establish that Kipu's communications with Blanchard and Journey Pure resulted in a "breach of the relationship," caused "actual damages," played "a material and substantial part in inducing others not to deal with" ZenCharts, or had a "material effect on purchasing decisions" because ZenCharts never lost Blanchard or Journey Pure as a customer:

> Q. Okay. Is Blanchard Addiction Resources a ZenCharts customer?
> A. They are, to this day, very happy.

SOF, ¶48.

> Q. But Journey Pure never left Zen, right?
> A. Journey Pure did not. Journey Pure is still a customer today.

*Id.* Therefore, ZenCharts cannot prove its counterclaims, and it is appropriate to enter a summary

16

judgment against ZenCharts on ZenCharts' Counterclaims.

### 3. ZenCharts' Counterclaim for Violation of the Lanham Act Requires Wide Dissemination of Statements

The Lanham Act prohibits only those false or misleading statements that occur in the context of "commercial advertising or promotion." *See* 15 U.S.C. § 1125(a)(1)(B). "[C]ourts within the Eleventh Circuit use the four-part test set forth in *Gordon & Breach Science Publishers S.A. v. American Institute of Physics and American Physical Society*, 859 F.Supp. 1521, 1535-36 (S.D.N.Y. 1994), in determining whether a representation falls within the ambit of the Lanham Act . . . ." *Astro Tel, Inc. v. Verizon Florida, LLC*, No. 8:11-cv-2224-T-33TBM, 2012 WL 1581596, at *7 (M.D. Fla. May 4, 2012). This test requires that the "commercial advertising or promotion" be "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* Thus, the statements must "at a bare minimum" be directed at a class or category of consumers, not simply particular individuals. *Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19 (1st Cir. 2003).

### 4. The Plaintiff's Statements Were Not Widely Disseminated

ZenCharts has not alleged, and cannot muster any evidence supporting, that Kipu communicated with anyone other than Blanchard and Journey Pure. These communications do not rise to the level necessary to prevail on a claim under the Lanham Act. *See id. See also Astro Tel*, 2012 WL 1581596, at *7-8 (finding comparable communications insufficient to support claim under Lanham Act). Therefore, a summary judgment against ZenCharts on its counterclaim under the Lanham Act is appropriate.

### D. Summary Judgment Against Solutions on Solutions' Counterclaim Is Appropriate

### 1. Solutions' Counterclaim Requires Evidence of a Material Breach of the 2013 License Agreement that Caused Damages

"The elements of a breach of contract are (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). "Plaintiffs are required to point toward an express provision in the contract that creates the obligation allegedly breached." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F.Supp.2d 1334, 1340 (S.D. Fla. 2012). "To constitute a vital or material breach, a party's performance must go to the essence of the contract." *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 849 (11th Cir. 2013) (quotation omitted).

### 2. There Is No Evidence that the Plaintiff Materially Breached the 2013 License Agreement or Caused Damages

Solutions alleges that Kipu breached the 2013 License Agreement by purportedly failing to provide certain forms and to provide adequate training. [*See* D.E. 164, pp.36-37.] However, Solutions has failed to identify any provision of the 2013 License Agreement that required Kipu to provide any particular forms, *see Brush v. Miami Beach Healthcare Group Ltd.*, 238 F.Supp.3d 1359, 1366-67 (S.D. Fla. 2017) ("A breach of contract claim must be dismissed where it is unclear what provision or obligation under the contract has been violated.") (quotation omitted), and there is no evidence that Kipu's purported failure to provide adequate training was material or caused any damage. In fact, the evidence shows that Kipu's purported failure to provide adequate training was inconsequential. *See* SOF, ¶19. Therefore, Solutions cannot prevail on its counterclaim to the extent that it is based on these alleged breaches.

### 3. Solutions' Counterclaim Is Barred by the Prevention of Performance Doctrine

Solutions also alleges that Kipu breached the 2013 License Agreement by failing to complete the implementation of the Kipu EMR System. Under the 2013 License Agreement, however, Kipu had until December 7, 2013, to complete the implementation of the Kipu EMR System, and Solutions prematurely instructed Kipu to stop implementing the Kipu EMR System on November 19, 2013. *Id.* at ¶¶17-18.

Solutions thus prevented Kipu's completion of the implementation and, under the doctrine of prevention of performance, cannot avail itself of this nonperformance. *See, e.g.*, *Perry v. Schumacher Group of Louisiana*, No. 2:13-cv-36-FtM-29DNF, 2014 WL 988751, at *5 (M.D. Fla. Mar. 13, 2014) ("The doctrine of prevent of performance applies, generally, when a party to a contract is ready, willing and able to perform, but the other party prevents [her] from performing by imposing obstacles not contemplated within the contract. The doctrine of prevention of performance bars the preventing party from availing itself of the other party's nonperformance.") (quotation omitted). Therefore, a summary judgment against Solutions on Solutions' Counterclaim is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Plaintiff requests the Court to enter an order granting this motion, finding Plaintiff entitled to a summary judgment against the Defendants as to liability on the Plaintiff's Claims, finding Plaintiff entitled to a summary judgment against ZenCharts on ZenCharts' Counterclaims, finding Plaintiff entitled to a summary judgment against Solutions on

Solutions' Counterclaim, awarding Plaintiff attorneys' fees and costs under the 2013 License Agreement, 2013 TOS, 2014 TOS, Fla. Stat. § 668.804, Fla. Stat. § 501.2105, and other applicable law, and granting Plaintiff such additional relief as the Court deems just and appropriate.

Dated:  May 20, 2019

|  | Respectfully submitted, |
|---|---|
| **MARK STEIN LAW** | **AGENTIS PLLC** |
| Mark E. Stein, Esq. | |
| Florida Bar No.: 818666 | By: */s/Christopher B. Spuches* |
| mark@markstein.com | Florida Bar No.: 42456 |
| 2999 N.E. 191st Street | Christopher B. Spuches |
| Suite 330 | e-mail: cbs@agentislaw.com |
| Aventura, Florida 33180 | 55 Alhambra Plaza, Suite 800 |
| Tel.: 305.356.7550 | Coral Gables, Florida 33134 |
| | Tel. 305.722.2002 |

*Counsel for Plaintiff, Kipu Systems, LLC*

Case No.1:17-cv-24733-KMW-EGT

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notice of Electronic Filing Generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/Christopher B. Spuches*
      Christopher B. Spuches

## **SERVICE LIST**

**ZENCHARTS, LLC**
**WEBSITE CONSULTANTS, INC.**
**DANIEL J. CALLAHAN**
**SEAN CALLAHAN**
**SOLUTIONS RECOVERY CENTER LLC**
**RICHARD GLASER**
**YANKO KARKALICHEV**
*Via e-mail to Counsel of Record*

**ZEN MEDICAL, LLC**
*Via e-mail to Counsel of Record*

                  */s/ Christopher B. Spuches*
                  Christopher B. Spuches