**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KIPU SYSTEMS LLC,
a Florida limited liability company,

          Plaintiff/Counter-Defendant,

v.

ZENCHARTS LLC, a Florida
limited liability company,
ZEN MEDICAL, LLC, an administratively dissolved
Florida limited liability company,
SOLUTIONS RECOVERY CENTER, LLC,
a Florida limited liability company,
WEBSITE CONSULTANTS INC., a Florida corporation,
RICHARD 'RICK' GLASER, an individual,
KEITH HOULIHAN a/k/a KEITH HOOTIE, an individual,
SEAN CALLAHAN, an individual,
DANIEL J. CALLAHAN, an individual, and
YANKO KARKALICHEV, an individual,

          Defendants.
_____/

Case No.1:17-cv-24733-KMW-EGT

**JURY TRIAL REQUESTED**

**PRELIMINARY INJUNCTIVE
RELIEF REQUESTED**

## SECOND AMENDED COMPLAINT

Plaintiff, KIPU SYSTEMS LLC ("Kipu" or the "Plaintiff"), sues Defendants, ZENCHARTS LLC ("ZenCharts"), ZEN MEDICAL, LLC ("Zen Medical"), SOLUTIONS RECOVERY CENTER, LLC ("Solutions Recovery"), WEBSITE CONSULTANTS INC. ("Website Consultants"), RICHARD 'RICK' GLASER ("Glaser"), KEITH HOULIHAN a/k/a KEITH HOOTIE ("Houlihan"), SEAN CALLAHAN ("Sean Callahan"), DANIEL J. CALLAHAN ("Dan Callahan"), and YANKO KARKALICHEV ("Karkalichev") (Zen Charts, Zen Medical, Solutions Recovery, Website Consultants, Glaser, Houlihan, Sean Callahan, Dan Callahan, and Karkalichev are collectively referred to as the "Defendants") for: (a) Violations of Florida's Computer Abuse and Data Recovery Act (Fla. Stat. § 668.801 *et al.*); (b) Florida Common Law Unfair Competition; (c) Florida Common Law Breach of 2014 Terms of Service;

(d) Willful Infringement of a Registered Trademark (15 U.S.C. § 1114(1)); (e)Florida Common Law Breach of License Agreement; and (f) Florida Common Law Breach of 2013 Terms of Service.

In support of these six causes of action, Kipu states as follows:

## INTRODUCTION

1.       The Defendants deceived and defrauded Kipu, and engaged in an orchestrated, illicit scheme to steal Kipu's valuable intellectual property.  These actions were taken to illegally develop copycat software, called "ZenCharts", which would compete with Kipu's industry-leading, proprietary electronic medical records (EMR) software called the "Kipu EMR System." Kipu has consequently suffered damages in an amount not less than $30,000,000.00, and demands a preliminary and permanent injunction against Defendants including ZenCharts, and other relief set forth below.

## STATEMENT OF FACTS

### Kipu Becomes the Industry Leader in Cloud-Based Electronic Medical Records for the Addiction Treatment Industry

2.       Kipu is the leader in cloud-based EMR specifically designed for drug and alcohol addiction treatment centers.

3.       Drug and alcohol addiction represents an unfortunate and growing epidemic in the United States.   Recent statistics released in 2016 by a U.S. Surgeon General report show: (a) over 22 million Americans struggle with substance abuse, (b) 58,000 Americans died of addiction related causes in 2016, and (c) over 66 million Americans reported they had abused drugs or alcohol in the past year.   The result of the foregoing represents a $442 billion impact on our economy.  In August 2017, President Trump announced that the "opioid crisis" was a national emergency.

4.      Approximately seven years ago, Kipu's founders recognized the alarming and unfortunate escalation of drug and alcohol addiction.  They also understood how addiction treatment centers were strained to deliver effective treatment solutions due to the vast records that needed to be maintained, and the difficulty in offering access to such information to the treating clinician.  Accordingly, Kipu's founders realized a true need for a robust, flexible and effective EMR system and related technology necessary to help automate addiction treatment centers, to allow them to better deliver improved care with better patient outcomes.

5.      After thousands of development hours and millions of dollars spent on programming and development, Kipu created the Kipu EMR System—a first of its kind, unique EMR system that improves addiction patient care through the innovative use of technology. In creating this breakthrough technology, Kipu worked hand-in-hand with several addiction treatment centers to understand the demands of the industry, and met with doctors, medical staff and clinical staff at various addiction treatment centers.

6.      The Kipu EMR System automates addiction treatment centers and enables them to deliver improved care when treating those suffering from drug and alcohol addiction.  Kipu's advanced EMR system automates the entire episode of care in addiction treatment including detoxification, residential treatment, intensive outpatient treatment, as well as aftercare.  The innovative technology eliminates paper medical forms, helping clinicians treat patients by automating assessments, diagnosis, history and physicals as well as creating treatment plans.  In short, the Kipu EMR System allows clinicians to deliver better overall patient care and increased productivity.

7.      In or about September 2012, the Kipu EMR System was launched.  As a unique and proprietary cloud-based system, the Kipu EMR System was created to enable scalability and to allow the medical clinician the ability to access the technology via smart phone, tablet, PC,

laptop and/or any other Internet-connected device.  Prior to the Kipu EMR System, no such cloud-based EMR technology was available in the addiction recovery industry.

8.      Since its inception, Kipu has spent millions of dollars to create, market and promote the Kipu EMR System.  The software has since gained considerable notoriety in the addiction treatment industry. Over 480,000 patients have been treated using the Kipu EMR System.  Today, it is used by some 1,300 treatment facilities worldwide.

9.      Kipu engages in appropriate efforts to register, protect, and if necessary enforce its intellectual property.  Kipu owns five issued Federal trademark registrations before the United States Patent & Trademark Office ("USPTO"), including Trademark Registration No. 4,442,687, for the mark KIPU, in International Class 9. Kipu also owns United States Copyright Registration No. TX0008280027 entitled "Kipu EMR" having an effective date of December 22, 2016 (listing a first publication date of April 27, 2012).

10.     Kipu's rapid success is based on its development and creation of valuable intellectual property found in the underlying computer architecture as well as independently the overall design of the Kipu EMR System.  Examples of such intellectual property include the OTO® Program, a proprietary algorithm for assisting in treating patients.

11.     One of the many unique and proprietary programs within the Kipu EMR System is the aforementioned "One Time Only" algorithm, which is marketed and promoted under the distinctive trade name OTO® and protected by Trademark Registration No. 5,127,508 (the "OTO Mark").

12.     This groundbreaking program (the "OTO Program") allows clinicians to create a record of disruptive patients who negatively affect others in the facility, often by bringing drugs into a treatment facility.  Clinicians in the drug and alcohol treatment industry have come to

recognize and associate the OTO Program as one of most identifiable and beneficial protocols found in the Kipu EMR System.

13.    Based on the foregoing, Kipu has created considerable goodwill and reputation through the Kipu EMR System, including under the KIPU® Mark, as well as the OTO® Mark.

### Dan Callahan, Sean Callahan, and Richard Glaser's Illicit Scheme to Steal and Copy the Kipu EMR System

14.    In 2013, self-proclaimed recovery "guru" Dan Callahan (owner of Coconut Creek, Florida-based Solutions Recovery) noticed the incredible success and value of the Kipu EMR System, and specifically how Kipu had quickly amassed a considerable number of addiction treatment center clients.

15.    Accordingly, Dan Callahan hatched a plan with his son, Sean Callahan, and Richard Glaser, the owners of Website Consultants (a software development and programming company). The plan was simple: approach Kipu under the false pretense that Dan Callahan's drug treatment center, Solutions Recovery, was interested in purchasing a license to use the Kipu EMR System, gain access to the Kipu EMR System, and then create a copycat EMR product (through understanding the overall architecture and/or design of Kipu's technology) without having to spend millions of dollars and thousands of hours developing the software.

16.    Dan Callahan, Sean Callahan and Glaser ultimately called the copy-cat EMR program: "ZenCharts."

17.    Website Consultants engaged its various international programmers—including Bulgarian-based Karkalichev and Anton Aladzhov ("Aladzhov")—to assist in the conspiracy to copy and exploit Kipu's intellectual property through improper and unauthorized logins to the Kipu EMR System.  This included not only efforts to emulate the back end of the Kipu technology

(including its architecture), but also efforts to mimic the overall look-and-feel of the Kipu EMR System, but making its user interface (UI) as close as possible to Kipu's unique appearance.

18.     In or about August 2013, Glaser and Sean Callahan were added as managing members to Solutions Recovery's publicly available corporate documents with the State of Florida. This deception served to legitimize all of Glaser and Sean Callahan's inquiries to Kipu through Solutions Recovery.

19.     With the foundation of their illicit scheme in place, Dan Callahan, Sean Callahan and Glaser reached out to Kipu and expressed interest in licensing the Kipu EMR System for Solutions Recovery.  However, Kipu was never made aware that Sean Callahan and Glaser were providing Solutions Recovery's Kipu access to their software development company, Website Consultants and its Bulgarian based software developers, Karkalichev and Aladzhov.

20.     On or about October 1, 2013, Kipu provided an in-person demonstration of the Kipu EMR System to, among others, Dan Callahan, Sean Callahan, and Glaser at Solutions Recovery's facilities (under the representation all three were managing members/officers at Solutions Recovery).  This demonstration highlighted the Kipu EMR System's features without revealing any proprietary information or intellectual property.

21.     A week after the demonstration, on or about October 8, 2013, Solutions Recovery entered into a binding, non-exclusive software license agreement with Kipu (the "2013 License Agreement") for purposes of limited and restrictive use of the Kipu EMR System at Solutions Recovery's Coconut Creek facility.  A true and correct copy of the 2013 License Agreement, executed by Glaser as the purported CFO of Solutions Recovery, is attached as **Exhibit A**.  By that time, the Kipu EMR System had been launched for over a year and had considerable praise and traction in the addiction treatment and recovery industry.

22.     Kipu then began the laborious task of implementing and customizing the Kipu EMR System under its licensing terms with Solutions Recovery.

23.     About one week later, Solutions Recovery obtained three "Super Admin" log-in credentials to the Kipu EMR System.  These logins would provide Glaser, Sean Callahan, Dan Callahan, and their co-conspirators, with expanded access and review rights to the Kipu EMR System.  Upon receipt of these three "Super Admin" logins, none of those implicated individuals— namely, Glaser, Sean Callahan, and Dan Callahan—alerted Kipu of their intention to circulate these credentials to any Bulgarian based software developers.  Nor at any time between October 1, 2013 until circulation of such credentials was there any notice by these individuals that they would have anyone overseas using such credentials to access Kipu.

24.     Instead, and completely unbeknownst to Kipu, Glaser, Sean Callahan, and Dan Callahan shared their log-in credentials with other individuals in violation of Kipu's Terms of Service.   These other individuals included certain Bulgarian based software developers, specifically:  Karkalichev, Aladzhov and their cohorts.

25.     Through use of his "Super Admin" log-in credentials (username: dcallahan; associated e-mail: dan@solutionsrehab.com) Dan Callahan, as Solutions Recovery's managing member and CEO  (or someone to whom he provided unauthorized access) signed into the Kipu EMR System at least 52 separate times over the course of only one month (from October 15, 2013 to November 15, 2013).   That volume of entries, relative to other Kipu clients, was disproportionately high and could only be explained by an effort to misappropriate the Kipu EMR System.   Solutions Recovery's website,  https://www.solutionsrehab.com/meet-our-team/ identifies Dan Callahan as Solutions Recovery's current CEO (last viewed December 29, 2017).

26.     The 2013 License Agreement obligated Solutions Recovery, as well individuals using login credentials provided by Solutions Recovery, to agree to abide by the most current version of Kipu's Terms of Service ("<u>TOS</u>").

27.     The 2013 License Agreement also provided notice to Solutions that "[t]he Kipu Systems 'Terms of Service ('TOS'), available online at http://kipusystems.com/terms, are part of this agreement."  *See* **Exhibit A** (2013 License Agreement).  The 2013 License Agreement also provided notice that Kipu's "TOS, available online at http://kipusystems.com/terms, are part of this agreement and take precedence over any other agreements.  It is agreed that the most current version of the TOS shall apply and that those TOS may be revised by us from time to time, without prior notice." *Id*.

28.     In October 2013 the TOS explicitly restricted use of the Kipu EMR System requiring users to agree "***not to*** reproduce, duplicate, copy, sell, resell ***or exploit any portion of the Service***, use of the Service, or access to the Service without express written permission from us." *See* **Exhibit B** (2013 TOS) (emphasis added).

29.     On January 6, 2014, the TOS were updated (the "<u>2014 Kipu TOS</u>").  The 2014 Kipu TOS governed and restricted use of the Kipu EMR System.  Specifically, the TOS stated that the:

> Structure, organization, flows, processes, and source code of the Service (collectively, "Intellectual Property") are the valuable trade secrets and confidential information of Kipu Systems, LLC.

*See* **Exhibit C** (2014 TOS).

30.     The 2014 Kipu TOS also expressly limited the permissible scope of use of the Kipu EMR System.  System users were "authorized only to use the Service for ***legitimate business purposes in relation to site-level administration of its facility***". The 2014 Kipu TOS further stated that "[e]xcept as expressly permitted in writing by Kipu Systems, LLC, User may not modify, port, adapt, or translate the Service" *Id*. (emphasis added).

31.     Users having access log-ins to the Kipu System were further prohibited to:

> reverse engineer, decompile, dissemble, or ***otherwise attempt to discover*** or reduce to human readable form the source code of the Service [nor could users] access the service for the purposes of copying ***the flow, process, or any other Intellectual Property belonging to Kipu Systems for the purposes of incorporating any such Intellectual Property into a competitive product***.

*See* **Exhibit C** (emphasis added).

32.     Each time one of the Defendants, or one of the Bulgarian based software developers which Defendants provided Kipu sourced credentials to, logged into the Kipu EMR System the user was prompted with a login screen that required the entry of a username and password and provided the following disclaimer: "By selecting 'Sign in above, you indicate that you have read and agreed to abide by The Kipu Systems Terms of [Service]," followed by a link to Kipu's TOS.

33.     This login process created a new agreement between Kipu and the individual user, which required the user to abide by the restrictions set forth in the Kipu TOS and the user was free to reject the amended TOS by not logging into the Kipu EMR System.

34.     Unbeknownst to Kipu, from October 10, 2013 until January 16, 2014, Dan Callahan, Sean Callahan and Glaser, with Website Consultants' Bulgarian based software programmers – including, but not limited to, Karkalichev and Aladzhov – engaged in a targeted mission to log into the Kipu EMR System an astonishing amount of times—over 150 in total—to review the architecture, functionality, process, flows, capabilities and advancements Kipu had developed.  This was all conducted under the direct oversight, control and supervision of Dan Callahan, Sean Callahan and Glaser.

35.     Unable to replicate the Kipu EMR System on their own, Dan Callahan, Sean Callahan and Glaser peppered Kipu's staff with various technical questions, seeking extensive details about the inner development and implementation of the Kipu EMR System.  As an example,

on or about October 28, 2013, Sean Callahan, Dan Callahan and Glaser specifically inquired about Kipu's proprietary OTO® feature.

36.     Under the false impression that Dan Callahan, Sean Callahan and Glaser were genuinely interested in maximizing the benefits of the Kipu EMR System for their South Florida based addiction treatment center, Solutions Recovery, Kipu earnestly responded to these inquiries believing that they were made in good faith and to advance a potential licensing relationship.

37.     On or about November 19, 2013, when it ultimately came time for Solutions Recovery to pay Kipu for the licensing (*i.e.*, implementation) of the Kipu EMR System, Glaser sent an e-mail to Kipu on behalf of Solutions Recovery flatly stating that they would not be licensing Kipu's proprietary system and needed to pause the service and any bills relating to its use.  Glaser's e-mail also stated that Solutions Recovery would only be using paper client files. Indeed, Solutions Recovery paid just $2,000 of the $10,000 due to Kipu for Kipu's custom implementation and extensive technical support.

38.     One week later, on November 25, 2013, Glaser sent another e-mail to Kipu on behalf of Solutions Recovery notifying Kipu that Solutions Recovery would not use the Kipu EMR System.

39.     The following week, on December 1, 2013, Solutions Recovery refused to remit payment to Kipu pursuant to the terms of the 2013 License Agreement and claimed to have "ceased all use of the Kipu EMR System except retrieval of critical client information necessary for the treatment of its clients, and severed all ties with Kipu."  *See* Declaration of Richard Glaser [D.E. 47-1].

40.     Notwithstanding Solutions Recovery's November 19, November 25, and December 1, 2013 e-mails, Solutions Recovery would then use their existing login credentials to create yet another additional "Super Admin" login, listing a Solutions Recovery e-mail address.  However,

the additional "Super Admin" credential was not for an actual Solutions Recovery employee. Instead, it was created for Karkalichev, whom at the time was not disclosed as a Bulgarian based software programmer serving as Website Consultants' Chief Technology Officer.

41.     On December 2, 2013, Solutions Recovery granted Karkalichev "Super Admin" credentials (through use of the email address yanko@solutionsrehab.com) to access the Kipu EMR System (the "Karkalichev Account").

42.     From December 2, 2013 to January 16, 2014, Karkalichev used those credentials to access the Kipu EMR System fifty-six (56) times.  Solutions Recovery never disclosed that Karkalichev was a software engineer working in Bulgaria for Sean Callahan and Glaser's company, Website Consultants.

43.     The Karkalichev Account, which was created *after* Solutions Recovery terminated the implementation of the Kipu EMR System, was not used for the implementation of the Kipu EMR System or for any legitimate business purpose related to the site-level administration of an addiction treatment center.

44.     Karkalichev also maintains an office in Plovdiv, Bulgaria, the approximate location of the IP addresses used (or attempted) to log in with various usernames to review the Kipu EMR System.  Kipu has now learned that Karkalichev shared his login credentials with other Bulgarian based software programmers – including potentially Aladzhov – which then used Karkalichev's login credentials to log into the Kipu EMR System.

45.     The chart below summarizes Solutions Recovery's voluminous logins *after* "pausing" use of the Kipu EMR System:

| Name | User Name | User Name Creation Date | Last Sign In Date | # of "Super Admin" Logins |
|------|-----------|-------------------------|-------------------|----------------------------|
| Sean Callahan | Sdiggles | October 10, 2013 | January 17, 2014 | 43 |
| Rick Glaser | Rickglaser | October 10, 2013 | November 9, 2013 | 2 |
| Dan Callahan | Dcallahan | October 15, 2013 | November 14, 2013 | 52 |
| Karkalichev | Yankokark | December 2, 2013 | January 15, 2014 | 56 |

46.     There is simply no rational explanation why a 24-bed addiction clinic in Coconut Creek, Florida would provide unlimited "Super Admin" access to the Kipu EMR System to these Bulgarian-based enterprise level software programmers.  Instead, there is only one reason why Karkalichev *would* log in to the Kipu EMR System: to study and misappropriate Kipu's workflows and intellectual property and to create a copycat version of Kipu's proprietary EMR system.

47.     At the same time that Solutions Recovery, Glaser, Dan Callahan, Sean Callahan, and Karkalichev were logging into the Kipu EMR System, they began developing the competing ZenCharts system.  Glaser, Dan Callahan and Sean Callahan even admit that "[i]n late 2013 and early 2014, [Dan] Callahan, Glaser, and [Sean] Callahan began the process of building[,]" the copycat ZenCharts' System.  [D.E. 33 ¶ 16].

48.     In fact, Karkalichev was not the only individual that continued to log into the Kipu EMR System for illicit purposes.  Sean Callahan's last login was on *January 19, 2014*.  Both came well after Solutions Recovery represented that it was no longer using the Kipu EMR System.

49.     Notably, in the approximate 100 days during which the Kipu EMR System was active at Solutions Recovery, its clinical director, Matthew Rosen, *only logged into the Kipu System once, and for less than a single minute*.  It is highly unusual that a clinical director would not have the most logins of any user of the Kipu EMR System.

### ZenCharts' Illicit Financing and Launch of its Copycat EMR System, and Theft of Kipu Clients

50.     To finance the development of the planned ZenCharts system, Glaser, Dan Callahan, and/or Sean Callahan approached Houlihan.

51.     At that time, Houlihan operated an illegal boiler room out of Miami Lakes, Florida, selling stock in a company called Sanomedics International Holdings, Inc. ("Sanomedics") to elderly and unsophisticated investors.[1]

52.     Houlihan would later plead guilty for his role in the $23 million boiler room scam and was sentenced to 111 months in Federal prison.[2]

53.     Sanomedics—though Houlihan—agreed to fund the venture.   Houlihan then formed a shell company, "VitaCura LLC", which received funds from Sanomedics disguised as "consulting fees".

54.     Sanomedics' ill-gotten funds ultimately funded the development and programming of ZenCharts' competing EMR system.   Tellingly, Sanomedics, through Houlihan, formed Zen Medical, ZenCharts' predecessor in interest, and listed Sanomedics as Zen Medical's *sole* manager.

55.     VitaCura LLC's formation had one purpose: to finance the illicit ZenCharts venture and conceal the fact that the venture was financed with the proceeds from Sanomedics' $23 million oiler room scam.

56.     By June 2014, and aided by multiple points of unauthorized access to the Kipu EMR System, Dan Callahan, Sean Callahan, Glaser, Website Consultants, Karkalichev and Aladzhov had uncovered the bulk of the proprietary information needed to create a copy-cat EMR program.

---

[1]  *See*  https://www.justice.gov/usao-sdfl/pr/miami-resident-sentenced-15-years-prison-23-million-boiler-room-fraud-scheme (Department of Justice, U.S. Attorney's Office, Southern District of Florida press release entitled "*Miami Resident Sentenced to 15 Years in Prison for $23 Million Boiler Room Scheme.*"

[2] *See* http://www.miamiherald.com/news/local/community/miami-dade/miami-lakes/article164437382.html ("*Main Cogs in $23 Million Investment Fraud Get Sentenced to Prison*", Miami Herald, July 30, 2017).

**ZenCharts Launches its Copycat Software and Continues its Surreptitious and Unauthorized Access of the Kipu EMR System**

57.     In January 2015, ZenCharts launched its copycat EMR system (the "ZenCharts System").  By this time, however, the Kipu EMR System had made continued technological advancements.  In comparison, ZenCharts' copycat EMR service was clearly inferior.  However, Solutions Recovery had lost access to the Kipu EMR System, since it had failed to pay Kipu, and its efforts to hack into Kipu through older, prior use Solutions Recovery's root and sub-level URLs were thwarted by Kipu's security systems.[3]

58.     Houlihan, Dan Callahan, Sean Callahan, Glaser, Karkalichev and Aladzhov then launched the next phase of their scheme:  third party, disguised access to the Kipu EMR System, and related economic espionage to steal Kipu's clients.

59.     In connection with this phase of the scheme, the same Bulgarian IP address associated with Karkalichev, 78.130.148.54, accessed the Kipu EMR System through at least three other Kipu client accounts, including Satori Waters, containing real-life PHI from May 2015 through January 2016, logging into the Kipu EMR System approximately 269 times, accessing patient records 2,664 times and viewing approximately 4,974 pages of PHI.  This was the exact IP address used to attempt to access the Kipu EMR System through older, prior use Solutions Recovery's root and sub-level URLs after Kipu had terminated accounts associated with Solutions Recovery.

60.     At the same time the Bulgarian IP address was accessing the Kipu EMR System through other Kipu client accounts, Zen Medical was making routine payments of thousands of dollars to Karkalichev for the development of the copy-cat ZenCharts System.

---

[3] While Kipu was aware of anonymous attempts to hack into its systems, it was not until recently that it discovered these attempts emanated from Bulgaria.

61.     The reason for the 2015 unauthorized access is clear.  After developing a copycat system in 2013-2014, ZenCharts needed to study and replicate changes and additions to the Kipu architecture, improved designs, as well as related functionalities, improvements, and updates Kipu programmed into the Kipu EMR System—all of which was borne from Kipu's significant investment and development.  As an example, in November 2015, just after concluding its unauthorized access through the third party Kipu Client, ZenCharts brazenly misappropriated Kipu's OTO® program—calling its copy-cat system the "OTO option"—a counterfeit and a willful infringement of Kipu's registered OTO Mark.

62.     Patient medical records—and especially those battling addiction—are not only sacrosanct, but are protected by HIPAA and 42 C.F.R Part 2.[4]  In stealing Kipu's proprietary information and clients, the Defendants have exhibited an astonishing insensitivity and disregard for Federal privacy laws and individual patient privacy.

63.     ZenCharts, Zen Medical, Houlihan, Glaser, Sean Callahan, and Dan Callahan began targeting the same clients as Kipu, offering them the copycat ZenCharts EMR system at a steep discount to the Kipu EMR System.  To this day Kipu does not understand how ZenCharts was able to locate and target the exact clients as Kipu within days and sometimes hours of Kipu speaking with the same potential clients.

64.     ZenCharts has since employed even more brazen methods to promote the copycat ZenCharts EMR system—including offering payments to Kipu employees for information regarding Kipu's technology and customer lists.

---

[4] HIPAA – The Health Insurance Portability and Accountability Act of 1996 provides for civil fines and in some cases, imprisonment where medical files containing patient health information ("PHI") are accessed by an individual or entity to sell, transfer, or use an individual's PHI for commercial advantage, personal gain or malicious harm.

65.     In September 2015, Houlihan officially registered "Zencharts LLC" with the Florida Department of State's Division of Corporations.

**<u>Kipu's Intellectual Property and Efforts to Protect It</u>**

66.     Kipu employs various reasonable measures to protect access to its intellectual property, including the employment of written license agreements with prospective and/or actual licensees, obligating users to "click-through" approve of Kipu's TOS.

67.     The Kipu TOS restricts users and limits the manner they can use the Kipu EMR System and requires the use of user accounts and passwords.  The Kipu TOS also have specific and express confidentiality obligations as well as prohibitions against reverse engineering and/or dissembling of the Kipu EMR System, including its architecture and overall design.

68.     The Defendants improperly used and employed the Kipu EMR System in an unauthorized manner that violated the Kipu TOS, as the Defendants' unauthorized access did not have a legitimate business purpose related to the site-level administration of an addiction treatment center.

69.     As one of many examples, Kipu has created certain system workflows to better improve clinical staff efficiencies.

70.     This includes, for example, clinical staff signatures for an evaluation, as well as a review functionality.   Kipu created these fields and inputs to accomplish such evaluations.

71.     Upon review of publicly available information on the ZenCharts' EMR System, such evaluation protocol likewise includes overlap signatures (as well as separate review signatures), all having similar fields and inputs.

72.     The promotion, sale and use of the ZenCharts' EMR System is a continued misappropriation of Kipu's intellectual property, which has continued from October 2013 to the present day.  Because ZenCharts' EMR System is based upon and derived from the Kipu EMR

System, a temporary, and later permanent injunction is required to protect Kipu's intellectual property rights.

**The Defendants' Counterfeiting and Related Infringement of the OTO Mark**

73.     The Kipu EMR System contains several distinctive non-functional source identifying indicia which associate the EMR system as originating from Kipu. One such example is the OTO Mark, which represents the underlying features and functionality of Kipu's OTO Program.  Its proprietary algorithm assists in addressing treatment for relapsed patients.

74.     The OTO Mark has achieved notoriety in the drug and alcohol addiction treatment industry, based upon considerable efforts by Kipu in the marketing, advertising and promotion of the Kipu EMR System.  Moreover, the OTO Mark is distinctive (either inherently and/or through acquired distinctiveness) as such maintains secondary meaning to the relevant consumers of the Kipu EMR System.

75.     The OTO Mark connotes considerable good will and repute, as it relates to the OTO Program, a unique and proprietary aspect of the Kipu EMR System.

76.     In short, the OTO Mark is affiliated with an indication (through the algorithm found within the OTO Program) whether a relapsed patient is not suitable for return treatment based upon a variety of uniquely selected factors—and instead should only be treated once by the treatment center.

77.     The OTO Mark is strongly associated as being a part of the Kipu System as well as Kipu's unique software offerings.  Current and potential Kipu customers have come to recognize and associate the OTO Mark solely and exclusively with Kipu.

78.     Throughout the October 2013 to January 2014 timeframe, when Solutions Recovery, Dan Callahan, Sean Callahan, Glaser, Karkalichev, Aladzhov, and Website Consultants engaged in a carefully orchestrated and illicit plot to review the inner workings, functionality and

source identifying components of the Kipu EMR System, these Defendants also copied unique attributes of the OTO Program.  In doing so, and as demonstrated below, ZenCharts would call its relapse patient algorithm the "OTO option":



79.     As shown in the above screen capture, this confusingly similar indicia and use of the term "OTO option" with related visual representations risks consumer confusion.  In addition, it provides and/or suggests that ZenCharts is authorized and/or licensed to use the Kipu EMR System's OTO Program.

80.     As ZenCharts uses the exact mark—OTO—which is a registered Kipu trademark, ZenCharts (as well as its predecessor in interest Zen Medical) created a "counterfeit mark" as defined by 15 U.S.C. 1116(d).  ZenCharts (as well as its predecessor in interest Zen Medical) have adopted and are now using the OTO Mark on the same exact EMR related services, to the same types of drug and alcohol addiction treatment centers which typically license the Kipu EMR Software.

81.     Moreover, ZenCharts (as well as its predecessor in interest Zen Medical) uses "OTO" as a spurious designation that is identical to (or substantially indistinguishable from) the OTO Mark in connection with the same exact services Kipu provides.

82.     In addition to being a spurious designation, ZenCharts' (as well as its predecessor in interest Zen Medical) use of "OTO" in the ZenCharts System is a reproduction, copy or colorable imitation of the OTO Mark in connection with the sale of services in competition with Kipu, which are likely to cause confusion and/or mistake, and/or to deceive, in violation of 15 U.S.C. 1114(1)(a).

83.     Lastly, such use of "OTO" in the ZenCharts System violates 15 U.S.C. 1125(a) in that use of OTO creates a false designation of origin that is likely to cause mistake, or to deceive consumers as to affiliation, connection or association with Kipu.

84.     Kipu spends substantial sums of money per year maintaining, improving, and updating the Kipu EMR System, including advertising and promotions under the marks KIPU and OTO.

85.     Kipu takes reasonable and appropriate measures in protecting its intellectual property, including its valuable trademark registrations.

86.     In an unfortunate effort to increase the risk of consumer confusion – as well as related acts of adopting a spurious designation - ZenCharts (including but not limited to its agents and affiliates) as well as Sean Callahan and Glaser, have contacted Kipu employees to solicit information regarding Kipu's functional capabilities.

87.     This effort has included offering referral fees to Kipu employees if an existing Kipu customer is referred to ZenCharts.

88.     In early 2016, certain of Kipu's clients notified Kipu that ZenCharts contacted them and offered the competing ZenCharts System.   Upon review, these clients remarked that the

functionality was derived and/or copied from the Kipu EMR System, and remarked as to the use of the OTO Mark (questioning whether there was a license grant or approval).

89.     In marketing the Kipu EMR System to prospective new clients, Kipu has been told that ZenCharts appears to be an affiliated EMR system to Kipu, offered at a discounted price.

90.     As such, Kipu is suffering (and will continue to suffer) irreparable harm unless the Defendants are preliminarily (and then later permanently) enjoined from the foregoing infringing and unlawful acts.  Kipu has been damaged considerably by the foregoing actions and is entitled to fair and appropriate financial compensation for the ill-gotten gains made by the Defendants through the creation and later sale of the copycat, infringing ZenCharts System.

## THE PARTIES AND THEIR RELATION TO THE STATEMENT OF FACTS

### a.   Kipu and its Proprietary, Industry-Leading EMR Software

91.     Kipu was formed and organized on September 30, 2012, and was located at 444 Brickell Avenue, Suite 850, Miami, Florida 33131.  Over the last seven years Kipu—and its founders before Kipu's formation—designed, developed, architected, programmed and advanced a proprietary, industry leading cloud-based EMR system marketed under the name KIPU.

### b.   The Defendants, their Affiliated Entities, and Co-Conspirators

#### i.     *Solutions Recovery (Solutions Recovery Center LLC)*

92.     Solutions Recovery, which also does business under the trade name "Addiction Solutions of South Florida," is a Florida limited liability company located at 6115 Lyons Road, Coconut Creek, Florida 33073.  Solutions Recovery markets itself as a 24-bed drug and alcohol treatment center.

#### ii.    *Website Consultants*

93.     Website Consultants is a Florida corporation organized on or about August 8, 2009, initially located at 11680 Tundra Drive, Unit 3103, North Fort Myers, Florida 33917.

94.     On or about October 23, 2013 (two weeks after execution of the 2013 License Agreement), Website Consultants changed its business address to 16145 State Road 7, Unit D, Delray Beach, Florida 33446, the exact address of Callahan Holdings.   Website Consultants purports to provide "enterprise level" computer programming, software development, and related web-based design services.[5]

95.     Website Consultants is the registrant and owner of the Solutions Recovery Website, which lists Glaser as its principal contact.[6]  The Website Consultants website also identifies as its officers Sean Callahan (CEO), Glaser (Chief Marketing Officer), Karkalichev (Chief Technology Officer), and Seamus Callahan (Account Manager).  Aladzhov identifies himself as an agent and/or consultant of Website Consultants.  *See* http://www.aladzhov.com/portfoliov2/zencharts-app/ (last viewed December 29, 2017).

*iii.*     *Zen Medical*

96.     Zen Medical, originally named "Biscayne Medical LLC", was a Florida limited liability company formed on or about June 30, 2014, and was located at 7777 Glades Road, Suite 100, Boca Raton, Florida 33434.  Zen Medical was administratively dissolved on September 23, 2016.

97.     Sanomedics acted as Zen Medical's sole manager.  As set forth above, Sanomedics was nothing more than a boiler room scam directed by Houlihan, Zen Medical's former CEO.

*iv.*     *ZenCharts*

_____

[5] Attached as **Exhibit D** is a true and correct copy of a screen shot of www.websiteconsultants.org/our-services/ (last viewed December 27, 2017) which identifies these enterprise level computer design services.

[6] Attached as **Exhibit E** is a true and correct copy of the WHOIS information for the Solutions Recovery website.

98.     ZenCharts is a Florida limited liability company organized on September 14, 2015 and located at 7777 Glades Road, Suite 100, Boca Raton, Florida 33434 (the same exact location as Zen Medical).    ZenCharts has also maintained a business address at 444 Brickell Avenue, Miami, Florida 33131, the same address as Kipu's former headquarters.

99.     According to the USPTO's assignment records, on October 20, 2016 (one month after Houlihan's indictment) Zen Medical assigned to ZenCharts all rights to the ZenCharts Logo (as defined below).  The USPTO assignment was effectuated by Sean Callahan, who was never identified as a manager or executive of Zen Medical in its corporate records. Upon information and belief, Zen Medical similarly assigned to ZenCharts all rights and title to the ZenCharts' copycat EMR system.

100.     Upon further information and belief, the assignment of trademarks to ZenCharts was part of an effort to distance the ZenCharts System from the Sanomedics/Houlihan fraud, and as a vehicle to quickly transfer Sanomedics' assets after Houlihan's indictment and after Sanomedics was forced into an involuntary bankruptcy.[7]

101.     On or about July 25, 2016 Zen Medical filed a Section 1(a) trademark application before the USPTO for the ZenCharts logo in Class 42 (alleging a first use in commerce date of January 2015) (the "ZenCharts Logo") which became Trademark Application Serial Number 87/115,058.  ZenCharts is the successor-in-interest (assigned from Zen Medical) to the ZenCharts System, and actively engages in the marketing, promotion, and distribution of that misappropriated software – under the ZenCharts Logo.

---

[7] *In Re Sanomedics, Inc.*, Bankruptcy Court Case No. 1:16-bk-21659 (Hon. Robert A. Mark, S.D. Fla.).

v.      _Glaser_

102.    Glaser is an individual working at 7777 Glades Road, Suite 100, Boca Raton, Florida 33434 (same address as ZenCharts and formerly Zen Medical).  Glaser is Solutions Recovery's former managing member and CFO, the primary contact for the Solutions Recovery Website, the current Chief Marketing Officer of Website Consultants, as well as one of the five known software programmers who illicitly created the ZenCharts System.

vi.     _Sean Callahan_

103.    Sean Callahan is an individual working at 11680 Tundra Drive, Unit 3103, North Fort Myers, Florida 33917.  Sean Callahan is a former manager of Solutions Recovery, and at all relevant times was a co-owner of Website Consultants and one of the software developers who created the ZenCharts System.  The Website Consultants website touts Sean Callahan's "wealth of experience" as a "user experience designer" and "front end developer" for software.   Below is his Facebook profile (listing himself as Zen Chart's CIO):



*vii.* <u>*Dan Callahan*</u>

104. Dan Callahan is an individual working in Coconut Creek, Florida. He is the primary owner of Solutions Recovery and its CEO/Program Director. He is also the last known manager and/or owner of SRL before its September 2016 administrative dissolution. As shown below, Dan Callahan holds himself out to the public as one of ZenCharts' two co-founders:



*viii.* <u>*Keith Houlihan*</u>

105. Houlihan (who also uses the alias Keith Hootie) is an individual whose last known address was 18008 Jazz Lane, Boca Raton, Florida 33496. Houlihan consented to surrender himself to Federal authorities to serve his 111 month sentence for his participation in the $23 million Sanomedics "boiler room" fraud.

106. Houlihan is the "[c]o-founder and former CEO" of ZenCharts "who skillfully guided [the] innovative and disruptive EMR from concept to commercialization in record time." *See* www.KeithHoulihan.com (last viewed Dec. 27, 2017). Houlihan is now attempting to distance himself from ZenCharts by removing from LinkedIn any identification of the EMR company he "co-founded" and instead suggests he is now merely a "coffee enthusiast":



ix.     _Karkalichev_

107.    Karkalichev is an individual who maintains an office address at 16145 State Road 7, Unit D, Delray Beach, Florida 33446 (the same address as Website Consultants, and formerly of SRL).   Karkalichev serves as Website Consultants' Chief Technology Officer (CTO) and is one of the five software developers tasked to create the copycat ZenCharts System.   According to the Website Consultants' website, he holds a degree in "Software Engineering" and creates enterprise level software.   His LinkedIn profile confirms his role as an executive of Website Consultants:



x.      _Aladzhov_

108.    Aladzhov is an individual who maintains an office address at 16145 State Road 7,

Unit D, Delray Beach, Florida 33446 (the same address as Karkalichev).  He also maintains a

business location in Sofia, Bulgaria.  According to his LinkedIn Profile he publicly touts he is a

"Contractor" of Website Consultants:



Aladzhov also identifies himself on http://www.aladzhov.com as being an agent of Website Consultants:



## JURISDICTION AND VENUE

109.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

110.   This Court has personal jurisdiction over the Defendants on the grounds that Defendants reside in this judicial district and/or conduct substantial and not isolated business activities in this judicial district.

111.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and/or (2) because (i) a substantial part of the events giving rise to the claims occurred within this judicial district; (ii) certain of the Defendants reside within this judicial district; and (iii) certain of the Defendants have a principal place of business within this judicial district.

112.   The 2014 Kipu TOS also state that "[i]n the event of a dispute involving Intellectual Property, including copyright, trademark, or any other cause of action provided for by law [*i.e*, trade secret law], venue shall be proper in the appropriate Federal or State Court, as dictated by the cause of action, with jurisdiction over Miami-Dade County, Florida.

## COUNT I
## VIOLATIONS OF FLORIDA'S COMPUTER ABUSE AND DATA RECOVERY ACT
### Florida Statute §§ 668.801-805
(against all Defendants)

113.   Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred seventeen (117) as if fully set forth herein.

114.   This Count I is an action, pursuant to Florida's Computer Abuse and Data Recovery Act ("CADRA"), directed against all Defendants regarding their knowing and clandestine acts to obtain information from Kipu's servers (and related computers) regarding the Kipu EMR System through unauthorized access, and by the nefarious acquisition of login credentials.

115.   One of two primary purposes of CADRA, set forth in Florida Statute § 688.801(1), is to protect and safeguard the owner of information stored on a "protected computer" used in the operation of a business from harm or loss caused by unauthorized access to such computer.

116.   A "protected computer" is defined broadly in Florida Statute § 668.802(6)&(7) to include a computer used in connection with the operation of a business that stores information, programs or code in which the stored information, programs or code can be accessed only by employing a technological access barrier ("a password, security code . . . or similar measure").

117.   CADRA prohibits an individual who knowingly and with intent to cause harm or loss "obtains information from a protected computer without authorization and, as a result, causes loss or harm" or "causes the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, causes harm or loss."   *See* Fla. Stat. § 688.803.

118.   While a user may have previously obtained access or log-in credentials appropriately (*i.e.*, was an "authorized user"), a login to a protected computer qualifies as "without authorization" when the later access "[c]ircumvents a technological access barrier on a protected

computer without the express or implied permission of the owner . . . or the express or implied permission of the owner of information stored in the protected computer."

119.    Under CADRA, a sufficient "harm" may be any impairment to the integrity, access, or availability of programs, systems or information."   *See* Fla. Stat. § 688.802(4). Likewise, a "loss" may include any form of economic damages, lost profits, consequential damage, or "profits earned by a violator as a result of the violation."   *See* Fla. Stat. § 688.802(5).

120.    Kipu's operation of the Kipu EMR System requires Kipu to employ servers that meet the definition of a "Computer" and "Protected Computer" because the Kipu EMR System servers are high speed data processing devices that perform logical and storage functions.  In addition, the Kipu EMR System servers require users to enter a user name and password (a technological access barrier) to access the Kipu EMR System.  Kipu's employ of a username and password is sufficient to effectively control access to Kipu's protected computers because the usernames and passwords are individually created and not publicly available information.

121.    Between October 10, 2013 and January 16, 2014, Kipu allowed for certain "Super Admin" login-in rights (via appropriate technological access barriers) to be provided to Dan Callahan, Sean Callahan, Glaser and later Karkalichev—all under the false pretense that they were involved in the implementation of Solutions Recovery's license of the Kipu EMR System.

122.    Between September 10, 2015 to early October 2015, these Defendants again accessed the Kipu EMR System under false pretenses, after obtaining a username and "Super Admin" log-in rights through a Kipu client.

123.    In reality, Dan Callahan, Sean Callahan, Glaser and Karkalichev (individually and through the various Defendant entities) employed their "Super Admin" login-credentials during the above-mentioned periods for the primary purpose of reviewing and understanding the underlying structure, organization, flows, processes, and function of the source code found within

the Kipu EMR System.  As such, Dan Callahan, Sean Callahan, Glaser and Karkalichev were not "authorized users" of the Kipu EMR System due to the manner and purpose for which they gained access to Kipu's protected computers and/or servers.

124.    During these times, Solutions Recovery, as well as Dan Callahan, Sean Callahan, Glaser and Karkalichev (and/or those acting under their direction, control and/or supervision, including, but not limited to, Website Consultants, and Aladzhov) employed these four "Super Admin" login-credentials some 150 times.  Each time, these "users" were required to "click" and agree to the terms of Kipu's TOS.

125.    Under the 2014 Kipu TOS, each of the aforementioned parties had to recognize that the underlying structure, organization, and flows of the Kipu EMR System were valuable and confidential information, and intellectual property owned by Kipu.  Moreover, each time the user would log-in they agreed that they could only access the Kipu EMR System for a "legitimate business purposes in relation to site-level administration of its facility."

126.    As such, none of the Defendants were "authorized users" under either the 2014 Kipu TOS or CADRA, and their log-ins were a circumvention of a technological access barrier.

127.    Each of Defendants who accessed the Kipu EMR System through the "Super Admin" login credentials provided to them either by Kipu or a Kipu client qualify as a "user" under CADRA who has knowingly and with intent to cause harm obtained information from Kipu's computer servers which maintain the Kipu EMR System, without Kipu's authorization, which actions have caused Kipu to suffer damages.

128.    Kipu is entitled to injunctive relief against Defendants to protect Kipu from future violations of Florida Statute § 688.803.

129.    Kipu is further entitled to recover any and all information that Defendants misappropriated (including all copies of the ZenCharts System and ZenCharts code) that were obtained through CADRA violations.

130.    Kipu is also entitled to its reasonable attorneys' fees.

131.    Kipu's remedies under CADRA are in addition to remedies available for the same conduct under federal or state law.

### COUNT II
### BREACH OF CONTRACT (2013 LICENSE AGREEMENT)
(against Solutions Recovery only)

132.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred seventeen (117) as if fully set forth herein.

133.    This Count II is an action, under the common law of the state of Florida, for Solutions Recovery's breach of the 2013 License Agreement.

134.    Kipu performed each and all of its obligations under the 2013 License Agreement, or was excused from doing so.

135.    Solutions Recovery materially breached the 2013 License Agreement by failing to comply with its payment obligations thereunder.

136.    Specifically, the 2013 License Agreement required Solutions Recovery to pay Kipu $2,000.00 upon the executing the 2013 Licensing Agreement, and an additional $1,000.00 per month for the eight months period commencing on December 1, 2013.

137.    Solutions Recovery never tendered any of the eight $1,000.00 monthly payments.

138.    As a direct and proximate result of Solutions Recovery's breach of the 2013 License Agreement, Kipu has suffered damages in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT (KIPU JANUARY 2014 TERMS OF SERVICE)
(against Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan, and Karkalichev)

139.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred seventeen (117) as if fully set forth herein.

140.    This Count III is an action, under the common law of the state of Florida, for breach of contract.

141.    Each time Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan, Aladzhov, and Karkalichev logged into the Kipu EMR System after January 6, 2014, they agreed to abide by the 2014 Kipu TOS and agreed, on their own behalf and on behalf of those whose direction they were acting under, to be bound by the Kipu TOS.

142.    Prior to logging into the Kipu EMR System, Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan, Aladzhov, and Karkalichev were confronted with a login screen that required the entry of a username and password and provided the following disclaimer: "By selecting 'Sign In' above, you indicate that you have read and agreed to abide by The Kipu Systems Terms of [Service]."

143.    Kipu's login screen provided a hyperlink to Kipu's TOS and each individual was presented with the opportunity to accept or reject Kipu's TOS prior to logging into the Kipu EMR System.

144.    Each time Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan, Aladzhov, and Karkalichev logged into the Kipu EMR System they created a new agreement with Kipu, pursuant to which their use of the Kipu EMR System was restricted by Kipu's TOS.

145.    Kipu performed each and all of its obligations under the 2014 Kipu TOS, or was excused from doing so.

146.    Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan, and Karkalichev breached the 2014 Kipu TOS by, *inter alia*, engaging in activities that were "not for a legitimate business purpose" as well as failing to use the Kipu EMR System for site level administration of an addiction treatment facility.  These illegitimate activities include, without limitation, reverse engineering of the Kipu EMR System, copying work flows and other Kipu intellectual property, and accessing the Kipu EMR System to develop a competing, infringing product.

147.    As a direct and proximate result of Defendants' breaches of the Kipu 2014 TOS, Kipu has incurred damages.

### COUNT IV
### INFRINGEMENT OF UNITED STATES TRADEMARK REGISTRATION
### 15 U.S.C. § 1114
(against ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants, and Karkalichev)

148.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred seventeen (117) as if fully set forth herein.

149.    This Count IV is an action for willful infringement of Kipu's federally registered trademark—the OTO Mark—under 15 U.S.C. § 1114.

150.    Kipu maintains exclusive and unencumbered rights to United States Trademark Registration No. 5,127,508 for the standard character mark OTO in International Class 42 for "[p]roviding temporary use of a non-downloadable due diligence patient admission check/flag feature of a web application for storage and management of electronic health records . . . for addiction treatment facilities and other healthcare related facilities" (as previously defined, the "OTO Mark").

151.    United States Trademark Registration No. 5,127,508 identifies that the OTO Mark was first used in Interstate Commerce in January 2012—well prior to the October 1, 2013 demonstration of the Kipu EMR System at Solutions Recovery's Coconut Creek facility, attended by Glaser, Sean Callahan, and Dan Callahan.

152.    The underlying trademark application was filed on May 20, 2016.  On or about September 13, 2016, the USPTO trademark examining attorney issued an examiner's amendment noting how she "ha[d] searched the USPTO's database of registered and pending marks and ha[d] found no conflicting marks that would bar registration under Trademark Act Section 2(d)."  Thus, there was no office action ever issued during prosecution of the underlying trademark application, which became United States Trademark Registration No. 5,127,508.

153.    On October 19, 2016, a notice of publication was issued, denoting a publication date of November 8, 2016.  During the publication period (November 8, 2016 to December 8, 2016) no oppositions were filed regarding or opposing Kipu's exclusive rights to use the OTO Mark.

154.    On January 24, 2017, the USPTO issued United States Trademark Registration No. 5,127,508 for the mark OTO.

155.    Kipu's registration of its OTO Mark before the USPTO is conclusive evidence of the validity and enforceability of Kipu's rights to the OTO Mark.

156.    ZenCharts' later adoption and wrongful use of the OTO Mark, aided by the actions of Glaser, Dan Callahan, Sean Callahan, Website Consultants and Karkalichev, in conjunction with offering a competing line of EMR software used in the drug and alcohol addiction treatment industry, to the same target group of customers, is likely to cause confusion, mistake or deception as to source, sponsorship, affiliation, or authorization by Kipu or alternatively, to destroy the origin-identifying function of Kipu's registered trademark.

157.     As a proximate result of ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants and Karkalichev's willful conduct and actions, Kipu has suffered, and will continue to suffer, significant damages to its business, reputation, and goodwill, unless ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants and Karkalichev are restrained by the Court, and Kipu is entitled to recover damages for this injury.

158.     Kipu's remedy at law is inadequate to compensate it for the injuries it will suffer in the future for the continued acts of infringement alleged herein.

159.     The foregoing acts of infringement by ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants and Karkalichev in appropriating the OTO mark has been, and continues to be, deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C § 1117.

160.     Kipu is entitled to a permanent injunction against ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants and Karkalichev, as well as all other monetary remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

### COUNT V
### FLORIDA COMMON LAW UNFAIR COMPETITION
(against ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants, and Karkalichev)

161.     Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred seventeen (117) as if fully set forth herein.

162.     This Count IV is an action for unfair competition under the laws of the state of Florida.

163.     ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants, Aladzhov, and Karkalichev's actions regarding the advertising, marketing, offer for sale and sale of EMR

software in the drug and alcohol addiction treatment industry constitutes unfair competition, and an infringement of Kipu's common law rights in the trade name OTO.

164.    Kipu has been damaged by ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants, and Karkalichev's knowing and willful acts of unfair competition, including, but not limited to, the adoption and continued use of the OTO mark with regards to selling and offering its competing line of EMR software.

165.    These acts of common law unfair competition have caused and, unless enjoined, will continue to cause Kipu irreparable harm.

166.    Kipu has no adequate remedy at law.

## COUNT VI
## BREACH OF CONTRACT (KIPU OCTOBER 2013 TERMS OF SERVICE)
(against Solutions Recovery, Sean Callahan, Dan Callahan, Glaser, Karkalichev, Website Consultants, Zen Medical, and ZenCharts)

167.    Kipu re-alleges and incorporates by reference paragraphs one (1) through one hundred seventeen (117) as if fully set forth herein.

168.    This Count V is an action, under the common law of the state of Florida, for breach of contract.

169.    Each time Solutions Recovery, Sean Callahan, Dan Callahan, Glaser, Aladzhov, Karkalichev, Website Consultants, Zen Medical, and ZenCharts logged into the Kipu EMR System prior to January 6, 2014, they agreed to abide by the 2013 Kipu TOS and agreed, on their own behalf and on behalf of those whose direction they were acting under, to be bound by the Kipu TOS.

170.    Prior to logging into the Kipu EMR System, Solutions Recovery, Sean Callahan, Dan Callahan, Glaser, Aladzhov, Karkalichev, Website Consultants, Zen Medical, and ZenCharts were confronted with a login screen that required the entry of a username and password and

provided the following disclaimer: "By selecting 'Sign In' above, you indicate that you have read and agreed to abide by The Kipu Systems Terms of [Service]."

171.    Kipu's login screen provided a hyperlink to Kipu's TOS and each individual was presented with the opportunity to accept or reject Kipu's TOS prior to logging into the Kipu EMR System.

172.    Each time Solutions Recovery, Sean Callahan, Dan Callahan, Glaser, Karkalichev, Aladzhov, Website Consultants, Zen Medical, and ZenCharts logged into the Kipu EMR System they created a new agreement with Kipu, pursuant to which their use of the Kipu EMR System was restricted by Kipu's TOS.

173.    Kipu performed each and all of its obligations under the 2013 Kipu TOS, or was excused from doing so.

174.    Solutions Recovery, Sean Callahan, Dan Callahan, Glaser, Aladzhov, Karkalichev, Website Consultants, Zen Medical, and ZenCharts breached the 2013 Kipu TOS by, *inter alia*, using their access to the Kipu EMR System for in order to "reproduce, duplicate, copy, sell, resell or exploit" the Kipu EMR System.  These illegitimate activities include, without limitation, copying work flows and other Kipu intellectual property, and exploiting the Kipu EMR System to develop a competing, infringing product.

175.    As a direct and proximate result of Solutions Recovery, Sean Callahan, Dan Callahan, Glaser, Karkalichev, Website Consultants, Aladzhov, Zen Medical, and ZenCharts' breaches of the Kipu 2013 TOS, Kipu has incurred damages.

## PRAYER FOR COSTS AND ATTORNEY FEES

Plaintiff KIPU SYSTEMS LLC requests an award of reasonable costs and attorney fees pursuant to pursuant to applicable law, including, without limitation, Fla. Stat. 668.804(2), as well

as any other applicable basis for awarding costs and attorneys based upon the claims brought herein.

## REQUEST FOR JURY TRIAL

Plaintiff KIPU SYSTEMS LLC requests a jury trial of all matters so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KIPU SYSTEMS LLC respectfully prays that this Honorable Court enter such Orders and Judgments as are necessary to grant Plaintiff KIPU SYSTEMS LLC the following relief:

(a)     Judgment against Solutions Recovery for Florida Common Law Breach of the 2013 Licensing Agreement and associated damages and for such other further relief based upon the aforementioned breach as this Honorable Court may deem just under the circumstances.

(b)     Judgment against Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan, and Karkalichev for Florida Common Law Breach of the Kipu 2014 TOS, including any and all applicable damages;

(c)     Judgment against Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan, and Karkalichev for Florida Common Law Breach of the Kipu 2013 TOS, including any and all applicable damages;

(d)     Judgment against Defendants for violations of Florida's Computer Abuse and Recovery Act (Fla. Stat. § 668.801 *et al.*), including any and all applicable damages including but not limited to actual damages, lost profits, economic damages, violator's profits, recovery for harm and loss due to: improvement of the integrity, access of availability of the underlying Kipu EMR System, the cost of conducting a damage assessment, costs of remediation, consequential damages and/or damages for interruption of service;

(e)      Judgment against ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants, and Karkalichev for Florida Common Law Unfair Competition, including any and all applicable damages;

(f)      Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined under Florida Statute §668.804(c)&(d) to prevent future unauthorized login-ins and/or improper access to the Kipu EMR System and to recover the underlying misappropriate information, program or code as well as all copies thereof from Defendants;

(g)      Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined from infringing Kipu's rights in the OTO Mark, including Defendants' use of the OTO Mark in the ZenCharts System or any colorable imitations thereof;

(h)      Judgment against ZenCharts, Glaser, Dan Callahan, Sean Callahan, Website Consultants and Karkalichev for willful infringement of a registered trademark under 15 U.S.C. § 1114(1), including a disgorgement of profits and other applicable damages;

(i)      An order requiring Defendants to rebuild their EMR system in a clean room environment by providing a specification sheet to new software developers who will not have the benefit of any knowledge regarding the Kipu EMR System or the ZenCharts System; and

(j)      Compensatory and other damages allowed by law.

Respectfully submitted,

**AGENTIS PLLC**
*Counsel for Plaintiff Kipu Systems LLC*
55 Alhambra Plaza, Suite 800
Coral Gables, Florida  33134
T. 305.722.2002       F. 305.722.2001
www.agentislaw.com

By:      */s/ Christopher Spuches*
         Christopher B. Spuches
         Florida Bar No. 42456
         e-mail: cbs@agentislaw.com
         Jason A. Martorella
         Florida Bar No. 92868
         e-mail: jam@agentislaw.com

## <u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that on <u>July 31, 2019        </u>, I electronically filed the foregoing

with the Clerk of the Court via the CM/ECF system, which provided notice of filing to all counsel

of record, and served the foregoing on the following parties:


**ZENCHARTS, LLC**                  MARK E. STEIN
**WEBSITE CONSULTANTS, INC.**     **MARK STEIN LAW**
**DANIEL J. CALLAHAN**             2999 NE 191ST STREET, SUITE 330
**SEAN CALLAHAN**                 AVENTURA, FL 33180
**SOLUTIONS RECOVERY CENTER LLC**  *Co-Counsel for Plaintiff, Kipu Systems, LLC*
**RICHARD GLASER**
**YANKO KARKALICHEV**
*Via e-mail to Counsel of Record*

                                   JAVIER J. RODRIGUEZ
**ZEN MEDICAL, LLC**            **CKR LAW**
*Via e-mail to Counsel of Record*     78 SW 7TH STREET, 8TH FLOOR
                                   BRICKELL CITY CENTER
                                   MIAMI, FL 33130
                                   *Co-Counsel for Plaintiff, Kipu Systems, LLC*


                                   */s/ Christopher B. Spuches*
                                   Christopher B. Spuches
                                   Florida Bar No. 42456
                                   e-mail: cbs@agentislaw.com