## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## Case No. 17-24733-WILLIAMS

KIPU SYSTEMS, LLC

    Plaintiff,

vs.

ZENCHARTS, LLC, *et al*

    Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on (i) Plaintiff Kipu Systems LLC's ("Plaintiff or Kipu") motion for summary judgment (DE 169; Plaintiff's statement of material facts, DE 170) to which Defendants ZenCharts LLC, Solutions Recovery Center, LLC, Website Consultants Inc., Richard Glaser, Sean Callahan, Daniel Callahan and Yanko Karkalichev's (collectively, "Defendants") filed a response (DE 202; Defendants' responsive facts, DE 201), and Plaintiff filed a reply (DE 214; Plaintiff's additional statement of facts, DE 215); and (ii) Defendants' motion for partial summary judgment (DE 173; Defendants' statement of material facts, DE 174), to which Plaintiff filed a response (DE 197; Plaintiff's responsive facts, DE 198), and Defendants filed a reply (DE 218). For the reasons set forth below, Plaintiff' motion for partial summary judgment (DE 169) is **GRANTED IN PART AND DENIED IN PART** and Defendants' motion for partial summary judgment (DE 173) is **GRANTED IN PART AND DENIED IN PART**.

### I.   BACKGROUND

This case involves a licensing agreement for the use of a software designed to maintain electronic medical records ("Kipu EMR System"). Plaintiff is the creator and

owner of the Kipu EMR System, which is a computer program used by substance use disorder treatment facilities to manage and maintain medical records electronically. (DE 170 ¶1; DE 201 ¶1). Plaintiff launched the Kipu EMR System in September 2012. (DE 170 ¶3; DE 201 ¶3). Defendant Solutions Recovery Center, LLC ("Solutions"), a now defunct substance use disorder treatment center, was owned and/or operated by defendants Daniel J. Callahan, Sean Callahan, and Richard Glaser. (DE 170 ¶6; DE 201 ¶6).

In September 2013, Dan Callahan, Sean Callahan and Glaser approached Kipu to obtain a license for Solutions to use the Kipu EMR System in connection with its treatment center. (DE 170 ¶7; DE 201 ¶7). On October 8, 2013, Glaser, as Solution's CFO, executed a service agreement (the "Agreement") whereby Kipu agreed to provide Solutions a "cloud-based service providing a records system for patients." (DE 170 ¶9; DE 201 ¶9; DE 118-1 at 3). In return, Solutions agreed to pay $2,000 at contract signing and $1,000 per month for eight months. (DE 174 ¶7; DE 198 ¶7). Solutions made the $2,000 initial payment. (Id.). The Agreement incorporates Kipu's terms of service ("TOS")[1] which in 2013 stated in relevant part:

All content included in or made available through any Kipu product or service, such as input screens and forms, charts, text, graphics, logos, button icons, images, audio clips, digital downloads, and data compilations is the property of Kipu Systems or its content suppliers...

....The look and feel of the Service is copyright @2012 Kipu Systems LLC. All rights reserved. You may not duplicate, copy, or reuse any portion of the HTML/CSS or visual design elements without express written permission from us.

---

[1] "Our TOS, available online at http://kipusystems.com/terms, are part of this agreement and take precedence over any other agreements. It is agreed that the most current version of the TOS shall apply and that those TOS may be revised by us from time to time, without prior notice." (See DE 170 ¶10; DE 201 ¶10; DE 118-1 at 4).

2

> ....You agree not to reproduce, duplicate, copy, sell, resell or exploit any portion of the Service, use of the Service, or access to the Service without express written permission from us.

(DE 170 ¶12; DE 201 ¶12). Kipu did not provide Solutions with a hard copy of the 2013 TOS and Glaser admitted that he did not read the TOS before signing the Agreement. (DE 170 ¶13; DE 201 ¶¶13, 51; DE 215 ¶51). The 2014 TOS included additional provisions which (i) authorized users to "only use the Service for legitimate business purposes;" (2) allowed users to grant access to third-parties "only ... to serve the legitimate ... business needs of its Facility..." (3) affirmed that the user or its officers, executives, shareholders, partners, employees, independent contractors or other business associates of any kind are not associated with any business entity that "currently operate in or intends to enter into competition with Kipu..." (4) prohibiting the user from "reverse engineer[ing], decompile[ing], disassembl[ing] or otherwise attempt[ing] to discover or reduce to human readable form the source code of the Service;" and (5) prohibiting the user from "access[ing] the service for the purposes of copying the flow, process, or any other Intellectual Property belonging to Kipu..." (DE 170 ¶14; DE 201 ¶14).

Once Solutions had access to the Kipu EMR System, Solutions granted access to defendants Website Consultants – a software programming company that ended up developing the competing product ZenCharts System – and its international software engineers, including defendant Yanko Karkalichev, who is now the Chief Technology Officer of Website Consultants and defendant ZenCharts, LLC ("ZenCharts"). (DE 170 ¶15; DE 201 ¶15). Although, per the Agreement, the setup of the system would take "30 to 60 days to complete" Solutions instructed Kipu to hold off on implementing the Kipu

EMR System on November 19, 2013 – 36 days after the Agreement was signed. (DE 170 ¶17-18; DE 201 ¶¶17-18). Six days later, on November 25, 2013, Solutions informed Kipu that they would no longer be using the Kipu EMR System and requested Kipu to stop the service and bills related to the service. (DE 174 ¶10; DE 198 ¶10). Solutions then refused to make any further payments under the Agreement. (DE 174 ¶11; DE 198 ¶11).

Even though Solutions requested that the service end, Solutions continued to access the Kipu EMR System after November 25, 2013. (DE 174 ¶12; DE 198 ¶12). Glaser testified that the reason Solutions continued accessing the Kipu EMR System was to retrieve critical client information necessary to treat its clients and to remove Solutions' own data from the Kipu EMR System. (DE 174 ¶12). And despite the fact that on January 19, 2014, Kipu terminated Solutions' access to the Kipu EMR System for non-payment, Sean Callahan continued to access the Kipu EMR System by using login credentials he obtained from two other Kipu third-party customers. (DE 170 ¶¶24, 26; DE 201 ¶¶24, 26). Kipu claims that the Kipu EMR System was also accessed over 20 times from a Bulgarian IP address used by defendant Karlichev, but Karlichev denies that he ever accessed the Kipu EMR System from Bulgaria. (DE 170 ¶27; DE 201 ¶27).

In 2015, the Callahans and Glaser, launched the ZenCharts System and formed ZenCharts, which they currently own. (DE 170 ¶28; DE 201 ¶28). Although some of the ZenCharts features are identical to that of the Kipu EMR System's, Defendants deny that these similarities are evidence of copying. (DE 170 ¶¶28-32; DE 201 ¶¶28-32). After ZenCharts launched, Kipu communicated with some of ZenCharts' customers asking

4

them to switch to the Kipu EMR System, but at least two of them remained ZenCharts customers. (DE 170 ¶¶45-48; DE 201 ¶¶45-48, 60-61).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

For issues for which the movant would bear the burden of proof at trial, the party seeking summary judgment "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence…that would entitle it to a

5

directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (emphasis in original).

## III.   DISCUSSION

Plaintiff argues that it is entitled to summary judgment as to liability on all of Plaintiff's claims and to full summary judgment on ZenCharts and Solutions' counterclaims. Defendants argue that they are entitled to summary judgment on all counts of Plaintiff's second amended complaint except for Kipu's claim for trademark infringement.

The Parties have three main areas of factual dispute. First, the Parties dispute that Defendants agreed to be bound by the TOS. Plaintiff argues that Solutions is bound by the TOS because Glaser signed the Agreement which specifically incorporated the TOS. Further, Plaintiff asserts that the other Defendants were also bound by the TOS because each time any of the Defendants attempted to log in to the Kipu EMR System, they received a prompt that contained a hyperlink to the most current version of the TOS and stated that by "selecting Sign in … you have read and agree to abide by the Kipu Systems Terms of Use." (*See* DE 170 ¶11). In response, Defendants offer the testimony of Rick Glaser who testified that in 2013, Kipu users were not presented with the TOS at login and there was no box saying that the user expressly agreed to the TOS. (*See* DE

201 ¶11). Defendants also state that there was no hyperlink on the login screen to any terms of service. (*Id.*)

Second, the Parties do not agree on whether the Kipu EMR System's implementation failed. Kipu argues that Solutions prematurely instructed Kipu to stop its efforts on November 19, 2013, even though Kipu had until December 7, 2013 to implement the system under the Agreement.   Defendants respond that the implementation of the Kipu EMR System "was a disaster," that Kipu failed to provide proper training to Defendants, that Kipu failed to provide Solutions with a "library of forms" required to implement the Kipu EMR System and that Solutions learned for the first time in November that they would have to keep paper files in addition to the electronic records. Thus, Defendants argue that Plaintiff breached the Agreement first by failing to effectively implement the Kipu EMR System.

Third, the Parties dispute whether Defendants copied features of the Kipu EMR System to create the ZenCharts product. Plaintiffs argue that Defendants accessed the Kipu EMR System to copy its features and that, in fact, many of the components of the ZenCharts System's graphical user interface and features are practically identical to the components of the 2013 Kipu EMR System's graphical user interface and features. In response, Defendants argue that they only accessed the Kipu EMR System as users, but the implementation was so "disastrous" that they had to cancel the service. Defendants also deny copying any of the Kipu EMR System's features and offer expert testimony explaining that most of the features that the two products share "have been known and widely disseminated throughout the applied clinical informatics research and development community for many years." (*See* DE 260-1 at 5).

The Court addresses the motions in light of the factual disputes discussed above.[2]

### a. Breach of Contract Claims

Kipu advances three counts for breach of contract against Defendants: (1) Count II against Solutions Recovery for breach of the Agreement; (2) Count III against Solutions Recovery, ZenCharts, Zen Medical, Website Consultants, Glaser, Sean Callahan, Dan Callahan,and Karkalichev for breach of the January 2014 TOS; and (3) Count VI against Solutions Recovery, Sean Callahan, Dan Callahan, Glaser, Karkalichev, Website Consultants, Zen Medical, and ZenCharts for breach of the October 2013 TOS. Defendant Solutions advances one counterclaim against Plaintiff for breach of the Agreement. All Parties move for summary judgment on the breach of contract claims.

To establish a breach of contract under Florida law, a Plaintiff must show "(1) a valid contract; (2) a material breach; and (3) damages." *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). Additionally, "[a] collateral document … is deemed to be incorporated by reference into a contract if the contract "(1) specifically provide[s] that it is subject to the incorporated [collateral] document and (2) the collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement so that the intent of the parties may be ascertained." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1033 (11th Cir. 2017). "A document must be considered incorporated by reference where the incorporating document

---

[2] The Court allowed Plaintiff to file a second amended complaint after the motions for summary judgment were briefed. The second amended complaint, which is the operative complaint, dropped eight counts that were included in the first amended complaint. In this Order, the Court will not address the Parties' arguments with respect to claims that have been withdrawn.

8

specifically provides that it is subject to the incorporated document." *Citizens Prop. Ins.*

*Corp. v. European Woodcraft & Mica Design, Inc.*, 49 So. 3d 774, 778 (Fla. 4th DCA

2010); *see also Druhill Constr., Inc. v. RSH Constructors, Inc.*, 518 So. 2d 951, 953 (Fla.

1st DCA 1988) (incorporating by reference venue provision from collateral document the

parties agreed to be "governed by"). But as this Court has noted:

> a requirement that the contract language be explicit or otherwise clear and
> precise does not amount to a rule that the parties must use a rote phrase
> or some other "magic words" in order to effect an incorporation by reference.
> *See e.g. Quix Snaxx, Inc. v. Sorensen*, 710 So.2d 152, 154 (Fla. 3d DCA
> 1998). Rather, it is sufficient if the general language of the incorporation
> clause reveals an intent to be bound by the terms of the collateral document.

*Microsoft Corp. v. Big Boy Distribution LLC*, 589 F. Supp. 2d 1308, 1319 (S.D. Fla. 2008).

Moreover, "[i]n Florida and the federal circuits ... click-wrap [and browsewrap]

agreements are valid and enforceable contracts." *Bachewicz v. JetSmarter, Inc.*, No. 18-

CV-62570, 2019 WL 1900332, at \*2 (S.D. Fla. Apr. 29, 2019); *see also MetroPCS*

*Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018), reh'g denied (Apr.

30, 2019).[3] However, "'[b]rowsewrap' agreements have only been enforced when the

purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the

terms and conditions is conspicuous enough to put a reasonably prudent person on

inquiry notice." *Id.*

Here it is undisputed that the Agreement contained the following language: "Our

TOS, available online at http://kipusystems.com/terms, are part of this agreement and

take precedence over any other agreements." Defendants argue that the TOS are not

---

[3] Clik-wrap agreements are those where "website users typically click an "I agree" box
after being presented with a list of terms and conditions of use, and the "browsewrap"
agreements [are those where] website terms and conditions of use are posted on the
website typically as a hyperlink at the bottom of the screen." *IT Strategies Grp., Inc. v.*
*Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013)

binding on Solutions because the TOS were not attached to the Agreement and because they maintain that such reference is insufficient under Florida law.

The Court rejects Defendants' argument. The Agreement clearly indicates that the TOS "**are part of**" the Agreement. (emphasis added). The words "**are part of**" and "**take precedence over any other agreement**" are more than a mere reference to the TOS and clearly indicate the Parties' intent to be bound by the TOS. Defendants rely on *Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.*, 920 So. 2d 1286, 1287 (Fla. 4th DCA 2006) to argue that merely stating that a contract is "subject to" other terms and conditions and including a hyperlink to those terms and conditions is not sufficient to incorporate a document by reference. However, subsequent cases have followed the rule set forth in *Hurwitz v. C. G. J. Corp.*, 168 So. 2d 84, 87 (Fla. 3d DCA 1964) that "[a] document **must** be considered incorporated by reference where the incorporating document specifically provides that it is subject to the incorporated document." *See Citizens Prop. Ins. Corp.* 49 So. 3d at 778 (emphasis added). In any event, the Court finds that the words used in the Agreement are not only akin to "subject to" but further indicate the Parties intent to be bound by the TOS. Florida courts have made similar findings in similar cases. *See Kaye v. Macari Bldg. & Design, Inc.*, 967 So. 2d 1112, 1114 (Fla. 4th DCA. 2007) ("The words 'part of these specifications' and 'this contract' unambiguously indicate the parties' intention to be bound by the [referenced document]"); *Avatar Properties, Inc. v. Greetham*, 27 So. 3d 764, 767 (Fla. 2d DCA 2010); *see also Seminole Cty. Tax Collector v. Domo, Inc.*, No. 618CV1933ORL40DCI, 2019 WL 1772108, at \*2 (M.D. Fla. Apr. 23, 2019) (distinguishing the holding of *Affinity Internet, Inc.*).

Consequently, the Court finds that Solutions was bound by both the Agreement and the TOS. However, the Court cannot find as a matter of law that Solutions breached the Agreement or the TOS. While it is clear from the record presented that the Kipu EMR System and the ZenCharts product have many similarities, Defendants have presented witness testimony and expert reports advancing their position that Solutions did not copy the Kipu EMR System. (*See* DE 260-1; DE 260-2 at 10). In light of this genuine factual dispute, the Court cannot find that Solutions breached the Agreement or the TOS as a matter of law.

The Court also finds that Solutions has presented sufficient evidence to defeat summary judgment on its breach of contract counterclaim against Kipu. Solutions has adduced evidence that the Kipu EMR system did not function as promised, that Kipu was obligated to provide a library of forms that it did not provide and that Kipu did not provide proper training to Solutions. (*See* DE 223-1 at 5; DE 260-9 at 5,16). Although Plaintiff argues that these alleged breaches were not material and were caused by Defendants, such a determination would be a question of fact for the jury. *See Haiman v. Fed. Ins. Co.*, 798 So. 2d 811, 812 (Fla. 4th DCA 2001) ("Whether the failure to produce documents requested is a material breach would be a question of fact for the jury.").

Plaintiff also argues and asks the Court to find that the remaining defendants were bound by the TOS. Plaintiff asserts that the TOS are a click-wrap agreement, enforceable as to all Defendants, because "[e]ach time any of the Defendants attempted to log in to the Kipu EMR System, they received the following prompt, along with a hyperlink to the most current version of Kipu's TOS: 'By selecting Sign in above, you indicate that you have read and agree to abide by the Kipu Systems Terms of Use.'" (*See* DE 169 at 13).

In response, Defendants argue that the log in screen that Kipu had in 2013 did not have a hyperlink to the TOS and did not ask the user to click a box saying "I agree" to the TOS. (See DE 260 ¶¶54-55; 260-6 at 5). Defendants also argue that the Court should grant summary judgment to Glaser and ZenCharts because there is no evidence that they ever accessed the Kipu EMR System in 2013 and therefore they could not have breached the 2013 TOS. Finally, Defendants argue that Dan Callahan, Sean Callahan, Glaser, Website Consultants and Karalichev were disclosed principals of Solutions, and, thus, cannot be held personally liable. But that issue turns on the enforceability of the TOS, because under the terms of the TOS, users accessing the Kipu EMR System personally agree to abide by their terms. (See DE 223-2). Because the Parties have come forth with witness testimony in support of their respective arguments as to whether the TOS were included as a hyperlink to the login screen of the Kipu EMR system, the Court cannot conclude as a matter of law that all defendants were bound by the TOS. Accordingly, this factual determination is properly left for the fact finder.[4] However, the Court finds that Glaser and ZenCharts are entitled to summary judgment on Count VI, since there is no evidence that ZenCharts or Glaser logged into the Kipu EMR System in 2013.[5]

Next, the Court rejects Defendants' argument that the Agreement was illusory. Although Plaintiff's reservation of the right to alter the TOS without notice, renders any altered TOS invalid, it does not make the full Agreement null. See Diverse Elements, Inc.

---

[4] Based on this finding, the Court also cannot conclude that Defendants breached the TOS.

[5] The Court rejects Plaintiff's argument that Glaser and ZenCharts can be liable under theories of conspiracy or promoter or successor liability. The second amended complaint contains no counts for conspiracy and nowhere has Plaintiff pled a successor or promoter liability theory.

*v. Ecommerce, Inc.*, 5 F. Supp. 3d 1378, 1382 (S.D. Fla. 2014). In *Diverse Elements* – the only case cited by Defendants in support of their argument – the Court found that the reservation was invalid as a matter of law and could not bind the defendant to the altered terms, because defendant did not have an opportunity to reject the modification. The court, however, did not invalidate the original contract entered by the parties. Accordingly, the Court finds that the Agreement was not illusory.

The Court also finds that issues of fact preclude a finding of whether the 2014 TOS should be invalidated. If, as argued by Plaintiffs, each time a defendant logged in to the Kipu EMR System the defendant had to agree to the new TOS, it cannot be said that the TOS were altered without notice, and therefore, the TOS would not be illusory. But, because genuine issues of fact exist as to whether the 2014 TOS were included as a hyperlink to the Kipu EMR System login screen, the Court cannot find as a matter of law that the 2014 TOS are illusory.

Finally, for the same reasons, the Court cannot find as a matter of law, that Kipu is precluded from seeking an award for lost profits. As stated above, the enforceability of the TOS is a highly disputed issue of fact. Therefore, should the TOS be found to be non-enforceable, there is nothing preventing Plaintiff from seeking a lost profits award on their unfair competition claim. Additionally, there is nothing preventing Plaintiff from seeking lost profits against ZenCharts, who is not a party to the TOS. In any event, the lost profits waiver in the TOS contains ambiguities and, therefore, presents a question of fact for the jury. *See Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 919 (11th Cir. 1995); *Nature's Prod., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1314 (S.D. Fla. 2013); *PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp.

2d 1213, 1232 (M.D. Fla. 2012). Indeed, under the TOS, the Parties waive the right to seek lost profits awards for losses resulting from: "(i) the use or inability to use the Service..." (See 223-2 § 11). This language, however, is unclear as to the meaning of the term "use." As pointed out by Plaintiff, there is an argument that Defendants never "used" the system because they cancelled the service before it was implemented. Accordingly, construed in the light most favorable to the non-moving party, there is sufficient ambiguity in the TOS to raise a question of fact as to whether the lost profits waiver is applicable to Plaintiff's claim that Defendants copied their Kipu EMR system.

### b. CADRA and Florida Common Law Unfair Competition Claim

Plaintiff argues that it is entitled to summary judgment as to liability on its Florida Computer Abuse and Data Recovery Act ("CADRA") and unfair competition claims because Defendants copied the Kipu EMR System without authorization. Defendants argue that they are entitled to summary judgment on Plaintiff's CADRA claim because Defendants had authorization to access the Kipu EMR System every time that they accessed it.

The purpose of the Florida Computer Abuse and Data Recovery Act is to safeguard computer systems against unauthorized access. See Fla. Stat. § 668.801. Under section 668.803(1), it is a violation for a person to "knowingly and with intent to cause harm or loss" "[o]btain[ ] information from a protected computer without authorization." "Without authorization" is defined as:

> access to a protected computer by a person who: (a) Is not an authorized user; (b) Has stolen a technological access barrier of an authorized user; or (c) Circumvents a technological access barrier on a protected computer without the express or implied permission of the owner, operator, or lessee of the computer or the express or implied permission of the owner of information stored in the protected computer.

14

Fla. Stat. § 668.802(9)(a)-(c). A technological access barrier is defined as "a password,

security code, token, key fob, access device, or similar measure." Fla. Stat. § 668.802(7).

The statute also defines the term "authorized user" as including:

an "employee ... of the owner, operator, or lessee of the protected computer ... if the ... employee ... is given express permission by the owner, operator, or lessee of the protected computer ... to access the protected computer through a technological access barrier. Such permission, however, is terminated upon revocation by the owner, operator, or lessee of the protected computer or by the owner of information stored in the protected computer, or upon cessation of employment, affiliation, or agency with the owner, operator, or lessee of the protected computer or the owner of information stored in the protected computer."

Fla. Stat. § 668.802(1). A cause of action for unfair competition under Florida law

encompasses "all statutory and nonstatutory causes of action arising out of business

conduct which is contrary to honest practice in industrial or commercial matters."

*Alphamed Pharma. Corp. v. Arriva Pharma., Inc.*, 432 F.Supp.2d 1319, 1353 (S.D. Fla.

2006) (quotation omitted); *See CBS, Inc. v. Garrod*, 622 F. Supp. 532, 536 (M.D. Fla.

1985) (indicating that cause of action for unfair competition involving record piracy exists

where there is (1) time, labor, and money expended in making records, (2) copying and

sale of records in competition, and (3) commercial damage).

The Court finds that Plaintiff's CADRA claim fails as a matter of law. Although the

case law analyzing CADRA is limited, the few cases that have discussed the statute have

interpreted it narrowly. In *Sargeant v. Maroil Trading Inc.*, No. 17-81070-CIV, 2018 WL

3031841, at *7 (S.D. Fla. May 30, 2018), the court held that a Plaintiff bringing CFFA and

CADRA claims:

"must plead sufficient facts to establish a plausible claim that Defendants accessed the [protected material] without obtaining authorization from someone who retained the legal right to grant that authorization. Put

differently, Plaintiff must plead facts to establish a plausible claim that no person who could have granted proper authorization did, in fact, grant proper authorization."

There, the complaint alleged that the defendants had accessed the plaintiff's former corporate email account without authorization. The plaintiff formerly owned 25% of a company named LAIL. While affiliated to LAIL, the plaintiff had a password-protected email account which contained 478 items of business information, personal communications and others. The plaintiff alleged that when he left LAIL, defendant accessed his account without authorization. The court dismissed the plaintiff's CADRA claim finding that the complaint did not identify how the defendants allegedly accessed his email and did not allege who had control of the Server, including who had the password:

In the absence of these facts, the [complaint] lacks a necessary predicate to establishing a plausible claim that access was not properly authorized. Additionally, in large part because this necessary predicate is missing, the [complaint] does not allege sufficient facts to exclude the existence of a third party whose rights in the Sargeant Server and the HS3 Material were superior to the Plaintiff's rights, and who therefore could have authorized the Defendants' actions.

*Sargeant*, 2018 WL 3031841, at *7. Here, the facts are even more compelling than in *Sargeant* because Plaintiff concedes that both in 2013 and 2015, Defendants had authorization to access the Kipu EMR System.

Also in *Grow Fin. Fed. Credit Union v. GTE Fed. Credit Union*, No. 8:17-CV-1239-T-30JSS, 2017 WL 3492707, at *2 (M.D. Fla. Aug. 15, 2017) the Court found that the plaintiff failed to allege that the defendant had accessed the protected material without authorization. There, the plaintiff sued a competitor and plaintiff's former employee who had left the plaintiff to work for the competitor. The complaint alleged that the former

16

employee, while still employed by the plaintiff, sent trade secrets and financial information to the defendant. In analyzing the CFAA and CADRA claims, the Court found that even though the employee had misused the data, she had accessed it with authorization. The Court stated:

> The term, "exceeds authorized access" is defined in the CFAA as "access to a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." *Id.* at 1030(e)(6). Here, Grow Financial alleges that access to the subject information was necessary for Holliday to perform her job duties. Grow Financial contends that Holliday improperly used or disclosed the information that she accessed when she provided it to GTE Financial while she was still employed at Grow Financial. But, as this Court has previously held, an improper use of data is not tantamount to exceeding authorization under the CFAA. *See Maintenx Mgmt., Inc. v. Lenkowski*, No. 8:14-cv-2440-T-30MAP, 2015 WL 310543, *2-*3 (M.D. Fla. Jan. 25, 2015) ("The facts put forth by Maintenx support the notion that Lenkowski misused data he obtained from Maintenx's computers, not that he somehow exceeded his seemingly unfettered access.").

Although the court focused its analysis on the CFAA claim, the court dismissed the CADRA claim because the plaintiff failed to allege that the employee had accessed the information "without authorization."

Following the courts' analysis in *Grow Fin. Fed. Credit Union* and *Sargeant*, it is apparent that Defendants could not have committed a CADRA violation in late 2013 and early 2014. In that period of time, Defendants had express authorization from Plaintiff to access the Kipu EMR System. Indeed, Plaintiff concedes that "between October 10, 2013 and January 16, 2014 Kipu allowed for certain 'Super Admin login-in rights to be provided" to Defendants. (*See* 223 ¶121). And, Plaintiff's corporate representative acknowledged in his deposition that once those rights were provided to Solutions, Solutions was free to open additional accounts for its agents to access the Kipu EMR System. (*See* DE 229-7 at 10). Moreover, it is undisputed that when Defendants accessed the Kipu EMR System

17

in 2015, Defendants obtained authorization to access it from Plaintiff's third-party customers Ocean Breeze and Pathway to Hope. (*See* DE 174 ¶¶23, 26-27; DE 198 ¶¶23, 26-27). Thus, there is no dispute that Defendants never accessed the Kipu EMR System "without authorization."

Nevertheless, Plaintiff argues that Defendants violated CADRA because they were not authorized to copy the Kipu EMR System. But the plain language of the statute and the cases interpreting it fatally undermine Plaintiff's argument because the crux of the matter is whether Defendants committed any wrongdoing by accessing the Kipu EMR System without authorization. *See* Fla. Stat. § 668.802(9)(a)-(c). Indeed, in *Grow Fin. Fed. Credit Union*, the Court specifically found that misuse of the information was irrelevant, because the defendant in that case had accessed the information with authorization. *See* 2017 WL 3492707, at \*2 ("as this Court has previously held, an improper use of data is not tantamount to exceeding authorization...").

Thus, because there is no dispute that Defendants had authorization to access the Kipu EMR System, Plaintiff's CADRA claim fails a matter of law. Accordingly, Defendants' motion for summary judgment as to Count I of the second amended complaint is **GRANTED**.

However, Defendants' motion for summary judgment as to Count V of the second amended complaint for common law unfair competition is **DENIED**. Defendants' sole argument is that a common law unfair competition claim cannot survive absent a trademark infringement claim. The Eleventh Circuit, however, has recognized that common law unfair competition claims can be viable even absent trademark infringement claims. *See Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Aspen Specialty Ins. Co.*,

745 F. App'x 314, 319 (11th Cir. 2018).  And here, Plaintiff's claim for common law unfair competition is not limited to the alleged trademark infringement of Kipu's OTO mark. (*See* 223 ¶¶ 161-166).

### c. ZenCharts' Counterclaims

ZenCharts advances the following counterclaims against Plaintiff: (1) Count I for tortious interference with business relations; (2) Count II for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"); (3) Count III for trade libel; and (4) Count IV for violation of the Lanham Act.

Under Florida law, a plaintiff asserting a claim for tortious interference with a business relationship must prove: (1) the existence of a business relationship, (2) that defendant had knowledge of that business relationship, (3) that defendant intentionally and unjustifiably interfered with that business relationship, and (4) that plaintiff suffered damages as a result. *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334 (S.D. Fla. 2007). "To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). To state a valid claim of trade libel, plaintiffs must allege: (1) a falsehood; (2) has been published, or communicated to a third person; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does

play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood. *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). Finally, to sustain a FDUTPA claim, a plaintiff must show "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1351 (S.D. Fla. 2017).

Plaintiff argues that they are entitled to summary judgment because all counterclaims are based on communications made to two of ZenCharts' customers, Blanchard and Journey Pure, who to this day remain ZenCharts customers. Therefore, Plaintiff argues that ZenCharts has not offered any evidence of damages on its counterclaims. ZenCharts responds that they have offered evidence to show that Plaintiff approached numerous businesses, some of which are established customers of ZenCharts, and made several representations to them including (i) suggesting ZenCharts committed "outright fraud" (DE 260-6 at 49), (ii) sending potential customers an OCR investigation letter implying that ZenCharts had committed HIPAA violations (DE 260-18 at 2,6; DE 260-6 at 46) and (iii) communicating to potential customers that ZenCharts customers were leaving ZenCharts (*See* DE 163-1).

In support of their position, Glaser testified that 41 potential customers did not sign with ZenCharts because of the "smear campaign" conducted by Kipu. (*See* DE 260-4). However, besides Glaser's testimony which is inadmissible hearsay, there is no evidence in this record that ZenCharts suffered any damages. In its response to Plaintiff's motion for summary judgment, Defendants merely refer to Glaser's deposition testimony and state in conclusory fashion that Kipu's "smear campaign" "caused real damage." But

20

ZenCharts has not offered any testimony, depositions, affidavits emails or correspondence from any current or potential customer suggesting that they refrained from contracting with ZenCharts because of Kipu. In fact, the two ZenCharts' customers that ZenCharts has specifically identified as being the target of Kipu's falsehoods remain Zencharts' customers to this day. (*See* DE 170 ¶ 48).

In short, the only evidence put forward by ZenCharts showing that ZenCharts suffered damages due to Kipu's actions is Glaser's testimony that "[t]hese 42 [sic] [customers] though were pretty specific about that the reason that they did not sign up is because of that ongoing smear campaign that Kipu has in place." (*See* DE 202 at 16). This testimony is hearsay and there is nothing to indicate that, other than Glaser's statements, there is any admissible evidence to be adduced on this issue. Accordingly, the Court will not consider these statements in summary judgment. *See Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir.), amended on reh'g in part, 102 F.3d 1118 (11th Cir. 1996) (affirming exclusion of witness testimony in deposition "which [was] based on the statements of unknown co-workers" and could not be reduced to admissible evidence at trial).[6]

---

[6] During the pretrial conference of October 15, 2019, Defense Counsel referred to arguments made in their response to Plaintiff's motion to exclude Defendants' expert witness to support their claim. However, the Court notes that it is the Parties' burden in briefing their motions for summary judgment to "inform [ ] the… court of the basis for [their] [arguments] and [to] identify[ ] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate the absence [or existence] of a genuine issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (citing *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1373 (11th Cir.1997) ("[W]e are not obligated to cull the record ourselves in search of facts not included in the statements of fact.")). Consequently, in ruling on the motions for summary judgment the Court must rely on the Parties' briefing of those motions. Nevertheless, the Court has reviewed the arguments

For these reasons, Plaintiff's motion for summary judgment on ZenCharts' counterclaims is **GRANTED**.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1)    Plaintiff's Motion for Partial Summary Judgment (DE 169) is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's motion is **GRANTED** as to Zencharts' counterclaims and **DENIED** as to Plaintiff's claims and Solutions' counterclaim.

---

made by Defendants in their response to Plaintiff's *Daubert* motion and the deposition designations and concludes that ZenCharts' counterclaims still fail. As in their response to Plaintiff's motion for summary judgment, ZenCharts fails to adduce non-hearsay evidence of damages. Instead, ZenCharts refers to the deposition testimony of Rick Glaser, Dan Callahan and Sean Callahan to support their arguments that (1) "Journey Pure" did not implement all of its facilities with ZenCharts because of emails sent to Patrick Dunn; (2) Kipu's misrepresentations caused ZenCharts to lose investment opportunities from "the Walshes"; and (3) ZenCharts lost out on contracts with 41 customers and potential customers. First, Glaser's testimony is full of inconsistencies as to what Patrick Dunn may or may not have said with respect to further investments by Journey Pure. Second, there is no reference in the briefing or in ZenCharts' witnesses' deposition testimony to emails, correspondences, affidavits or testimony by Journey Pure or "the Walshes" to support these allegations. Without more, such evidence is rank hearsay and, thus, is insufficient to defeat summary judgment where, as here, no showing has been made that such evidence can be reduced to an admissible form at trial. *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir.1999) (finding that hearsay evidence was insufficient to defeat summary judgment unless it falls within and exception to the hearsay rule or is not offered for the truth of the matter asserted).

Moreover, the Walshes' deposition testimony – which is not referenced at all in any of Defendants' briefing – also does not support ZenCharts' claims. First, the Walshes did invest in ZenCharts, even after this litigation began. Second, their testimony as to why they did not invest more money, referenced the complaint, the lawsuit and litigation expenses, but there is no evidence that Kipu made any false statements about ZenCharts to the Walshes and that they relied on those statements. Finally, ZenCharts has not offered any competent evidence of damages as to this lost investment, since the ZenCharts' expert report does not even mention the Walshes' purported investment and ZenCharts' has not given monetary value to this lost opportunity.

(2)    Defendants' Motion for Partial Summary Judgment (DE 173) is **GRANTED IN PART AND DENIED IN PART** as follows:

> a. Defendants' motion is **GRANTED** as to Count I of the second amended complaint.
>
> b. Defendants' motion is **GRANTED** as to Count VI of the second amended complaint with respect to ZenCharts and Richard Glaser, only.
>
> c. Defendants' motion for summary judgment as to Counts II, III, V and VI (except for ZenCharts and Glaser) of the second amended complaint is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida, this _16_ day of October, 2019.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE