**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 17-24733-Civ-WILLIAMS/TORRES

KIPU SYSTEMS LLC,

       Plaintiff,

v.

ZENCHARTS LLC, *et al.*,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S MOTION FOR FEES AND NON-TAXABLE COSTS**

This matter is before the Court on Kipu Systems LLC's ("Plaintiff") motion for fees and non-taxable costs against ZenCharts, Solutions Recovery Center, LLC, Richard Glaser, Sean Callahan, and Yanko Karkalichev (collectively, the Judgment Defendants"). [D.E. 350]. The Judgment Defendants responded to Plaintiff's motion on February 26, 2021 [D.E. 379] to which Plaintiff replied on March 5, 2021. [D.E. 402]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Plaintiff's motion for fees and non-taxable costs should be **GRANTED in part** and **DENIED in part**.[1]

_____

[1] On February 17, 2021, the Honorable Kathleen Williams referred Plaintiff's motion to the undersigned Magistrate Judge for disposition. [D.E. 352].

1

# I.    BACKGROUND

This case involved a dispute over a licensing agreement for the use of software designed to maintain electronic medical records.   Plaintiff was the creator and owner of a computer program that treatment facilities used to manage and maintain medical records electronically.   Plaintiff alleged that ZenCharts LLC ("ZenCharts") and several other defendants, after having failed to create their own electronic medical system, signed up to use Plaintiff's system and then used that access to study and misappropriate the structure, organization, workflows, and processes. Plaintiff raised, in its initial pleading, claims for violating the Florida Computer Abuse and Data Recovery Act ("CADRA"), breach of contract, the Lanham Act, unfair competition, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Plaintiff subsequently amended that pleading to remove some claims, except for violations of CADRA, breach of contract, unfair competition, and a Lanham Act claim.   ZenCharts raised counterclaims for tortious interference, trade libel, and violations of FDUPTA and the Lanham Act.[2]

On October 16, 2019, the Court granted ZenCharts's motion for summary judgment on Plaintiff's CADRA claim and granted Plaintiff's motion for summary judgment on all of ZenCharts's counterclaims.   *See Kipu Sys., LLC v. ZenCharts, LLC*, 2019 WL 7371879, at *11 (S.D. Fla. Oct. 16, 2019).   On November 4, 2019, a

---

[2]    The Court has jurisdiction because the second amended complaint presents a federal question pursuant to 28 U.S.C. § 1331, and the state law claims arise under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

jury returned a verdict for Plaintiff, finding ZenCharts liable for breach of contract and unfair competition.   After ZenCharts moved for judgment notwithstanding the verdict, the Court granted that motion in part and found that Plaintiff failed to provide ZenCharts with adequate notice of the unfair competition claim.   The Court entered final judgment for $1,000,000 against ZenCharts on Plaintiff's breach of contract claim and Plaintiff has filed a motion for fees and non-taxable costs that is now ripe for disposition.[3]

## II.   APPLICABLE PRINCIPLES AND LAW

Generally, under the "American Rule" in the United States, the prevailing party in litigation may not collect its attorney's fees from the losing party.   *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598, 602 (2001).   That is, each party – including the prevailing party – must bear its own fees.   The rationale of the "American Rule" is that "since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit." *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984).   Certain exceptions, however, do exist that allow a prevailing party to recover its fees.   *See id.*; *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1329 (11th Cir. 1998) ("Florida conforms to the 'American Rule' under which attorneys' fees are awarded only when permitted by statute or

---

[3]    The final judgment also awarded Plaintiff $1,508,000 against Solutions Recovery Center, LLC, $1,500,000 against Richard Glaser, $1,500,000 against Sean Callahan, and $1,000,000 against Yanko Karkalichev for a total judgment of $6,508,000.   [D.E. 324].

contract." (citing *Cook v. Deltona Corp.,* 753 F.2d 1552, 1563 (11th Cir. 1985)).

These exceptions include: "(1) when a statute grants courts the authority to direct the

losing party to pay attorney's fees; (2) when the parties agree in a contract that one

party will pay attorney's fees; and (3) when a court orders one party to pay

attorney's fees for acting in bad faith." *In re Home Depot Inc.*, 931 F.3d 1065, 1078

(11th Cir. 2019).

## III.   ANALYSIS

Following the Court's entry of final judgment on December 14, 2020 [D.E.

324], Plaintiff seeks $1,081,113.93 in fees and $382,075.94 in non-taxable costs

against the Judgment Defendants.   Plaintiff says that it should be considered the

prevailing party because the Court entered final judgment against the Judgment

Defendants for approximately $6.5 million dollars.   Plaintiff also claims that that

the request for fees and costs is reasonable because – based on the expenses

incurred, the hourly rates, and the number of hours expended – the amount sought

goes hand in hand with the success obtained at trial.   Before turning to the merits,

we first consider whether Plaintiff is entitled to fees.

### A.   *Plaintiff's Entitlement to Fees*

Plaintiff says that it should be entitled to recover fees and costs because of

several Florida contracts that the Judgment Defendants breached.   Those contracts

contained prevailing party provisions and Plaintiff relies primarily on a 2014

agreement that states – in the event of a dispute over intellectual property in federal

or state court – the prevailing party shall be awarded reasonable fees and costs:

> In the event of a dispute involving Intellectual Property, including copyright, trademark, or any other cause of action provided for by law, venue shall be proper in the appropriate Federal or State Court, as dictated by the cause of action, with jurisdiction over Miami-Dade County, Florida.
>
> *The prevailing party shall be awarded reasonable attorney's fees and other costs.*

[D.E. 223-3 at 5 (emphasis added)]; *see also id*. at 223-1 ("Prevailing party shall be awarded reasonable attorneys' fees"); *id*. at 223-2 ("Winning party shall be awarded reasonable attorneys fees").   Plaintiff also claims that, it should be entitled to fees because it prevailed on ZenCharts's FDUTPA counterclaim.   *See* Fla. Stat. § 501.2105(1) ("In any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.").   Either way, after the Court entered final judgment, Plaintiff concludes that it became the prevailing party against the Judgment Defendants.

The Judgment Defendants argue that Plaintiff should not be entitled to any fees or costs because – although one of the underlying contract claims includes a prevailing party provision – Plaintiff suffered more losses than victories.   The Judgment Defendants say, for instance, that Plaintiff only (1) prevailed against four defendants out of the original thirteen, (2) won only three claims out of the original

fourteen counts, and (3) recovered a mere $6 million out of the $30 million sought.[4]
Even worse, the Judgment Defendants assert that two other defendants prevailed on
every claim asserted against them and that all defendants prevailed on Plaintiff's
CADRA and Lanham Act claims.  So, while Plaintiff might have won a monetary
judgment against the Judgment Defendants, they view this as only a limited sign of
success and insufficient to render Plaintiff the prevailing party.

As a preliminary matter, Plaintiff filed this case pursuant to the Court's
federal jurisdiction with the state law claims arising under the Court's supplemental
jurisdiction.  In a diversity or a supplemental jurisdiction case, a federal court is
required to apply the substantive law of a forum state.  *See Erie R. Co. v. Tompkins*,
304 U.S. 64, 78 (1938) (stating that "[e]xcept in matters governed by the Federal
Constitution or by acts of Congress, the law to be applied in any case is the law of the
state").  It is also well established that statutes allowing for the recovery of
attorney's fees are substantive law.  *See McMahan v. Toto*, 256 F.3d 1120, 1132
(11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002) (stating that "it is
clear that statutes allowing for recovery of attorney's fees are substantive
for *Erie* purposes").  So – given that Plaintiff's breach of contract claims are included
under the Court's supplemental jurisdiction and a federal court is required to apply

---

[4]     The Judgment Defendants say that Plaintiff has two breach of contract
claims, but that the 2013 contract relates exclusively to arbitration proceedings and
cannot be used to recover fees and costs for an action litigated in federal court.   The
Judgment Defendants reason that any fees have to be recoverable under the 2014
contract.

the substantive law of the forum state when determining whether a party is entitled to recover fees – Florida law applies.

Under Florida law, "[p]rovisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017). This particular type of provision "creates the prevailing party's entitlement to reasonable attorneys' fees." *Darretta v. Windsow Properties*, 2008 WL 11408767, at *2 (S.D. Fla. May 1, 2008) (internal citations omitted). The Eleventh Circuit, when applying Florida law, has determined that a prevailing party is one that succeeds on any significant issue in litigation:

> The Florida Supreme Court has held that, in general, "the party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992); *see also Prosperi v. Code, Inc.*, 626 So. 2d 1360, 1363 (Fla. 1993) (courts should look to which party prevailed on the "significant issues"). In so holding, the Florida Supreme Court has taken guidance from the United States Supreme Court, which has "held that the test is whether the party 'succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Moritz*, 604 So. 2d at 809-10 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (internal quotation marks and brackets removed). *Moritz* continued: "It is our view that the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court."

*Chow v. Chak Yam Chau*, 2015 WL 7258668, at *5 (11th Cir. Nov. 17, 2015); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (stating that parties "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any

significant issue in litigation"); *Herbst v. N. Ocean Condos, L.P.*, 2009 WL 2257827, at *4 (S.D. Fla. July 29, 2009) ("Florida follows the same standard as enunciated in Hensley").  Hence, this standard looks for "(1) a situation where a party has been awarded by the court at least some relief on the merits of his [or her] claim, or (2) a judicial imprimatur on the change in the legal relationship between the parties." *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003).

"Where there is an attorneys' fees provision for the prevailing party in the contract, the general rule is that the court must find that one of the parties to the contract prevailed." *Darretta*, 2008 WL 11408767, at *2 (citing *Hutchinson v. Hutchinson*, 687 So. 2d 912, 912 (Fla. 4th DCA 1997)).  However, there is an exception to the general rule, where "compelling circumstances" will give the trial court "discretion to determine that *no* party prevailed in the litigation and . . . [properly] deny an award of attorney's fees under a prevailing party contract." *Winn-Dixie Stores, Inc. v. Big Lots Stores, Inc.,* 2016 WL 2918152, at *12 (S.D. Fla. May 18, 2016) (emphasis added).  In those cases, "deference is owed to a trial court's discretion." *Darretta*, 2008 WL 11408767, at *2 (citation omitted). Florida courts have also found that this exception exists "where both [p]arties win and lose on significant issues." *Winn-Dixie Stores, Inc.*, 2016 WL 2918152, at *12(citing *Brevard County Fair Assoc., Inc. v. Cocoa Expo., Inc.*, 832 So. 2d 147, 151 (Fla. 5th DCA 2002)).  Thus, as an example, the exception exists "where both parties to [a] contract won on their breach of contract claims, where both parties lost on their

8

breach of contract claims, or where both parties won and lost." *Darretta*, 2008 WL 11408767, at *3.

Here, the Judgment Defendants say that the exception to the general rule applies because of the mixed success of both parties.   The problem with that argument is that – when viewing Plaintiff's success solely against the Judgment Defendants – this case does not present a situation where two parties won and lost on significant issues.   While the Judgment Defendants prevailed on Plaintiff's CADRA and Lanham Act claims, the Court entered a significant monetary judgment in Plaintiff's favor for approximately 6.5 million dollars.   [D.E. 324].

The Judgment Defendants try to sidestep this fact with assertions that two other defendants prevailed on all the claims asserted against them.[5]   That does nothing, however, to help the Judgment Defendants because Plaintiff's motion for

---

[5]   The Judgment Defendants also rely on the Supreme Court's decision in *Hensley* for the rejection of Plaintiff's motion for fees.   But, that case does more harm than good to their position because, if anything, it makes clear that a plaintiff need not succeed on every claim in a lawsuit to be considered a prevailing party:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.   Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.   In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435 (citation omitted).

fees and non-taxable costs is not aimed at those defendants; the motion is aimed at the Judgment Defendants.   And when the Court juxtaposes Plaintiff's success vis-à-vis the Judgment Defendants, the former won a significant monetary victory whereas the latter recovered nothing.   The analysis may have been different if the Judgment Defendants had prevailed on some of their counterclaims, but Plaintiff defeated all of those at either summary judgment or trial.

The only success that the Judgment Defendants can point to with respect to their own efforts is that they defeated two of Plaintiff's claims while losing everything else and failing to prevail on any of their own counterclaims.[6]  It is therefore difficult to see how this case presents a mixed result, especially when the general rule is that "[t]he results obtained governs the determination of which party prevailed[.]"  *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 801 (11th Cir. 2014); *see also Bessard v. Bessard,* 40 So. 3d 775, 778 (Fla. 3d DCA 2010) ("'[I]t is [the] results, not [the] procedure, which govern the determination' of which party prevailed for purposes of

---

[6]      This is consistent with a prior Report and Recommendation that the undersigned issued on February 10, 2021, where the Court found that Plaintiff succeeded on a least one claim against ZenCharts that rendered Plaintiff the prevailing party:

> The only way ZenCharts could be considered a prevailing party is if Kipu prevailed on *none* of the claims it filed in pursuing the lawsuit. So, given that Kipu succeeded on at least one of its claims against ZenCharts, the latter has no compelling argument that it can be considered a prevailing party.

[D.E. 347 at 10-11 (citations omitted)].

awarding attorney's fees[.]") (quoting *Smith v. Adler,* 596 So. 2d 696, 697 (Fla. 4th DCA 1992)).   Because Plaintiff defeated all of the Judgment Defendants' counterclaims and recovered a significant monetary judgment, Plaintiff should be considered the prevailing party against the Judgment Defendants.

### B.   *The Lodestar Method of Determining Reasonable Fees*

The next question is whether Plaintiff has requested a reasonable fee and cost award.   In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.   We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee").   This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed."   *Hensley*, 461 U.S. at 433.   If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly."   *Id*.

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended.   *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).   Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained."   *Norman*, 836 F.2d at 1302.   Therefore, when awarding fees,

the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id*. at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of

12

avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### C. *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate.   This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation."   *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299).   The relevant market is "the place where the case is filed."   *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted).   The relevant legal community here is South Florida.

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).[7]   The movant is required to submit to the Court satisfactory evidence to

---

[7]     The 12 *Johnson* factors are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.").   Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."   *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

The Judgment Defendants failed to raise any objections with respect to the hourly rates requested.   The Judgment Defendants only took issue with Plaintiff's alleged violations of Local Rule 7.3(a).   Since that argument is more appropriately considered in connection with the number of hours expended, we consider that issue in the section that follows.   The hourly rates requested could therefore be granted by default under Local Rule 7.1.   However, even after conducting an independent review, the Court agrees that – with the benefit of the discounts included in the billing records and the flat-fee periods – the hourly rates are reasonable for all of the timekeepers who worked on this matter.   If Plaintiff's lawyers had not given substantial discounts and flat-fee periods, the total bill would have equaled $1,368,789, or almost $300,000 more than the total amount requested.   That bill, if

left untouched, would have triggered a reduction because some of the timekeepers have hourly rates that exceed the amounts billed for in the Southern District of Florida. Since those rates were already substantially reduced, no reduction is needed.

### D. *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended. The award must exclude compensation for hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel. *A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *A.C.L.U. of Georgia*, 168 F.3d at 428. If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428. As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022,

1030 (5th Cir. 1980)).

The Judgment Defendants oppose the motion for fees because Plaintiff violated Local Rule 7.3(a).   That rule provides, among other things, that a motion seeking fees and costs must include the following:

> (A) the identity, experience, and qualifications for each timekeeper for whom fees are sought;
> (B) the number of hours reasonably expended by each such timekeeper;
> (C) a description of the tasks done during those hours; and
> (D) the hourly rate(s)claimed for each timekeeper;
> (6) describe and document with invoices all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920[.]

S.D. Fla. L.R. 7.3(a).   The Judgment Defendants say that Plaintiff violated this rule because the latter omitted key information with respect to a $5,400 invoice from a law firm named Trueba & Suarez, PLLC ("Trueba & Suarez").   The Judgment Defendants claim that this firm never appeared in this case and that Plaintiff's invoices fail to identify any attorneys that provided legal services, the hours expended, or a description of the services provided.   Instead, the Judgment Defendants assert that the invoices merely indicate that certain services were rendered for general counseling, and that, given this violation of Local Rule 7.3, no fees should be awarded for the work that Trueba & Suarez performed.

This issue is now moot because Plaintiff says, in its reply, that it withdraws the entire amount attributed to Trueba & Suarez to avoid any ongoing dispute with respect to this invoice.   Although Plaintiff maintains that the fees are recoverable and that no violation of the Local Rules occurred, Plaintiff does not want to waste

16

time and resources over an amount that is ultimately inconsequential.   Thus, given the agreement between the parties, the Trueba & Suarez invoice for $5,400 should be subtracted from the total amount requested in the motion for fees.

The only other concern that the Judgment Defendants have with the amount of the fees requested in the timesheet for one specific lawyer, Javier Rodriguez ("Mr. Rodriguez"), and the services he provided between October 19, 2019 and November 4, 2019.   The Judgment Defendants claim that Plaintiff failed to meet and confer on Mr. Rodriguez's time sheet and that they never saw his billing records until Plaintiff filed the motion for fees on the docket.   The Judgment Defendants are skeptical of Mr. Rodriguez's hours because they "cannot be sure whether this is an invoice for time that was made contemporaneously with the work that was performed or whether this is Mr. Rodriguez's best effort to recreate his time fifteen months after the fact."   [D.E. 379 at 8].   Defendants say that Mr. Rodriguez's billing records fail to include any payment instructions, addresses, or other items that are customarily seen on an actual invoice and that his fees should be rejected as a result.

This is a weak argument, in large part, because the only objection to Mr. Rodriguez's time sheet is that it looks suspicious based on the lack of payment instructions, billing numbers, and other items that are generally seen on invoices. That alone is insufficient to reject Mr. Rodriguez's time sheet because the Judgment Defendants are merely relying on guesswork and speculation with no concrete evidence that any invoice was fabricated.   If the Judgment Defendants had argued

17

that Mr. Rodriguez's hours did not go hand in hand with the work performed or that his hours were excessive for a lawyer of his experience then that would be an entirely different matter.   But, that is not the argument presented.   The Judgment Defendants merely claim that the invoice Mr. Rodriguez submitted looks different than what is customarily found in the legal industry.   That is unpersuasive because it fails to take into consideration that not all invoices come in the same format with the same level of detail.   And without any other reason to second-guess Mr. Rodriguez's billing records, the Judgment Defendants have failed to present any compelling reason to reject these hours.

Having disposed of those arguments, the only question remaining is whether the number of hours submitted in Plaintiff's billing records is reasonable.   The Judgment Defendants do not take issue with any specific hours and, based on the Court's independent view, neither do we.   The number of hours is consistent with what the Court would expect from a team of sophistical legal professionals to expend for a case with claims presented on both sides and for a case that resulted in a jury verdict.   Accordingly, Plaintiff's motion for fees should be **GRANTED in part** and **DENIED in part** with the only reduction being the $5,400 invoice billed to Trueba & Suarez.   That equals a total fee award of $1,075,713.93.

### E.   *Non-taxable Costs*

The next issue is Plaintiff's request for $382,075.94 in non-taxable costs. This total includes $374,797.51 in expert witness fees and $7,278.43 in costs for,

among other things, litigation support, legal research, airfare, parking, travel, and filing expenses.   The Judgment Defendants only oppose the expert witnesses fees because "[t]he general rule in civil litigation in federal courts is that expert witness fees are not taxable as costs beyond the statutory per diem fee, mileage and the subsistence allowance provided for under 28 U.S.C. § 1821.").   *Nat'l Bancard Corp. v. Visa, U.S.A., Inc.*, 112 F.R.D. 62, 66 (S.D. Fla. 1986) (citing cases).   The Judgment Defendants also accuse Plaintiff of failing to offer any authority that entitles them to recover these fees pursuant to the underlying contracts.   Hence, the Judgment Defendants demand that the request for $374,797.51 in expert witness fees be denied.

The most glaring shortfall with this argument is that the Judgment Defendants relied on a case that considered whether expert fees are recoverable under 28 U.S.C. § 1920.   The question here, however, is not whether expert fees are recoverable under Section 1920, but whether Plaintiff can recover *non-taxable* expenses under the Florida contracts.   Any reliance on Section 1920 is therefore misplaced.

Putting that aside, there is no reason why the expert witness fees are not recoverable under the contracts.   The 2014 contract provides, for instance, that "[t]he prevailing party shall be awarded reasonable attorney's fees and other costs." [D.E. 223-3 at 5].   There is no limitation on the recovery of any particular costs other than the restriction that they be reasonable.   Yet, the Judgment Defendants

failed to advance any argument or explanation as to how any of the expert witness fees are unreasonable.   They instead relied solely on a case where costs are unrecoverable under § 1920.   But, for the reasons already stated, that argument is feeble.   And given the lack of any other argument or opposition and the Court's independent review of the underlying invoices, Plaintiff should recover all of the non-taxable costs requested.   Thus, Plaintiff's motion to recover $382,075.94 in non-taxable costs should be **GRANTED**.

### F.    _How Fees and Costs Should be Apportioned_

The final question is how to apportion fees and costs.   The Judgment Defendants say that any award should be proportionate to the amounts allocated in the Court's final judgment.   That means, for example, that the judgment for $1,000,000 against ZenCharts should make that party liable for only 15% of the fees and costs because that represents that defendant's portion of the total final judgment that the Court entered in the amount of $6,508,000.   Plaintiff takes issue with that position because the Judgment Defendants are trying to limit the liability for certain defendants (i.e. ZenCharts) when all of them "operated as a cohesive unit with one nefarious objective[.]"   [D.E. 402 at 9].   Plaintiff also claims that ZenCharts "is by far the most culpable," because that defendant continues to enjoy the profits from the wrongful conduct.[8]   _Id_.   And Plaintiff has additional concerns

---

[8]      Plaintiff points to the jury verdict for support because – prior to the disposition of post-trial motions that limited the amount of damages against ZenCharts – the jury found ZenCharts liable for 6 million dollars.

that, if joint and several liability is not imposed against the Judgment Defendants, it may leave Plaintiff "with a largely uncollectible judgment." *Id*. at 2. Plaintiff therefore requests that the Court enter a fee and cost award against the Judgment Defendants jointly and severally.

District courts are given wide discretion not only in determining the amount of a fee award, but also as to when to apportion fees and "how to divide liability." *United States v. Patrol Services, Inc.*, 202 F. App'x 357 (11th Cir. Oct. 19, 2006) (internal quotations omitted). "In apportioning attorney's fees, district courts should try to achieve the most fair and sensible solution as possible." *Id*. (internal quotations and citations omitted). "Courts have used various approaches such as: (1) joint and several liability; (2) apportioning fees in accord with each defendant's relative degree of culpability; (3) awarding fees in the same proportions as the jury assessed damages; (4) apportioning fees based on the amount of time spent by the plaintiff in preparing his case against each defendant; and (5) apportioning fees by claims or defenses which are specific to a particular defendant." *Booher v. Marion Cty.*, 2010 WL 11623534, at *10 (M.D. Fla. Sept. 14, 2010).

In determining which method to use, the Eleventh Circuit has advised that courts should consider, among other things, the facts and nature of the case, the purpose of the attorney fee statute under which plaintiff filed the fee petition, whether the injury is divisible, and any institutional concerns, such as federal policies, that may be relevant. *Patrol Servs., Inc.*, 202 F. App'x at 362. A court

should also "avoid large discretionary allocations to insolvent defendants." *Id.* (internal quotation marks omitted). And a court should avoid creating "perverse incentives that discourage useful settlements and encourage projected litigation." *United States v. Aisenberg*, 358 F.3d 1327, 1343 (11th Cir. 2004).

Plaintiff says that joint and several liability should apply here because of a concern that the judgment might be, in large parts, uncollectible. [9]   [D.E. 402 at 2 ("The Judgment Defendants . . . insist that the Court should apportion any award of attorneys' fees and costs among them, the apparent goal being to leave Kipu with a largely uncollectible judgment.")].  That concern is well taken because, to date, several of the Judgment Defendants have failed to pay anything in satisfaction of the judgment that the Court entered against them and this has, in turn, required Plaintiff to file several motions for a writ of garnishment.  [D.E. 413-415].  If the Court imposed a fee award that was only proportionate to the amounts allocated in the Court's final judgment, there is a significant chance that the Judgment Defendants might fail to pay millions of dollars toward that judgment.  The record also shows that ZenCharts was the greatest beneficiary of the unlawful conduct – as opposed to the individual defendants – because the company is what owns/operates the electronic medical system and what stands to reap the most rewards as Plaintiff's

---

[9]     Joint and several liability "means that each party is fully liable, subject to the constraint that the claimant cannot recover more than his total entitlement." *Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005).

direct competitor.

However, even putting aside those two considerations, this case meets almost all of the equities that courts generally consider when looking to impose joint and several liability. *See Moore v. Shands Jacksonville Med. Ctr., Inc.*, 2014 WL 12652475, at \*7 (M.D. Fla. Apr. 3, 2014) ("Equities favoring joint and several liability include joint representation of the non-prevailing parties, common theories of liability or defense among the non-prevailing parties, equal cost attributions, and the unfairness of requiring the prevailing party to collect costs from several sources and bear the risk of non-payment from one or more of them.") (citing *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002)).  The Judgment Defendants satisfy many of these factors because they hired the same lawyers and argued the same theories of non-liability.  They only seek to distinguish themselves now because they are on the hook for fees and costs.

Unfortunately, the Judgment Defendants have, to this point, operated as a single cohesive unit and there is no compelling reason to choose any other method to apportion fees and costs especially when the default rule is that joint and several liability should apply where there is more than one non-prevailing party.  *See Moore v. Shands Jacksonville Med. Ctr., Inc.*, 2014 WL 12652475, at \*7 (M.D. Fla. Apr. 3, 2014) ("If there is more than one non-prevailing party, such as the case with the "[t]he default rule is that costs are to be imposed jointly and severally, and the burden is on the party seeking to avoid that to introduce evidence justifying

apportionment and persuade the court to do that.'") (quoting *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab,* 739 F.3d 579, 586 (11th Cir. 2013)).   And when these equities are coupled with the significant chance of an uncollectible judgment and with ZenCharts being the greatest beneficiary of the unlawful conduct, all signs point to joint and several liability as the best method to apportion fees and costs. Accordingly, Plaintiff's motion for fees and costs should be **GRANTED in part** and **DENIED in part** with the Judgment Defendants jointly and severally liable.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion for fees and costs be **GRANTED in part** and **DENIED in part**:

A.   Plaintiff's motion for fees should be **GRANTED in part** and **DENIED in part** with a recovery of $1,075,713.93.

B.   Plaintiff's motion for $382,075.94 in non-taxable costs should be **GRANTED**.

C.   The Judgment Defendants should be held jointly and severally liable for both fees and costs.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from

challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 6th day of April, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

25