**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 17-24733-Civ-WILLIAMS/TORRES

KIPU SYSTEMS LLC,

      Plaintiff,

v.

ZENCHARTS LLC, *et al.*,

      Defendants.

_____/

**OMNIBUS REPORT AND RECOMMENDATION**
**ON MOTION FOR FEES AND NON-TAXABLE COSTS**

      This matter is before the Court on Dan Callahan's and Website Consultants, Inc.'s (the "Non-Judgment Defendants") motion for fees and costs [D.E. 349], and ZenCharts's, Solutions Recovery Center, LLC's, Richard Glaser's, Sean Callahan's, and Yanko Karkalichev's (the "Judgment Defendants") (collectively, the "Defendants") motion for fees and costs.  [D.E. 348].  Kipu Systems LLC ("Plaintiff") filed a joint response to the motions on February 26, 2021 [D.E. 390] to which Defendants filed a joint reply.  [D.E. 401].  Therefore, the motions are now ripe for disposition.  After careful consideration of the motions, response, reply, relevant authorities, and for the reasons discussed below, the motions for fees and non-taxable costs should be **GRANTED in part** and **DENIED in part**.[1]

_____

[1]     On February 17, 2021, the Honorable Kathleen Williams referred the motions for fees and costs to the undersigned Magistrate Judge for disposition.   [D.E. 352].

## I. BACKGROUND

This case involved a dispute over a licensing agreement for the use of software designed to maintain electronic medical records.  Plaintiff was the creator and owner of a computer program that treatment facilities used to manage and maintain medical records electronically.  Plaintiff alleged that several defendants, after having failed to create their own electronic medical system, signed up to use Plaintiff's system and then used that access to study and misappropriate the structure, organization, workflows, and processes.  Plaintiff raised, in its initial pleading, claims for violating the Florida Computer Abuse and Data Recovery Act ("CADRA"), breach of contract, the Lanham Act, unfair competition, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Plaintiff subsequently amended that pleading to remove some claims, except for violations of CADRA, breach of contract, unfair competition, and a Lanham Act claim.[2]

On November 4, 2019, a jury returned a verdict for Plaintiff, finding some defendants liable for breach of contract and unfair competition.  After disposition of post-trial motions, the Court entered final judgment in the amount of $1,000,000 against ZenCharts LLC, $1,508,000 against Solutions Recovery Center LLC, $1,500,000 against Richard Glaser, $1,500,000 against Sean Callahan, and $1,000,000 against Yanko Karkalichev for a total judgment of $6,508,000.  [D.E.

---

[2]    The Court has jurisdiction because the second amended complaint presents a federal question pursuant to 28 U.S.C. § 1331, and the state law claims arise under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

324].   Because the Non-Judgment Defendants defeated all of Plaintiff's claims, they filed a motion for fees and non-taxable costs that is now ripe for disposition.

## II.   APPLICABLE PRINCIPLES AND LAW

Generally, under the "American Rule" in the United States, the prevailing party in litigation may not collect its attorney's fees from the losing party.  *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598, 602 (2001).   That is, each party – including the prevailing party – must bear its own fees.   The rationale of the "American Rule" is that "since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit."   *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984).   Certain exceptions, however, do exist that allow a prevailing party to recover its fees.   *See id.*; *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1329 (11th Cir. 1998) ("Florida conforms to the 'American Rule' under which attorneys' fees are awarded only when permitted by statute or contract." (citing *Cook v. Deltona Corp.,* 753 F.2d 1552, 1563 (11th Cir. 1985)).   These exceptions include: "(1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith."   *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019).

### III.   ANALYSIS

Defendants seek a maximum fee award[3] of $1,628,689.40 and $391,090.07 in costs.   Plaintiff opposes all of the relief requested because – although the Court did not enter final judgment against the Non-Judgment Defendants – the jury originally found them liable for unfair competition in the amount of $1.5 million dollars. Plaintiff says that the only reason the jury verdict did not stand is because of post-trial motions that singled out a pleading deficiency.   Plaintiff also contends that the Non-Judgment Defendants cannot be considered the prevailing party because Plaintiff defeated all five of their counterclaims.   So, if anything, Plaintiff reasons that neither prevailed against the other and that the dispute "ended in a proverbial tie."   [D.E. 390 at 2].   And even if the Non-Judgment Defendants could be considered a prevailing party, Plaintiff says that only the CADRA claim is a viable statutory provision that would entitle the Non-Judgment Defendants to a fee award.   But, Plaintiff claims that fees should still not be awarded because the Non-Judgment Defendants failed to meet their burden of demonstrating what portion of their fees was incurred in litigating that specific claim.

Plaintiff also opposes any fees or costs to the Judgment Defendants because the Court granted Plaintiff's motion for summary judgment on all but one of the counterclaims, a jury returned a verdict in Plaintiff's favor, and the Court entered

---

[3]    Defendants have several proposed fee awards depending on whether the Court finds certain amounts recoverable with respect to specific claims.  If the Court awards all the fees requested, the total equals $1,628,689.40.

final judgment against the Judgment Defendants in the amount of approximately $6.5 million dollars.    Plaintiff says that this is consistent with a prior Report and Recommendation that the undersigned issued on February 10, 2021, where the Court found that Plaintiff succeeded on a least one claim against ZenCharts that rendered Plaintiff the prevailing party:

> The only way ZenCharts could be considered a prevailing party is if Kipu prevailed on *none* of the claims it filed in pursuing the lawsuit. So, given that Kipu succeeded on at least one of its claims against ZenCharts, the latter has no compelling argument that it can be considered a prevailing party.

[D.E. 347 at 10-11 (citations omitted)].    Plaintiff posits that the same reasoning applies here, that Plaintiff must be considered the prevailing party against the Judgment Defendants, and that the latter cannot be entitled to a fee award. Plaintiff therefore concludes that both motions fail and that all of the relief requested should be denied.

### A.    *Entitlement to Fees*

The first question is whether Defendants are entitled to fees.    The Non-Judgment Defendants seek, on one hand, fees and costs under the Lanham Act, FDUTPA, the Defend Trade Secrets Act ("DTSA"), and CADRA.    The Judgment Defendants, on the other hand, seek relief only under the Lanham Act and CADRA. But, before turning to the question of entitlement, we must consider the law that applies to each statute.

5

Plaintiff filed this case pursuant to the Court's federal jurisdiction with the state law claims arising under the Court's supplemental jurisdiction.   In a diversity or a supplemental jurisdiction case, a federal court is required to apply the substantive law of a forum state. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (stating that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state").   It is also well established that statutes allowing for the recovery of attorney's fees are substantive law. *See McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002) (stating that "it is clear that statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes").   So – given that Plaintiff's state law claims are included under the Court's supplemental jurisdiction and a federal court is required to apply the substantive law of the forum state when determining whether a party is entitled to recover fees – Florida law applies to the FDUTPA and CADRA claims whereas federal law applies to the Lanham Act and the DTSA.   With these principles in mind, we consider each statute in turn.

### *(1) The Lanham Act*

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."   15 U.S.C. § 1117(a).   "[T]o be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions *or* the manner in

which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (emphasis added) (quoting *Octane Fitness, LLC v. ICON Health and Fitness*, 572 U.S. 545, 554 (2014)).[4]   Courts have fairly broad discretion in finding what constitutes an "exceptional case."   Courts are instructed to consider the "totality of the circumstances,"[5] and, "[a]s in the comparable context of the Copyright Act, '[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).   However, even if a court determines that a case qualifies as exceptional, the ultimate decision to award fees "remains within the discretion of the trial court." *Tobinick,* 884 F.3d at 1118.   Defendants, as movants, have the burden of demonstrating the exceptionality of their case by a preponderance of the evidence. *See Peschke Map Techs. LLC v.*

---

[4]    The Eleventh Circuit has traditionally interpreted the Lanham Act's exceptional case standard to allow for the award of fees "only in exceptional circumstances and on evidence of fraud or bad faith." *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982).   The Eleventh Circuit later stated that the legislative history of the Lanham Act suggests that exceptional cases are those where the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner." *Tobinick*, 884 F.3d at 1118 (citing *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001)).

[5]    Courts may consider a nonexclusive list of facts including "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 572 U.S. at n.6 (quoting *Fogerty,* 510 U.S. at 534).

*Miromar Dev. Corp.*, 2017 WL 991481, at \*2 (M.D. Fla. Mar. 15, 2017) (citing *Octane Fitness*, 572 U.S. at 557).

Defendants argue that this is an exceptional case because – despite allegations that they copied certain attributes of Plaintiff's computer system – Plaintiff abandoned all of their claims after Defendants filed a motion for summary judgment. [D.E. 196 at 2 ("The Plaintiff does not wish to proceed against the Defendants on eight of these claims, namely, the claims set forth in counts IV-VIII, X, XII, and XIII of the Complaint.")].   Defendants view this as a complete surrender because Plaintiff's "dismissal" is "based on the simple fact that Kipu produced not a shred of evidence" to support their allegations and that Plaintiff failed to gather any proof for the elements of a Lanham Act claim including likelihood of confusion, an intent to violate a trademark, and damages.   [D.E. 348 at 4; 349 at 6].   Thus, Defendants conclude that Plaintiff's decision to litigate their Lanham Act claims for over two years before dismissing them on the eve of summary judgment is sufficient to make this an exceptional case.   *See Tire Kingdom, Inc.,* 253 F.3d at 1336 (affirming fees under the Lanham Act because the "district court concluded that Plaintiff failed to present 'a scintilla of evidence' of materiality or reliance, which the court described as a 'fatal[ ] flaw[ ]' to Plaintiff's claim.").

The main problem with Defendants' request for fees under the Lanham Act is that – while they argue that Plaintiff "dismissed" these claims – that is not entirely accurate.   Plaintiff only *withdrew* those claims when it filed an unopposed motion

for leave to serve a second amended complaint.  [D.E. 196].  To Defendants, that might be a difference without a distinction, but it is a difference nonetheless because Federal Rule of Civil Procedure 41 only speaks of a voluntary dismissal of "an action," not a claim.  Fed. R. Civ. P. 41(a)(1).  That means the proper way to drop a claim, as opposed to an action, without prejudice is to amend a complaint under Rule 15(a).  *See State Treasurer of Mich. v. Barry*, 168 F.3d 8, 19 n.9 (11th Cir. 1999) (concurrence) (citing *Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996); *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979).  And that is exactly what Plaintiff did when it withdrew some claims against all Defendants.  So, although Defendants suggest that the Court dismissed these claims, it is more accurate to say that Plaintiff voluntarily withdrew them.

Putting that aside, Defendants take issue with the way in which Plaintiff withdrew the Lanham Act claims because it shows that they always lacked merit. [D.E. 348 at 5 ("Kipu's Lanham Act Claims were never based on any actionable facts, and Kipu's abandonment of them in the face of sure defeat on summary judgment proves it.")].  Defendants fail to mention, however, that they never took issue with the withdrawal of those claims at that time Plaintiff filed a motion to amend.  In fact, when Plaintiff filed a motion to serve a second amended complaint to include fewer claims, Defendants agreed with the relief sought.  And neither before nor after the filing of that revised pleading did Defendants seek fees or sanctions in connection with the withdrawal of the Lanham Act claims.  That issue has only arisen now that

9

Defendants seek fees and costs.  Thus, it is difficult to see how the Lanham Act claims were so weak or frivolous when Defendants never mentioned that beforehand nor sought any relief to that effect.

In any event, Defendants say that two Eleventh Circuit cases show how this matter is exceptional.  The first is *Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018), where the Court affirmed a fee award because the plaintiffs' "litigation position was unusually weak[.]".  *Id.*  Defendants argue that the same reasoning applies here and that this case stands on equal footing.  But, there are noticeable differences when examining the facts of that case.

In *Domond*, the Eleventh Circuit affirmed a district court's finding that a case was exceptional because the plaintiffs' litigation position "was unusually weak."  *Id.* ("Domond and Hunter's litigation position was unusually weak -- their amended complaint admitted that BP.com used the marks first and a nonjudicial panel in another dispute between the two parties had concluded that BP.com used the marks first") (citing *Tobinick*, 884 F.3d at 1117-18).  The plaintiffs issued threats against the opposing party, demanded licensing fees to settle the case, and even accused the district court of conspiring to help the defendant when the case was appealed.  *See id.* ("Domond and Hunter's threats that BP.com would be begging for mercy, demand for a licensing fee to settle the dispute, and their baseless accusation on appeal that the district court conspired to help BP.com in exchange for payment, further support that this was an "exceptional case" under the totality of the circumstances.") (citing

*Tobinick*, 884 F.3d at 1118).   None of those extraordinary facts are present here.
All we have here is a plaintiff that recognized, after the completion of discovery, that
their allegations did not bear fruit as compared to the allegations in the complaint.
Nothing about this case is exceptional.

Defendants then say that the Eleventh Circuit's decision is *Tire Kingdom* is
analogous because, in granting a motion for summary judgment, the trial court found
that the plaintiff only established one of the five elements to prove a Lanham Act
violation.   The district court noted that the plaintiff failed to present "a scintilla of
evidence" on materiality or reliance and that, without more, that rose to the level of
an exceptional case.   *See Tire Kingdom, Inc.*, 253 F.3d at 1336.   Defendants
contend that this case is similar because Plaintiff also failed to meet several elements
of a Lanham Act claim.   Yet, unlike *Tire Kingdom*, Plaintiff never tried to defend its
Lanham Act claims against a motion summary judgment.   Plaintiff recognized –
after a review of a motion for summary judgment – that the items produced in
discovery did not go hand in hand with the allegations in the second amended
complaint and Plaintiff voluntarily withdrew them.

*Tire Kingdom* is also distinguishable because there is no evidence of any bad
faith or improper motive.   The Eleventh Circuit relied on both in *Tire Kingdom*
because the plaintiff obtained market research and survey information but failed to
disclose that evidence until one month before trial.   *See id.* ("The magistrate judge
also noted evidence of bad faith and improper motive on the part of Plaintiff.   For

example, Plaintiff had obtained market research and survey information that refuted causation and had failed to disclose this research and survey evidence to Defendants until one month before the scheduled trial date.").   Even worse, one of the plaintiff's vice-presidents testified that the reason for the lawsuit was to inflict pain on the market so that prices could be inflated.   *Id.* ("In 1995, we just took a leap of faith and started raising our prices in the paper, hoping that there was *enough pain and agony out there from the competition and this lawsuit* that maybe prices could go up there where we could show up our performance.") (citations and quotation marks omitted) (emphasis in original).

This case has none of those facts.   Plaintiff's actions, if anything, are consistent with the Federal Rules of Civil Procedure because, absent a good faith basis, a party should either withdraw or seek a voluntary dismissal as opposed to litigating a claim that lacks merit.   And Plaintiff did that after reviewing a motion for summary judgment.   It would be a entirely different matter if Plaintiff had an improper motive and wanted to waste time and resources before withdrawing the Lanham claims.   But, there is nothing to suggest that Plaintiff did anything other than withdraw its Lanham Act claims when it believed they were no longer viable.

Defendants dismiss that reason because they speculate that it took Plaintiff too long to review the record and come to that realization.   Defendants have failed, however, to reference a single case where a court has found an action to be "exceptional" under the Lanham Act simply because a plaintiff presented allegations,

reviewed all the evidence in the record after discovery, and came to an informed decision that some counts would be unsuccessful going forward.   If Plaintiff wanted to waste time and resources, it could have defended its Lanham Act claims in opposition to the motion for summary judgment and tried to litigate those matters at trial.   But, Plaintiff did neither.   Plaintiff filed a motion to withdraw the Lanham Act claims and Defendants agreed to the relief sought.   Nothing in this record – unlike the cases referenced above – comes close to being exceptional.   So, because Defendants failed to reference any relevant legal authority or present any evidence that would make this case exceptional, the motion for fees under the Lanham Act should be **DENIED**.[6]

### (2) The Florida Deceptive and Unfair Trade Practices Act

Next, the Non-Judgment Defendants seek fees pursuant to the prevailing party provision under FDUTPA.   This is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce."   Fla. Stat. § 501.202(2).   "A consumer claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.   *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (citation omitted).

---

[6]    Since this case is not exceptional under the Lanham Act, there is no need to consider whether any of the Defendants are the prevailing parties for the purposes of recovering fees under this statute.

Under FDUTPA, courts have the *discretion* to grant fees and costs to a prevailing party.  *See* Fla Stat. § 501.2105(1) (stating that a prevailing party "may receive [its] reasonable attorney's fees and costs from the nonprevailing party"); Fla. Stat. § 501.2105(3) ("The trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit.").  In *Humane Society of Broward County,* the Fourth District enumerated seven factors that a court may consider in determining whether to exercise that discretion: (1) the scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless; (6) whether the defense raised a defense mainly to frustrate or stall; and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.  951 So. 2d 966, 971-72 (Fla. 4th DCA 2007).   If a party is entitled to fees and costs, FDUTPA also allows for the recovery of taxable and non-taxable costs.  *See Chow v. Chak Yam Chau*, 640 F. App'x 834, 836 n.4 (11th Cir. 2015) ("In addition to [an] award of taxable costs, FDUTPA allows for the award of non-taxable costs, i.e. those costs that are not taxable under federal law at 28 U.S.C. § 1920.") (citing Fla. Stat. § 501.2105(1)-(4)).   Therefore, unless otherwise prohibited, "[a] prevailing party may

recover costs as a matter of course," and "the losing party bears the burden of demonstrating that a cost is not taxable, unless knowledge regarding the proposed cost is within the exclusive control of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1332-33 (S.D. Fla. 2009) (citations omitted).

The question here is whether the Non-Judgment Defendants are prevailing parties. "The Florida Supreme Court has explained that, to recover fees in a FDUTPA action, a party must prevail in the litigation – meaning that the party must receive a favorable judgment from a trial court with regard to the legal action, including the exhaustion of all appeals." *Burgos v. SunTrust Bank, N.A.*, 2020 WL 2299937, at *6 (S.D. Fla. Mar. 31, 2020), *Report and Recommendation adopted*, 2020 WL 2299936 (S.D. Fla. May 7, 2020) (citing *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013)).

Plaintiff says that the Non-Judgment Defendants fail to meet that standard because, following a two-week trial, a jury found that the Non-Judgment Defendants unfairly competed against Plaintiff, misappropriated business ideas, and caused Plaintiff to suffer $1.5 million dollars in damages. That argument is not compelling because, after the disposition of post-trial motions, the Court struck the unfair competition counts and omitted all claims against the Non-Judgment Defendants when the Court entered final judgment. Plaintiff also voluntarily withdrew all other claims against the Non-Judgment Defendants prior to trial, resulting in the Non-Judgment Defendants being successful on every count that Plaintiff asserted

15

against them.[7]  [D.E. 196 at 2 ("The Plaintiff does not wish to proceed against the Defendants on eight of these claims, namely, the claims set forth in counts IV-VIII, X, XII, and XIII of the Complaint.")].

But, even if we assume that the Non-Defendants are prevailing parties, fees and costs could not be awarded at this time because FDUPTA requires the exhaustion of all appeals.  *See* Fla. Stat. § 501.2105(1) ("In any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party, after judgment in the trial court and *exhaustion of all appeals*, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.") (emphasis added).   That means the statute "contemplate[s] that the motion [for fees and costs] be filed after the expiration of the appeal period." *Am. Registry, LLC v. Hanaw,* 2015 WL 5687693 (M.D. Fla. Sept. 25, 2015) (emphasis supplied). Courts in our district have taken that language at face value and "concluded that filing such a motion is not proper until the exhaustion of all appeals." *Id.*, at *3; *Procaps S.A. v. Patheon Inc.*, 157 F. Supp. 3d 1199, 1200 (S.D. Fla. 2016) (granting a motion to stay the disposition of a motion for fees and costs under FDUTPA pending

---

[7]     Although Plaintiff never argues that the decision to drop the FDUTPA claim prior to trial is a way to prevent the Non-Judgment Defendants from being declared the prevailing party, that contention would have been unsuccessful.  *See Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*, 2009 WL 1956236, at *1 (S.D. Fla. July 7, 2009) (awarding fees and costs under FDUTPA because "[t]he Plaintiff's decision to drop those Defendants from its Third Amended Complaint suggest to the Court that those claims against them were not meritorious.   Moreover, the Plaintiff's decision to drop the instant Defendants as parties came only after this matter was extensively litigated and after the Court dismissed the claim with leave to amend.").

the exhaustion of all appeals); *Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.,* 2006 WL 2691528, at *7 (M.D. Fla. Sept. 19, 2006) (denying without prejudice a FDUTPA -based motion for fees and costs, subject to renewal after either the expiration of the time to appeal or the conclusion of an appeal); *see also M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 30 F.3d 113, 115 (11th Cir. 1994) (explaining that FDUTPA "expressly includes the culmination of the appellate process in its definition of a prevailing party" for purposes of awarding fees and costs).

In light of this requirement that all appeals be exhausted, the motion for fees and costs under FDUTPA cannot be disposed of at this juncture because, on December 24, 2020, Plaintiff filed an appeal of the Court's decision to strike the unfair competition claims and the decision to grant a renewed motion for judgment as a matter of law.   [D.E. 326].   This appeal is also in addition to a cross-appeal that the Judgment Defendants filed the day prior, challenging numerous court orders. [D.E. 325].   The motion for fees and costs under FDUTPA should therefore be **DENIED without prejudice** with leave for the Non-Judgment Defendants to re-file at a later date, if appropriate, pending final disposition of all appeals.

### *(3)  The Defend Trade Secrets Act*

The next request is for fees and costs under the DTSA because of Plaintiff's allegations that the Non-Judgment Defendants misappropriated trade secrets:

> In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may . . . if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or

17

> opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, award reasonable attorney's fees to the prevailing party.

18 U.S.C. § 1836(b)(3)(D).  The Non-Judgment Defendants say that fees and costs should be recoverable because the trade secret allegations have always lacked merit despite the fact that Plaintiff continued to litigate these claims until the filing of a motion for summary judgment.  When the Non-Judgment Defendants filed that motion and Plaintiff voluntarily withdrew those claims, the former believes that it "demonstrated beyond any doubt that Kipu's trade secrets claim was meritless, and ultimately raised in bad faith."   [D.E. 349 at 9].

The Non-Judgment Defendants also assert that they are the prevailing party under the DTSA because – when Plaintiff filed an unopposed motion to withdraw these claims and proceed with a second amended complaint – the parties reached a separate agreement that Plaintiff would never again present these allegations. [Doc. 196, at ¶13 ("Based upon a separate agreement between the parties stating, among other things, that Plaintiff will never again assert these claims[.]")].  The Non-Judgment Defendants equate this agreement to a voluntary dismissal and argue that it created a "material alteration of the legal relationship of the parties," and made them the prevailing party.  *Buckhannon*, 532 U.S. at 604.  Hence, the Non-Judgment Defendants conclude that Plaintiff's decision to withdraw these claims after the filing of a motion for summary judgment constitutes bad faith and

that, as a result of an agreement reached between the parties, the Non-Judgment Defendants are prevailing parties.

There is no need to reach the question of whether the Non-Judgment Defendants are prevailing parties because, to recover fees under the DTSA, it requires a showing of bad faith. *See Akira Techs., Inc. v. Conceptant, Inc.*, 773 F. App'x 122, 125 (4th Cir. 2019) ("That leaves the DTSA, the VUTSA, and the inherent authority of the court.   Each of these bases for relief requires a finding of bad faith.") (citing authorities).   But, the Non-Judgment Defendants failed to present any evidence to show bad faith.   The Non-Judgment Defendants only speculate that Plaintiff acted in bad faith because, after reviewing a motion for summary judgment, Plaintiff voluntarily withdrew its trade secret claims and proceeded with the filing of a second amended complaint.

That is insufficient because, although the DTSA does not provide a definition of bad faith in the context of trade secret misappropriation, "courts [have] generally adopt[ed] a two-pronged standard for the evaluation of such claims." *Farmers Edge Inc. v. Farmobile, LLC*, 2018 WL 3747833, at *6 (D. Neb. Aug. 7, 2018) (citing *Gabriel Techs. Corp. v. Qualcomm Inc.*, 2013 WL 410103, at *7 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir. 2014)).   That is, "[t]he party seeking an award of attorney's fees must show (1) the objective speciousness of [an] opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or

maintaining the action for an improper purpose."  *Id.*; *see also CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007).

Objective speciousness is generally shown with a demonstration that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm.  *See Gabriel Techs. Corp.,* 2013 WL 410103 at *7 (finding it obvious from an early point in the litigation that the trade secret misappropriation claims were time-barred).  "'Objective speciousness exists where there is a complete lack of evidence supporting Plaintiff's claims.'"  *Sun Media Sys., Inc. v. KDSM, LLC*, 587 F. Supp. 2d 1059, 1073 (S.D. Iowa 2008) (quoting *Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) (quotations and citations omitted)).

The second prong, requiring subjective bad faith, is satisfied when it may be inferred from the evidence that a party "intended to cause unnecessary delay, filed the action to harass [the opposing party], or harbored an improper motive."  *Gabriel Techs. Corp.*, 2013 WL 410103, at *7.  Subjective bad faith "means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition."  *SASCO v. Rosendin Elec., Inc.*, 143 Cal. Rptr. 3d 828, 835 (Ct. App. 2012).  "That question 'involves a factual inquiry into the plaintiff's subjective state of mind: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it?'"  *Yield Dynamics, Inc. v. Tea Sys. Corp.*, 66 Cal. Rptr. 3d 1, 29 (Ct. App. 2007) (quoting *Gemini Aluminum v. Cal. Custom Shapes*, 116 Cal.

Rptr. 2d 358, 369 (Ct. App. 2002) (internal citations omitted)).   "Filing a trade-secret action to restrain legitimate competition and job mobility, needless to say, is not proper." *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 535–36 (6th Cir. 2008) (awarding fees under Michigan law when evidence showed, not that the plaintiff had an objectively supportable and good-faith claim that the defendant was using trade secrets to gain new customers, but that the plaintiff's "own product-quality, employee-retention and marketing shortcomings led it to file this action in an attempt to slow the bleeding from those self-inflicted wounds—to avoid losing additional market share and salespeople to [the competitor] and to convert [the defendant's] confidentiality agreement into a noncompete agreement.").

The Non-Judgment Defendants have shown none of the above.   In fact, the Non-Judgment Defendants failed to even reference a case that examined bad faith in the trade secret context, nor did they explain how bad faith is shown under the DTSA.   They instead relied entirely on the *timing* of when Plaintiff withdrew its trade secret claims with no references to anything in the record to show bad faith. However, even putting that aside, the Non-Judgement Defendants never make clear how the absence of any evidence supporting a trade secret claim rises to level of bad faith when courts have found the exact opposite.   *See, e.g., SASCO v. Rosendin Elec., Inc.*, 143 Cal. Rptr. 3d 828, 835 (Ct. App. 2012) ("The absence of evidence alone, even after discovery, does not support a finding of subjective bad faith.").   Other courts have also determined that granting a motion for summary judgment does not

establish objective speciousness of a trade secrets claim. *Pixion, Inc. v. PlaceWare Inc.*, 2005 WL 3955890, at *3 (N.D. Cal. Apr. 22, 2005). That means a plaintiff's decision to maintain a trade secret claim despite evidence showing otherwise is "hardly evidence of improper motive." *Id.*

Yet, that is exactly what the Non-Judgment Defendants have asked us to do with a few short conclusory sentences that is devoid of anything in the record to show bad faith. That cannot stand because the Non-Judgment Defendants have failed to grapple with anything to show bad faith other than guesswork and speculation. And their motion for fees is barren with respect to any legal authority or facts to show otherwise. As such, the motion for fees and costs under the DTSA should be **DENIED**.

### *(4) CADRA*

The final statutory provision for which both Defendants seek fees is for the successful defense of Plaintiff's CADRA claim. Defendants say that fees should be awarded because, on October 16, 2019, the Court granted in part Defendants' motion for summary judgment and found that Plaintiff's CADRA claim failed as a matter of law:

> [I]t is apparent that Defendants could not have committed a CADRA violation in late 2013 and early 2014. In that period of time, Defendants had express authorization from Plaintiff to access the Kipu EMR System. Indeed, Plaintiff concedes that between October 10, 2013 and January 16, 2014 Kipu allowed for certain 'Super Admin login-in rights to be provided" to Defendants. And, Plaintiff's corporate representative acknowledged in his deposition that once those rights were provided to Solutions, Solutions was free to open additional

22

accounts for its agents to access the Kipu EMR System. Moreover, it is undisputed that when Defendants accessed the Kipu EMR System in 2015, Defendants obtained authorization to access it from Plaintiff's third-party customers Ocean Breeze and Pathway to Hope. Thus, there is no dispute that Defendants never accessed the Kipu EMR System without authorization.

*Kipu Sys., LLC v. ZenCharts, LLC*, 2019 WL 7371879, at *8 (S.D. Fla. Oct. 16, 2019) (internal citations and quotation marks omitted).

Under CADRA, "[a] court *shall* award reasonable attorney fees to the prevailing party in any action arising under this part." Fla. Stat. § 668.804(2) (emphasis added). Plaintiff argues that fees are prohibited because none of the Defendants can be considered a prevailing party. And even if Defendants could be considered a prevailing party, Plaintiff says that they failed to carry their burden of demonstrating what amount in fees were incurred in connection with the litigation of the CADRA claim.

Plaintiff's response – to the Non-Judgment Defendants – is unpersuasive because it relies primarily on the verdict form, where the jury found that the Non-Judgment Defendants were liable for unfair competition. The verdict form cannot be relied upon, for the reasons already stated, since the Court struck the unfair competition claims and entered final judgment with no claims successful against the Non-Judgment Defendants. That means the Non-Judgment Defendants succeeded on every claim that Plaintiff alleged against them and that they must be a prevailing party under CADRA. *See Moritz v. Hoyt Enter., Inc.*, 604 So. 2d 807, 810 (Fla. 1992) (stating that "the prevailing party on the significant issues in the

23

litigation is the party that should be considered the prevailing party for attorney's fees.").

The more difficult question to answer is whether the Judgment Defendants can recover fees under CADRA even if Plaintiff achieved a significant monetary judgment against them for approximately $6.5 million dollars. The statute suggests that a non-prevailing party can do so because the final clause in Fla. Stat. § 668.804(2) limits the prevailing party analysis to CADRA – not the entire action. *See* Fla. Stat. § 668.804(2) ("A court shall award reasonable attorney fees to the prevailing party in any action arising *under this part*.") (emphasis added).[8]

The only case that has previously considered this question is Judge Moreno's decision in *Adria MM Prods., Ltd. v. Worldwide Ent. Grp., Inc.*, 2019 WL 861479, at *4 (S.D. Fla. Feb. 22, 2019). There, the plaintiff alleged several counts against the defendant including misappropriation of trade secrets, a CADRA violation, and federal trademark infringement. The Court found, following a four-day trial, that neither the plaintiff nor the defendant could be considered a prevailing party because of mixed success. However, the Court awarded fees to the plaintiff for the success of the CADRA claim because the statute has a mandatory, non-discretionary fee-shifting provision to the prevailing party. The Court relied, in large part, on an agreement between the parties because the lawyers in that case both interpreted

---

[8]    Plaintiff failed to grapple with this question in its response to the motion for fees and presented no argument, case law, or other legal principles for the Court to consider.

CADRA as awarding fees to the party that prevails specifically on this claim as opposed to the entire case:

> [The plaintiff] argues that the language of the statute creates a mandatory, non-discretionary award of fees to the party that prevailed on this claim—in this case, [the plaintiff]. To that point, [the defendant] seems to agree with that interpretation given that it does not refute [the plaintiff's] argument, but instead asks the Court to refrain from ruling on this request until it rules on [the defendant's] pending motion for renewed judgment as a matter of law, which asks for a new trial on that claim. Because the Court, in a separate order, is denying [the defendant's] motion, [the plaintiff] is entitled to fees pursuant to Florida's Computer Abuse and Data Recovery Act.

*Id.*[9]

We agree with Judge Moreno's decision and the interpretation of the parties in *Adria* because, as written, CADRA requires that a court "award reasonable attorney fees to the prevailing party in any action *arising under this part*." Fla. Stat. § 668.804(2) (emphasis added). If the Florida Legislature intended CADRA to require a prevailing party analysis for an entire action, it could have done so. But, that is not what the Florida Legislature decided to do and we must presume that it acted purposefully and intentionally. *See Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) (stating that a court must presume that a legislature says what it means in statute, and means what it says). A statute should also be construed "as

---

[9] The jury verdict found that both parties breached the underlying contract and that defendant had tortiously interfered with plaintiff's business relationships. The jury awarded plaintiff $0 for its breach of contract claim and $866,000 for its tortious interference with business relationships claim. The jury also awarded the defendant $366,211 for breach of contract. *See Adria MM Prods., Ltd.*, 2019 WL 861479, at *2.

excluding from its operation all things not expressly mentioned, especially where the statute enumerates specific things on which it operates." *Brandon Chrysler Plymouth Jeep Eagle, Inc. v. Chrysler Corp.*, 898 F. Supp. 858, 863 (M.D. Fla. 1995) (citing cases).   That means, in a nutshell, that "a court may not supply words where the legislature excludes things by omission." *Id.* at 863 (citing cases).

The Judgment Defendants miss the mark, in some respects, because they argue repeatedly that they should be considered the prevailing party for the entire action for their successful defeat of Plaintiff's CADRA and Lanham Act claims.   Yet, the Court entered a monetary judgment in Plaintiff's favor for approximately 6.5 million dollars.   [D.E. 324].   That means the only success that the Judgment Defendants can point to is the defeat of those two claims while losing everything else and failing to prevail on any of their own counterclaims.   And when the Court juxtaposes Plaintiff's success vis-à-vis the Judgment Defendants, the former won a significant monetary victory whereas the latter recovered nothing.   The analysis may have been different if the Judgment Defendants had prevailed on some of their counterclaims, but Plaintiff defeated all of those at either summary judgment or trial.

That is, of course, not the question presented for the purpose of awarding fees under CADRA because – rather than looking to the prevailing party in the entire action – the analysis here is limited solely to which party prevailed on the CADRA claim and that points unequivocally to Defendants.   And given that Plaintiff omitted

any discussion of this question in its response, the Court only has the benefit of the limited case law that Defendants relied upon and the Court's independent review of the relevant legal principles.   As a result, both Defendants should be entitled to a reasonable fee award under CADRA.

### B.   _Whether Multiple Prevailing Parties Should be Allowed_

Having established that Defendants should be entitled to fees under CADRA, Plaintiff pushes pack with the assertion that, "[i]n a breach of contract action, one party must prevail."   _Lucite Ctr., Inc. v. Mercede_, 606 So. 2d 492, 493 (Fla. 4th DCA 1992) (citing _Miller v. Reinhart,_ 548 So. 2d 1176, 1177 (Fla. 4th DCA 1989)). Plaintiff says that the only exception to this rule is when there are separate and distinct claims.   _See Folta v. Bolton,_ 493 So. 2d 440, 442 (Fla. 1986) (holding that in multicount action, there may be multiple prevailing parties "where each claim is separate and distinct and would support an independent action").   Yet, Plaintiff argues that the exception cannot apply here because "Kipu's claims were alternative theories of liability for the same wrong, namely, the Movants' improper access to and use of the Kipu EMR System to develop the ZenCharts EMR System and compete with Kipu."[10]   [D.E. 390 at 8].   So, because the CADRA claim fails to meet that

---

[10]    Plaintiff's argument, on this point, is too conclusory.   Plaintiff only dedicated a total of four sentences to the assertion that there cannot be multiple prevailing parties.   And Plaintiff never referenced anything in the record to support its position.   That is not compelling.

exception, Plaintiff concludes that there can only be one prevailing party and that this provides an alternative reason to deny the cross-motions for fees.

Under Florida law, the prevailing party is "the party prevailing on the significant issues in the litigation." *Moritz*, 604 So. 2d at 810.   In a contract action, there is generally just one prevailing party.   *See Sabina v. Dahlia Corp.*, 678 So. 2d 822, 822 (Fla. 2d DCA 1996).   That is not, however, always the case.   *See Avatar Dev. Corp. v. DePani Const., Inc.*, 883 So. 2d 344, 346 (Fla. 4th DCA 2004) (awarding fees to different prevailing parties in a contract action).   Florida law permits, in some circumstances, more than one prevailing party in a lawsuit where each of the claims that support an attorney's fees award is separate and distinct.   *See Leon F. Cohn, M.D., P.A. v. Visual Health and Surgical Ctr., Inc.*, 125 So. 3d 860, 863 (Fla. 4th DCA 2013) (per curiam).   "Multiple claims within a lawsuit are separate and distinct if they can support an independent action and are not simply alternative theories of liability for the same wrong."   *Martinair Holland, N.V. v. Benihana, Inc.*, 815 F. App'x 358, 361 (11th Cir. 2020) (citing *Leon F. Cohn, M.D., P.A.*, 125 So. 3d at 863).

Here, the CADRA claim is not merely an alternative theory of liability.   While it shares common facts and theories with other claims, it relies on more specific allegations of how Defendants hacked into Plaintiff's computer systems.   The pleading alleges, for example, how each of the Defendants used login credentials to qualify as a user and gain access to Plaintiff's system to steal information with none

of those specifics included in the other counts.   CADRA also requires an entirely

different set of elements as compared to a breach of contract claim:

> A person who knowingly and with intent to cause harm or loss: (1) Obtains information from a protected computer without authorization and, as a result, causes harm or loss; (2) Causes the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, causes harm or loss; or (3) Traffics in any technological access barrier through which access to a protected computer may be obtained without authorization, is liable to the extent provided in s. 668.804 in a civil action to the owner, operator, or lessee of the protected computer, or the owner of information stored in the protected computer who uses the information in connection with the operation of a business.

Fla. Stat. § 668.803.  And since CADRA has a specific fee provision that separates it

from other all claims in the same case, it is difficult to see how it fails to meet the

exception when the elements, the remedies, and the allegations in the operative

pleading can all support an independent action.[11]

### C.   _Whether Defendants Should Recover Fees for the Entire Case_

The next question is whether Defendants should recover fees for the expenses

incurred in litigating the CADRA claim, or whether those fees should include all of

the time spent in defending the entire case.   Defendants argue that it should be the

latter because Plaintiff's "claims were so intertwined that it is impractical to allocate

fees among the claims where the [Defendants] were successful," and those that were

---

[11]   We note that the prevailing party rule is not necessarily triggered in this case because we do not find that there are two prevailing parties for the entire case. Instead, our finding is limited to CADRA and the conclusion that Defendants prevailed on this specific claim that entitles them to fees – not that Defendants are a prevailing party for the entire action.   We only consider the prevailing party rule for the sake of accuracy and completeness.

not. [D.E. 349 at 12]. And given that all of Plaintiff's claims share a common nucleus, Defendants seek a recovery for the entire amount billed in fees or, a total of $1,628,689.40 through the end of trial.

Alternatively, Defendants say that, if the Court determines that the entire amount is unreasonable, a fee award should be tailored to one of several significant dates: (1) $1,223,720.90 (the date the Court granted Plaintiff leave to file a second amended complaint), (2) $1,445,684.90 (the date the Court dismissed Plaintiff's CADRA claim), or (3) $1,628,689.40 (the date of the jury verdict). To the extent the Court finds those amounts unacceptable and wants to tailor a fee award specifically to the successful defense of the CADRA claim, Defendants include two estimates on how to best calculate those fees with one totaling $271,448.23 and the other equaling $325,737.88.[12]

Defendants also assert that the claims must be intertwined because otherwise Plaintiff's cross-motion for fees would suffer from the same defect since Plaintiff failed to succeed on every count alleged in the second amended complaint, yet

---

[12] The first estimate is calculated by taking the total number of claims existing at the time of the dismissal of the CADRA claim (six claims in total) and dividing the total amount in fees (i.e. $1,628,689.40) by six to arrive at an estimate of $271,448.23 in fees per claim. The second estimate is calculated by taking the total number of claims (i.e. 35) weighted by the number of defendants sued for each claim and dividing the total amount in fees by the number of CADRA claims dismissed (i.e. 7 or one-fifth) against each defendant. Defendants say that, if the total amount in fees of $1,628,689.40 is divided by five then that equals a total fee award of $325,737.88. Whichever option the Court chooses, Defendants reason that they are entitled to a substantial fee award.

Plaintiff seeks fees and costs for litigating the entire case. Defendants contend that Plaintiff abandoned eight claims during the disposition of the motions for summary judgment, that they defeated Plaintiff's CADRA claim, and that the Court dismissed Plaintiff's unfair competition claims in post-trial motions. So, while Plaintiff demands that Defendants calculate the specific fees related to CADRA, they reason that the same rule applies to Plaintiff and that Plaintiff cannot have its cake and eat it too. In other words, Defendants view all the claims as either "inextricably intertwined" to the point that both parties recover fees or neither recovers anything for a failure to show the specific expenses incurred for the claims that prevailed.

Under Florida law, "[i]t is the party seeking attorney's fees on multiple claims who has an affirmative burden to demonstrate what portion of the effort was expended on the claim that authorized attorney's fees." *Van Diepen v. Brown*, 55 So. 3d 612 (Fla. 5th DCA 2011). "[W]here the claims involve a 'common core' of facts and are based on 'related legal theories,' a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney's fees were sought." *Anglia Jacs & Co., Inc. v. Dubin*, 830 So. 2d 169, 172 (Fla. 4th DCA 2002) (citing *Caplan v. 1616 E. Sunrise Motors, Inc.,* 522 So. 2d 920, 922 (Fla. 3d DCA 1988) (reasoning that "time spent marshaling the facts of the sale, the condition of the car, repairs, damages, etc., likely would have been spent defending any one or all of the counts"); *Regency Homes of Dade, Inc. v. McMillen,* 689 So. 2d 1204 (Fla. 3d DCA 1997) (plaintiffs who could not claim

31

entitlement to fees arising on a contract claim were, nevertheless, entitled to the full award because they properly pled entitlement to another claim on which they prevailed)).

That means "the party seeking fees has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible." *River Bridge Corp. v. Am. Somax Ventures,* 76 So. 3d 986, 989 (Fla. 4th DCA 2011) (citing *Lubkey v. Compuvac Sys., Inc.,* 857 So. 2d 966, 968 (Fla. 2d DCA 2003)).  Issues are "inextricably intertwined" or involve a "common core of facts" when "'work for one claim cannot be distinguished from work on other claims.'" *Miller v. Miller,* 107 So. 3d 430, 433 (Fla. 4th DCA 2012) (quoting *Franzen v. Lacuna Golf Ltd. P'ship,* 717 So. 2d 1090, 1093 (Fla. 4th DCA 1998)); *Schoenlank v. Schoenlank,* 128 So. 3d 118, 121 (Fla. 3d DCA 2013). "Thus, for example, where a particular claim is subject to a fee entitlement but one or more related claims are not, 'time spent marshaling the facts' of the related claims is compensable because it 'likely would have been spent defending any one or all of the counts.'" *Durden v. Citicorp Trust Bank, FSB,* 763 F. Supp. 2d 1299, 1306 (M.D. Fla. 2011) (quoting *Caplan v. 1616 E. Sunrise Motors, Inc.,* 522 So. 2d 920, 922 (Fla. 3d DCA 1988)); *Anglia Jacs & Co., Inc.,* 830 So. 2d at 171 ("When counts are intertwined, the trial courts often have no choice but to award attorney's fees as to time spent on all claims, whether fees are pled in all counts or not, as long as the prevailing party pleads entitlement sufficiently to give notice to the other party.").

The claims here are too intertwined to make it feasible to separate the fees incurred in the defense of the CADRA claim as opposed to the remaining allegations. [13]   *See Chodorow v. Moore,* 947 So. 2d 577, 579 (Fla. 4th DCA 2007) ("'[T]he party seeking fees has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible.'") (quoting *Lubkey v. Compuvac Sys., Inc.,* 857 So. 2d 966, 968 (Fla. 2d DCA 2003)).   All the claims are based on a core set of facts, where Plaintiff alleges that Defendants logged into a computer system and misappropriated its structure, organization, workflows, and processes.   The record further shows that CADRA arose in every deposition as the parties battled each other on whether Defendants had authorization to use Plaintiff's system.   And "every set of discovery requests and discovery responses dealt with at least some elements relating to the CADRA claim," meaning that it would be complete guesswork to separate the fees incurred for CADRA as opposed to every other claim that the parties litigated.   [D.E. 401 at 5].   Because it would be unfeasible to separate and calculate the CADRA fees from all the other counts, we conclude that Defendants – like Plaintiff – should be entitled to all the fees incurred for the entire action.   The only task left is to determine an appropriate fee award.

---

[13]   Plaintiff's motion for fees is subject to the same principles because, like Defendants, it failed to separate the fees requested for the successful and unsuccessful claims.

**D.**   **_The Lodestar Method of Determining Reasonable Fees_**

To determine an appropriate fee award, we employ the lodestar method.   *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.   We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed."   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly."   *Id*.

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended.[14]   *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).   Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained."   *Norman*, 836 F.2d at 1302.   Therefore, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions

---

[14]     In *Florida Patients Compensation Fund v. Rowe,* 472 So. 2d 1145 (Fla. 1985), the Florida Supreme Court adopted the federal lodestar approach for computing reasonable attorney's fees.

it made, give principled reasons for those decisions, and show its calculation." *Id*. at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of

avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### E.   *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate.   This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation."   *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299).   The relevant market is "the place where the case is filed."   *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted).   The relevant legal community here is South Florida.

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).[15]   The movant is required to submit to the Court satisfactory evidence to

---

[15]   The 12 *Johnson* factors are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

establish that the requested rate accurately reflects the prevailing market rate.  *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.").   Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

Here, Defendants hired 8 lawyers to work on the defense of this action.[16] These lawyers included: (1) Walter Boone ("Mr. Boone") at $420/hour with 31 years of experience, (2) Geremy Gregory ("Mr. Gregory") at $345/hour with 15 years of

---

[16]   There is a noticeable discrepancy with respect to the number of timekeepers that worked on this matter.  Defendants say, in their motions, that 8 lawyers expended a total of 5,837.79 hours.  [D.E. 348 at 8 ("According to the Boone Declaration, counsel spent 5,837.79 hours defending this case and these claims.")]; 349 at 12 (same)].   But, because the Court required Defendants to file a supplemental declaration [D.E. 426-1] to make clear the number of hours that each lawyer expended on the entire case, Defendants presented an affidavit with 24 timekeepers that totaled approximately 6,275.79 hours.   It is therefore unclear why Defendants seek a recovery of only 5,837.79 hours for the work of 8 lawyers in their motions, but their supplemental declaration shows a total of 24 timekeepers expending 6,275.79 hours.   Making matters more confusing, the total number of hours expended for the 8 lawyers do not total 5,837.79; they total 5,543.74.   Since Defendants limit their recovery to the work of these 8 lawyers and that total, according to their own supplemental affidavit, equates to 5,543.74 hours, we will use these numbers as the starting point for calculating the lodestar.

experience, (3) Adam Israel ("Mr. Israel") at $320/hour with 12 years of experience, (4) Charles Brumby ("Mr. Brumby") at $235/hour with 11 years of experience, (5) Kye Handy ("Mr. Handy") at $215/hour with 6 years of experience, (6) M. Patrick Everman ("Mr. Everman") at $225/hour with 6 years of experience, (7) Beatryce Tolsdorf ("Ms. Tolsdorf") at $285/hour with 14 years of experience, and (8) Christina Rossi ("Ms. Rossi") at $205/hour with 5 years of experience.   Plaintiff failed to raise any specific objections with respect to the hourly rates requested.   The hourly rates could thus be granted by default under Local Rule 7.1.   But, even after conducting an independent review of the hourly rates, we agree that the rates are reasonable for each timekeeper and for the complexity of the issues presented.   We therefore recommend that the Court adopt in full the hourly rates requested.

### F.   *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended.   The award must exclude compensation for hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel.   *A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).   The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award.   *A.C.L.U. of Georgia*, 168

F.3d at 428. If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428. As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Defendants expended 5,543.74 hours over two years in the defense of this action. They assert that the number of hours expended is reasonable because Plaintiff alleged 14 counts against them, ranging from misappropriation to "hacking" into computer systems. Plaintiff failed, for a second time, to offer any specific objections to the relief requested but – unlike the hourly rates – we do not agree that the number of hours expended is reasonable.

Many lawyers billed copious amounts of time for matters that are far too excessive for their individual levels of experience. The lawyers billed, for example, too many hours for researching case law, engaging in conference and telephone calls, examining exhibits, reviewing court orders, sending emails, and performing other mundane tasks that could have been accomplished in far less time. Indeed, the most junior lawyer for the Defendants is a mid-level associate with almost every other legal professional having more than 10 years of experience. The hours

expended do not go hand in hand with the billing records because so many of these tasks could have been accomplished in much less time.   It is equally unclear why so many time entries refer to giving "attention" to certain documents or issues and what that terminology even means.   Even worse, the billing records are redundant given that 8 different lawyers worked on this case.   While "[r]edundant hours generally occur where more than one attorney represents a client" it is unreasonable if every lawyer performs the same work with nothing to show each individual's specific contributions.   *See Norman*, 836 F.2d at 1301-02 (11th Cir. 1988) (citing *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)).   Hence, the only conclusion to draw from these billing records is that the number of hours is unreasonably high.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F. 3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783).   A court may not, however, do both.   *See Bivins*, 548 F.3d at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours"). In deciding between the two options available to the Court,  an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at

783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis[; r]ather, ... it may [ ] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction") (emphasis added). "In such cases, an across-the-board cut may be appropriate, as long as a court 'articulate[s] [its] reasons for selecting specific percentage reductions.'" *Roy v. Bd. of Cty. Comm'rs, Walton Cty., Fla.*, 2012 WL 8013976, at *4 (N.D. Fla. Nov. 1, 2012), *Report and Recommendation adopted*, 2013 WL 1883247 (N.D. Fla. May 6, 2013) (quoting *Loranger*, 10 F.3d at 783).

An across-the-board reduction is preferable here because – although the Court reviewed each of the approximate 250 pages of billing records that were attached under seal in support of the motion [D.E. 411-1, 411-2] – they are too voluminous to take an hour-by-hour approach.   And after taking into consideration all the errors previously identified in the billing records, we recommend that the number of attorney hours be reduced by 50% to reflect a more reasonable amount of time spent defending this action.   *See, e.g., Valencia v. Affiliated Grp., Inc.*, 674 F. Supp. 2d 1300, 1311 (S.D. Fla. 2009) (reducing fees by 60% to fairly reflect the time and effort that should have gone into the case from its inception through its conclusion).

With that reduction, the Court should award each lawyer the following number of hours: 818.75 hours for Mr. Boone, 333.5 hours for Mr. Brumby, 7 hours for Mr. Everman, 31.90 hours for Mr. Gregory, 1059.02 hours for Mr. Handy, 404.70 hours for Mr. Israel, 88.4 hours for Ms. Rossi, and 28.60 hours for Ms. Tolsdorf.   And

when taking into consideration each lawyer's hourly rate, that leads to the following amounts for each lawyer: (1) $343,875 for Mr. Boone (818.75 hours multiplied by $420/hour), (2) $78,372.50 for Mr. Brumby (333.5 hours multiplied by $235/hour), (3) $1,575 for Mr. Everman (7 hours multiplied by $225/hour), (4) $11,005.50 for Mr. Gregory (31.90 hours multiplied by $345/hour), (5) $227,689.30 for Mr. Handy (1059.02 hours multiplied by $215/hour), (6) $129,504 for Mr. Israel (404.70 hours multiplied by $320/hour), (7) $18,122 for Ms. Rossi (88.4 hours multiplied by $205/hour), and (8) $8,151 for Ms. Tolsdorf (28.60 hours multiplied by $285/hour). Thus, the lodestar equates to a total sum of $818,294.30.

### G. *The Results Obtained*

After the lodestar is determined with the multiplication of the reasonable hourly rate times the number of hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302 (citing *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987)). "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.* (citing *Hensley,* 461 U.S. at 436–37. "In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." *Id.* A reduction is suitable if the relief sought is limited to the scope of the case as a whole. "Where all theories derive from a common core of operative facts, the focus

should be on the significance of overall results as a function of total reasonable hours." *Id.* (citing *Popham,* 820 F.2d at 1578).

In making this reduction, "[i]t is improper to make the reduction based on a simple ratio of successful issues to issues raised." *Id.* (citing *Hensley,* 461 U.S. at 435 n.11 *Popham,* 820 F.2d at 1579. It is also improper to reconsider all of the *Johnson* factors for a second time because to do so would amount to double-counting. *See Bivins*, 548 F.3d at 1352 (stating that "[a]lthough the "*Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar-doing so amounts to double-counting.") (citing *City of Burlington v. Dague*, 505 U.S. 557, 562-63 (1992)).

Here, the lodestar should be adjusted downward because, although the Non-Judgment Defendants prevailed on every claim presented against them, Plaintiff won a significant monetary judgment against the Judgment Defendants.[17] The Non-Judgment Defendants might complain that this prejudices their victory with a reduced recovery, but it was their decision to conflate their motion with the Judgment Defendants. And neither presented a way in which the Court could separate a fee and cost award with respect to these two parties. Instead, both

---

[17] The undersigned recommended that the Court *not* reduce the lodestar for Plaintiff's breach of contract claim against the Judgment Defendants because the relief sought was targeted solely to that specific set of defendants. And when examined through that scope, Plaintiff achieved a significant victory even though some claims did not survive. So, while Plaintiff may not have won on all of the claims presented, they walked away with a $6.5 million dollar judgment.

Defendants filed a joint reply and a substantially similar declaration with the same hourly rates for the same attorneys with the same number of hours expended, and the same amount requested in fees and costs.   The relief sought was thus, for all practical purposes, the same.

With that being said, Plaintiff's $6.5 million dollar judgment is the primary reason a lodestar reduction is warranted.   While Defendants might have defeated some of Plaintiff's claims, their defense of this action was limited by that judgment and their failure to prevail on a single counterclaim.   Thus, the Court recommends that the lodestar be reduced by an additional 50% to accommodate for the partial success in defending this case.   *See, e.g.*, *Rumreich v. Good Shepherd Day Sch. of Charlotte, Inc.,* 2019 WL 2078730, at *6 (M.D. Fla. Apr. 23, 2019), *Report and Recommendation adopted as modified*, 2019 WL 2076453 (M.D. Fla. May 10, 2019) ("While Plaintiff was successful in receiving a settlement offer, Plaintiff recovered merely 6.5% of the damages sought, and Plaintiff's attorney is requesting twenty times her recovery.   Thus, the Undersigned recommends the Court reduce the attorney's fees by 60% based on Plaintiff's limited success.") (internal citation omitted).   Accordingly, Defendants should recover a total of $409,147.15 after a 50% downward adjustment to the lodestar.

## IV.    *CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that the motions for

fees and costs be **GRANTED in part** and **DENIED in part**:

      A.     Defendants' motion for fees should be **GRANTED in part** and

             **DENIED in part** with a total recovery of $409,147.15.

      B.     Defendants' motions for costs should be **DENIED**.[18]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have

fourteen (14) days from service of this Report and Recommendation within which to

file written objections, if any, with the District Judge.   Failure to timely file

objections shall bar the parties from *de novo* determination by the District Judge of

any factual or legal issue covered in the Report *and* shall bar the parties from

challenging on appeal the District Judge's Order based on any unobjected-to factual

or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1;

*see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v.*

*Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

---

[18]     Defendants cannot recover any costs under CADRA because the statute only allows for "reasonable attorney *fees* to the prevailing party in any action arising under this part."   Fla. Stat. § 668.804(2) (emphasis added).   Absent any statutory language that allows for costs to be recovered, the motion should be denied.

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 6th day of

April, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge